RANDALL K. MILLER (admitted *pro hac vice)*
NICHOLAS M. DEPALMA (admitted *pro hac vice*)
RANDAL M. SHAHEEN (subject to admission *pro hac vice*)
VENABLE LLP
8010 Towers Crescent Drive
Suite 300
Tysons Corner, VA 22182
(Phone) 703.905.1449
(Fax) 703-821-8949
Email: rkmiller@venable.com
nmdepalma@venable.com

CELESTE M. BRECHT (SBN 238604)
VENABLE LLP
2049 Century Park East
Suite 2100
Los Angeles, CA 90067
(Phone) 310-229-9900
(Fax) 310-229-9901
Email: cmbrecht@venable.com

Attorneys for MORGAN DREXEN and WALTER LEDDA

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU<br><br>Plaintiff,<br><br>v.<br><br>MORGAN DREXEN, INC. and WALTER LEDDA, individually, and as owner, officer, or manager of Morgan Drexen, Inc.<br><br>Defendants. | CASE NO. SACV13-01267 JLS (JEMx)<br><br>Hon. Josephine L. Staton<br>Courtroom: 10A (Santa Ana)<br><br>**MORGAN DREXEN REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**DATE: December 20, 2013**<br>**TIME: 2:30 p.m.**<br>**CTRM: 10A**<br><br>Action Filed: August 20, 2013<br>Trial Date: Not set |

**INTRODUCTION ........................................................................................ 1**

**ARGUMENT ............................................................................................... 7**

**I. CFPB'S BRIEF FAILS TO CONFRONT CONTROLLING CONSTITUTIONAL PRINCIPLES ........................................................ 7**

A. CFPB Cannot Defend Its Structure With Existing Precedent .............. 7

B. CFPB's Brief Does Not Articulate Any Limiting Principle Other Than Whatever One Particular Congress Decides ............................... 8

C. CFPB Ignores The Constitutional Violation That CFPB Itself Lacks Checks And Balances (Separate From CFPB's Impairment Of The Three Branches) ............................................................ 10

D. CFPB's Brief Fails To Confront Constitutional Requirements For Presidential And Congressional Oversight ........................................ 12

1. The Constitution Requires Political Control Of Government .. 12

2. CFPB Never Confronts The Aggregate Effect Of Removing Congressional Appropriations Oversight And Presidential Power To Remove The CFPB Director At Will ....................... 12

E. CFPB Cannot Cite Any Agencies Operating Comparable Power Without A Multimember Commission Structure ............................... 15

F. CFPB Ignores The Non-Delegation Doctrine .................................... 18

G. Dodd-Frank Plainly Intrudes On The Courts' Power And Consolidates Power From Other Agencies ......................................... 19

**II. Contrary to CFPB's Opposition, CFPB Has Not Stated Claims For Relief Under Rule 12(b)(6) ............................................................... 20**

A. CFPB Does Not Cite Facts That Support Its Legal Conclusion About Charging Up-Front Fees For Debt Settlement (Counts I-III) .. 20

B. CFPB Does Not Cite Facts That Could Remove Defendants From The Exclusion For The Practice Of Law (Counts I, III, IV, V, VI) ... 22

C. CFPB's Wisconsin Administrative Decision—To The Extent It Can Be Considered At All—Is An Unpersuasive Outlier Contradicted By Other States That Have Reviewed Defendants ....... 23

**CONCLUSION ........................................................................................... 25**

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF AUTHORITIES

**Cases**

*A.L.A. Schechter Poultry Corp.* and *Panama Refining Co. v. Ryan* .......... 18
*ABA v. FTC*, 430 F.3d 457, 471 (D.C. Cir. 2005).......... 24
*ACORN v. Edwards*, 81 F. 3d 1387, 1394 (5th Cir. 1996) .......... 24
*Am. Apparel, Inc. Shareholder Litig.*, 8555 F. Supp. 2d 1043, 1061 (C.D. Cal. 2012).......... 4
*Ashcroft v. Iqbal*, 556 U.S. (2009) .......... 20
*Ass'n of American Railroads v. U.S. Dept. of Transp.*, 721 F.3d 666, 673 (D.C. Cir. 2013)......... 7
*Bates v. State Bar of Arizona*, 433 U.S. 350, 360 (1977) .......... 25
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .......... 20
*Benn v. Lambert*, 283 F.3d 1040, 1062-63 (9th Cir. 2002).......... 3
*Bowsher v. Symar*, 478 U.S. 714 (1986).......... 9
*Buckley v. Valeo*, 424 U.S. 1, 126 (1976).......... 9
*Cincinnati Soap Co. v. United States*, 301 U.S. 308 (1937) .......... 14
*City of Arlington, Tex. v. F.C.C.*, 133 S.Ct. 1863, 1879 (2013) .......... 2
*Clinton v. City of New York*, 524 U.S. 417, 452 (1998).......... 9
*Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1207 n.14 (11th Cir. 1999) .......... 3
*Edmond v. United States*, 520 U.S. 651, 663 (1997) .......... 12
*Fed. Mar. Comm'n v. S. C. State Ports Auth.*, 535 U.S. 743.......... 11
*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.* 130 S. Ct. 3138 (2010).... 9, 13, 16
*Freytag v. Comm'r*, 501 U.S. 868, 884 (1991) .......... 12
*Gregory v. Ashcroft*, 501 U.S. 452, 469-470 (1991).......... 24
*Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST, 2012 WL 7071471, *6 (C.D. Cal. Dec. 21, 2012) .......... 20
*Hamdan v. Rumsfeld*, 548 U.S. 557, 602 (2006) .......... 11
*Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935) .......... 8, 13
*Independent Living Center of Southern California v. City of Los Angeles, Cal.*, --- F. Supp. 2d ---, 2013 WL 5424291, *13 n.14 (C.D. Cal. 2013).......... 4
*Marbury v. Madison*, 5 U.S. 137, 177 (1803).......... 19
*Morgan Drexen, Inc. v. Consumer Fin. Protection Bureau*, --- F. Supp. 2d ---, 2013 WL 5664696, at *2 (D.D.C. 2013).......... 21
*Morrison v. Olson*, 487 U.S. 654, 696-97 (1988) .......... 13
*Mulhearn v. Federal Shipbuilding & Dry Dock Co.*, 2 N.J. 356, 363-64, 66 A.2d 726 (N.J. 1949) .......... 3
*New York v. United States*, 505 U.S. 144, 156 (1992).......... 24
*PCAOB, Humphrey's Executor* and *Mistretta v. United States*, 488 U.S. 361 (1988).......... 16
*Pisinski v. CFPB*, No. 1:13-cv-01112-CKK, Docket No. 17-1 at 28, 31 (D.D.C.) .......... 6
*Proffitt* v. *FDIC*, 200 F.3d 855, 860 (D.C. Cir. 2000) .......... 20
*Ralpho v. Bell*, 569 F.2d 607, 620 (D.C. Cir. 1977) .......... 11
*Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).......... 4
*The Pocket Veto Case*, 279 U.S. 655, 689 (1929).......... 15
*United States v. Lopez*, 514 U.S. 549, 583 (1995) .......... 24
*United States v. Morison*, 120 S. Ct. 1740 (2000) .......... 24
*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).......... 4
*Whitman v. American Trucking Ass'n*, 551 U.S. 457, 473 (2001).......... 19
*Wyman v. James*, 400 U.S. 309, 335 (1971) .......... 3

**Statutes**

12 U.S.C. § 5512(b)(4)(B) .......... 19
12 U.S.C. § 5517(e) .......... 22
12 U.S.C. §§ 4511.......... 16

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**INTRODUCTION**

This case presents a textbook example of the importance of the constitutional doctrine of "checks and balances," and what happens in their absence. CFPB breaks new ground by operating without structural protections and—as a direct consequence—has become blinded by its mission and abused its power, both by attacking lawyers and their support staff, and by engaging in inappropriate data mining that has caused congressional scrutiny and public outcry.

CFPB is aware of the vital role that Morgan Drexen plays in providing non-legal support services to attorneys who are representing underserved consumers, but after 17 months of investigation, CFPB has not been able to find a single deficiency in any Morgan Drexen support services related to "debt relief." Instead of applauding Morgan Drexen for providing efficient and affordable paraprofessional services to attorneys enabling the delivery of desperately-needed legal services for underserved consumers, CFPB has resorted to making outrageous claims against the lawyers Morgan Drexen supports—that the bankruptcy services provided by the attorneys supported by Morgan Drexen are somehow not really bankruptcy services. Despite the public record evidence of multiple bankruptcy filings throughout the United States, CFPB chooses to attack Morgan Drexen, notwithstanding the fact that if CFPB's bare-knuckle litigation methods put Morgan Drexen out of business, then the attorneys will no longer be able to provide economical bankruptcy and debt relief services, or any other type of legal services, to the poor and underserved. The very consumers CFPB proclaims to defend are left without access to affordable legal representation.

CFPB's opposition does not dispute the fact that its degree of insulation from ordinary checks, balances, and oversight is unprecedented. CFPB does not—and cannot—cite any case approving, or even considering, an agency with similar power and insulation. CFPB's novel structure is the poster child for Justice Robert's warning this year about the constitutional dangers of the run-away

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

administrative state.[1] CFPB can regulate virtually every aspect of the U.S. economy but lacks core structural protections that typify regulatory enforcement. CFPB's Director:

1. is not subject to at will presidential removal;
2. can act unilaterally without securing the consent of bipartisan panel of commissioners;
3. can spend $597.6 million annually (Opp'n at 4) without congressional appropriations oversight;
4. does not have to answer any congressional questions to justify its budget because the Dodd-Frank Act forbids "review" of the money by the appropriations committee;
5. refuses to answer congressional questions about CFPB's enforcement methods;[2]
6. commences enforcement actions at will—without the restraining effect of Department of Justice involvement and vetting—because CFPB has "independent litigating authority" (Compl. ¶ 4);
7. can, and has, targeted lawyers practicing law despite the exemption in the Dodd-Frank Act;[3] and
8. is immune from any budget curtailment, furlough, sequestration, or shutdown.[4]

---

[1] *City of Arlington, Tex. v. F.C.C.*, 133 S.Ct. 1863, 1879 (2013) (Roberts, J. dissenting).

[2] *See* Lawmakers Fume Over Unanswered Questions to CFPB, American Banker, September 13, 2013 (Exhibit 15 to the Declaration of Randal M. Shaheen).

[3] Jenna Greene, CFPB Puts Lawyers in Cross Hairs: Number of suits rivals actions against banks, Legal Times, November 11, 2013 (Exhibit 16 to the Shaheen Decl.)

[4] CFPB's structural deficiencies dominate discussion in Congress, and have led to proposals for reform. *See* November 21, 2013 Statement from the House

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Abuse of power is the predictable result of CFPB's unprecedented autonomy. More than 40 years ago when the administrative state was much smaller, Justice Douglas discussed the famous adage that "Power tends to corrupt, and absolute power corrupts absolutely" in the context of "[th]e bureaucracy of modern government" which Justice Douglas thought was increasingly "oppressive" and "omnipresent." *See Wyman v. James*, 400 U.S. 309, 335 (1971) (Douglas, J., dissenting). As Judge Trott of the Ninth Circuit recently stated:

> Lord Acton, the celebrated 19th century British historian and student of politics, formulated an observation about government and human nature that aptly, and regrettably, fits this case: 'Power tends to corrupt, and absolute power corrupts absolutely.' It was for this reason that over one hundred years earlier, the Framers of our Constitution meticulously separated the powers given by the People to our government and erected against each a structural series of checks and balances designed to confront the potential for abuse.

*Benn v. Lambert*, 283 F.3d 1040, 1062-63 (9th Cir. 2002) (Trott, J., concurring).[5]

---

Committee on Financial Services (http://financialservices.house.gov/news/documentsingle.aspx?DocumentID=362475), announcing the passage by the Committee of proposed legislation including (1) H.R. 2446 to reform the CFPB's leadership structure with a bipartisan, five-member commission appointed by the President; and (2) H.R. 3519 to promote greater accountability and transparency at the CFPB by subjecting it to congressional oversight through the regular appropriations process.

[5] *See also Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1207 n.14 (11th Cir. 1999) ("The idea of concentrating so much power in the hands of a few individuals recalls Lord Acton's oft quoted phrase, 'power tends to corrupt and absolute power corrupts absolutely.'"); *Mulhearn v. Federal Shipbuilding & Dry Dock Co.*, 2 N.J. 356, 363-64, 66 A.2d 726 (N.J. 1949) ("The doctrine [of separation of powers] . . . has not only been accepted as a cardinal principle of American constitutional law but has been relied upon from our earliest days as a nation as a fundamental and indispensable bulwark against despotism. Lord Acton's aphorism merits quotation at this point: 'Power tends to corrupt and absolute power corrupts absolutely.' The doctrine of the separation of powers is the great contribution of Anglo-American

In defending against this constitutional challenge, CFPB asserts that it can be extremely insulated and immune from ordinary safeguards because Congress legislated that it be so. This ignores that the judiciary has stopped Congress before when it violated the Constitution in setting up a federal agency, most recently in *Free Enterprise Fund*. Worse yet, CFPB misrepresents available oversight. CFPB makes a sweeping and demonstrably incorrect assertion that it "remains fully accountable to the President and Congress, who retain their constitutional powers to oversee the Bureau," Opp'n at 10; however, in its own report, CFPB stressed that its statutory entitlement to "funding outside the congressional appropriations process" ensures "***full independence***" from Congress.[6] It is impossible to square these two contradictory statements.

The result is that CFPB is blinded by its mission and engaging in an abuse of power, including by taking abusive actions without balancing competing interests:

lawyers to the prevention of absolutism and the preservation of the rights of the individual against the state.") (internal citations omitted).

[6] *The CFPB Strategic Plan, Budget, and Performance Plan and Report* 81 (Apr. 2013) (emphasis added) available at http://files.consumerfinance.gov/f/strategic-plan-budget-and-performance-plan-and-report.pdf. (p. 81) (emphasis added).

The Court can, on motion to dismiss, take judicial notice of public government documents—such as congressional hearings, agency reports, and court decisions. *See* F.R.E. 201 (authorizing judicial notice "at any stage of the proceeding"); *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, --- F. Supp. 2d ---, 2013 WL 5424291, *13 n.14 (C.D. Cal. 2013) (taking judicial notice of federal agency manuals); *In re Am. Apparel, Inc. Shareholder Litig.*, 855 F. Supp. 2d 1043, 1061 (C.D. Cal. 2012) (taking judicial notice of a "government publication and a matter of public record"). Further, because this constitutional challenge is akin to challenging jurisdiction through CFPB's standing to sue as an "agency of the United States" (Compl. ¶ 2), the Court can consider matters outside of the Complaint under Rule 12(b)(1). *See Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1. Data mining without regard to privacy, which is now the subject of a GAO investigation and which violates the Dodd-Frank Act;[7]
2. Targeting lawyers practicing law—including in this case—despite the statutory exemption for lawyers[8];
3. Seeking to pressure the U.S. Trustee's office to obtain and divulge personal financial data in unrelated cases;[9]
4. Ignoring the language of federal regulations by asserting that legal fees for bankruptcy work violate a regulation that prohibits upfront fees for debt settlement;
5. Ignoring states that have reached conclusions contrary to those of CFPB regarding Morgan Drexen; and
6. Seeking to shut down small business Morgan Drexen without regard to the impact on the disadvantaged and

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

[7] Letter from Katherine Siggerud, Managing Director for Congressional Relations, U.S. Government Accountability Office to Senator Mike Crapo (July 12, 2013) (available at http://www.cfpbmonitor.com/files/2013/07/GAOLetter.pdf) (last visited Aug. 5, 2013). CFPB's data mining reflects an abuse of power because CFPB is expressly prohibited from obtaining records "for purposes of gathering or analyzing the personally identifiable financial information of consumers." 12 U.S.C. § 5512 (c)(4)(C).

[8] Section 1027(e) contains an "exclusion" from the UDAAP authority for attorneys engaged in the practice of law. 12 U.S.C. § 5517(e).

[9] CFPB improperly enlisted the U.S. Trustee Program ("USTP") to collect personal financial data from approximately five million American citizens without their consent, raising both privacy concerns and threats to the independence and impartiality of the USTP (which is not supposed to be an investigation arm of CFPB). *See* Richard Pollock, *Consumer Agency Threatens Independence of Bankruptcy Office*, Washington Examiner, *available at* http://washingtonexaminer.com/article/2535482. *See also* Shaheen Decl. Exhibit 15 and Docket No. 22-3.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

> underserved community who benefits from the services of attorneys that Morgan Drexen supports.

In this case, CFPB is unquestionably attempting to regulate the practice of law. CFPB acknowledges that clients engage bankruptcy lawyers who perform bankruptcy work (albeit "little to no") (Compl. ¶ 49)), but marginalizes the lawyer exemption as "limited." Opp'n at 21. CFPB's factual allegations demonstrate that Morgan Drexen is an outsourced paraprofessional service, which supports lawyers providing low-cost legal services to at-risk consumers. Compl. ¶ 42 ("The contract commits a Network Attorney to represent a consumer . . ."). In other words, Morgan Drexen evens the playing field and allows debt-ridden consumers to stand up to the well-oiled debt collection machine, which CFPB itself characterizes as a multibillion dollar industry that menaces consumers with threats and intimidation.[10]

CFPB's opposition tries to minimize the lawyers who supervise Morgan Drexen. Kim Pisinski, the lead Plaintiff in the D.C. case, is one such lawyer. There, CFPB said we could raise all of our defenses and constitutional arguments in this case. *See Pisinski v. CFPB,* No. 1:13-cv-01112-CKK, Docket No. 17-1 at 28, 31 (D.D.C.). Now, however, CFPB refuses to consent to Pisinski's intervention in this case, and refuses to explain why. CFPB's position is inexplicable given that it argues that Defendants use lawyers as a "ruse." Opp'n at 20. If so, then why would CFPB oppose lawyers intervening?

CFPB also attaches a Wisconsin administrative decision. This is a cherry-picked outlier that creates a misleading impression contrary to decisions in 14 other states where Morgan Drexen has had favorable outcomes. For example, a 2012 decision by the Ethics Committee of the Supreme Court of New Jersey—which, unlike CFPB, has jurisdiction over the practice of law—found that an

---

[10] www.consumerfinance.gov/newsroom/cfpb-considers-debt-collection-rules/

attorney supported by Morgan Drexen acted entirely in conformity with the Rules of Professional Conduct. Likewise a Colorado judge held: "[B]ecause Morgan Drexen is soliciting settlement offers on behalf of attorney's clients in rendition of the attorneys' services, and in conformity with the Colorado Rules of Professional Conduct, the Court concludes that the services provided by Morgan Drexen constitute 'legal services' . . ." (Docket No. 22-6 at p. 9).

As explained more fully below, CFPB's opposition fails to explain how its unique and unprecedented structural features are constitutional, and otherwise fails to state a claim for relief that could be made consistent with the Tenth Amendment and the exemption for the practice of law in the Dodd-Frank Act. For the reasons stated herein and in Defendants' opening brief, this case should be dismissed.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

## ARGUMENT

### I. CFPB'S BRIEF FAILS TO CONFRONT CONTROLLING CONSTITUTIONAL PRINCIPLES

#### A. CFPB Cannot Defend Its Structure With Existing Precedent

CFPB's opposition offers a conclusory assertion that the elements of insulation and autonomy do not pose any constitutional problem—but CFPB cites no case that supports or even considers the constitutionality of these accumulated elements of autonomy. In fact, there is neither a case nor any historical practice that could justify CFPB's combined lack of structural safeguards, and this "novelty" may "signal unconstitutionality." *Ass'n of American Railroads v. U.S. Dept. of Transp.*, 721 F.3d 666, 673 (D.C. Cir. 2013).

The agencies and case law cited by CFPB underscore the fact that it is in new territory in terms of degree of autonomy. For example, CFPB cites to agencies such as the Social Security Administration which has a single head (to support CFPB's argument that a multimember commission is not required). However, CFPB ignores the fact that the Social Security Administration is—unlike CFPB—subject to congressional appropriations oversight. Likewise, CFPB cites

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

to cases like *Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935), which approved a restriction on the President's ability to remove FTC Commissioners (to support CFPB's argument that Congress may restrict the President's ability to remove the CFPB Director). However, CFPB denies that the FTC's multimember structural protection and "body of experts" was relevant to the Supreme Court's analysis in *Humphrey's Executor*, ignoring the "body of experts" language.

Ultimately, CFPB cannot deny that it is unmoored from the historical practices, traditions, and Supreme Court case law that together form the guide to evaluating the constitutionality of government power.

### B. CFPB's Brief Does Not Articulate Any Limiting Principle Other Than Whatever One Particular Congress Decides

CFPB's opposition appears to be premised on the theme that once Congress decides how to create an agency, that decision becomes unreviewable. For example, CFPB asserts that:

1. It "was Congress" that extinguished its appropriations oversight over CFPB, adding that Congress can do what it "sees fit" regarding agency funding (Opp'n at 7);
2. "Congress – not the courts – controls who has authority to interpret ambiguities in a statute" (Opp'n at 9) (this statement repudiates judicial review, and violates court decisions that require *de novo* review where agencies have overlapping jurisdiction[11]); and
3. This Court should not look at the "historical practice" (which must be given "great weight" in evaluating constitutional challenges to

---

[11] *See* Mem. at 19 (citing cases); *see also Proffitt* v. *FDIC*, 200 F.3d 855, 860 (D.C. Cir. 2000) (collecting cases that establish that there is no basis for Chevron deference when more than one agency administers a statute).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

structure and power, Mem. at 11-12) because Congress can simply "*depart* from that practice" (Opp'n at 14) (emphasis in original).

One searches CFPB's brief in vain for any articulation of limits to congressional authority that the Court should consider in evaluating constitutionality of CFPB. In our opening brief, we articulated (a) guiding legal principles; and (b) the constitutional warnings from Justice Roberts this year about the dangers of an overly-insulated administrative state (Mem. at 4-5). CFPB essentially ignores these principles and never provides the Court with what it contends guides this Court's analysis. Instead, it invites the Court to trust, defer to, and rubberstamp the particular Congress that enacted Dodd-Frank.

CFPB cannot rely on Congress' approval—"[t]he Constitution is a compact enduring for more than our time, and one Congress cannot yield up its own powers, much less those of other Congresses to follow." *Clinton v. City of New York*, 524 U.S. 417, 452 (1998) (Kennedy, J., concurring). Notwithstanding CFPB's belief in broad congressional authority, the case law obligates federal courts to review and invalidate congressional decisions to create agencies in a way that poses a threat to the Constitution. For example, in *Buckley v. Valeo*, 424 U.S. 1, 126 (1976), Congress created the Federal Election Commission in a way that permitted Congress to appoint members of the Commission. The Supreme Court had no difficulty in declaring that legislation unconstitutional. *See id.* at 132 (finding that Congress "offend[ed] well-established constitutional restrictions stemming from the separation of powers."). Likewise, in *Bowsher v. Symar*, 478 U.S. 714 (1986), Congress assigned authority to recommend spending reductions under the Balanced Budget and Emergency Deficit Control Act of 1985 to the "Comptroller General." *Id.* at 717. As in *Buckley*, the Court had no difficulty in declaring that Congress broke the rules. *Id.* at 723. More recently, in *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.* 130 S. Ct. 3138 (2010), the Court again declared that Congress violated the Constitution. The Court held:

"By granting the Board executive power without the Executive's oversight, this Act subverts the President's ability to ensure that the laws are faithfully executed—as well as the public's ability to pass judgment on his efforts. The Act's restrictions are incompatible with the Constitution's separation of powers." *Id.* at 3155. As these legal authorities illustrate, this Court need not accept CFPB's invitation to simply rubberstamp Congress' legislation. In none of these cases did the Court say that Congress could fix its unconstitutional act through the "ordinary legislative process." *See* Opp'n at 7 (CFPB defending Congress' abdication of its appropriations oversight by disingenuously asserting that Congress could just fix it: "To the extent that Congress wishes to change the Bureau's funding, it retains full power to do so pursuant to the ordinary legislative process.").

### C. CFPB Ignores The Constitutional Violation That CFPB Itself Lacks Checks And Balances (Separate From CFPB's Impairment Of The Three Branches)

CFPB focuses exclusively on the separation of powers concept that Congress cannot create an agency in a way that would tread on a core constitutional responsibility of one of the three branches of federal government. *See* Opp'n at 3 (stating the standard as whether an agency structure "impairs" any of the three branches of federal government "from performing its constitutional responsibilities."). To be sure, that is exactly what Congress did in creating CFPB, and CFPB should be declared unconstitutional for this reason. For example, as we explained, the Dodd-Frank Act unduly impedes core Article II responsibilities by limiting the President's power to remove the CFPB Director at will (and therefore the ability of the President to direct the policy of CFPB); it abdicates congressional appropriations oversight, Congress' most important check on agencies; and impermissibly encroaches on Article III power by dictating a "rule of decision" for federal courts that CFPB is the winner in any inter-agency dispute.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

However, beyond this inquiry of whether core responsibilities of the three branches are at risk, CFPB ignores the separate constitutional violation regarding the creation of an agency that places undue power in the hands of a single director without sufficient checks and balances. In other words, quite apart from any incursion on core responsibilities of one of the three branches of federal government, there is an independent obligation to ensure that Congress is not creating an entity that wields government power without sufficient constitutional restraints. Bedrock law establishes that (1) a federal agency must have constitutionally-required checks and balances[12]; and (2) "the accumulation of all powers, legislative, executive and judiciary in the same hands" is "the very definition of tyranny." *Hamdan v. Rumsfeld*, 548 U.S. 557, 602 (2006). Therefore, CFPB's structure is unconstitutional—even in the absence of a finding that a core responsibility of one of the three branches is intruded upon—if CFPB wields unchecked power. Both are independent paths that Defendants may use to establish a constitutional violation, and here, Defendants use both.

By limiting presidential oversight through at will removal, abdicating congressional appropriations oversight, limiting judicial review, forbidding review by the Federal Reserve System's Board of Governors, and by delegating massive power to regulate virtually every aspect of the United States economy, Congress has given one person (the CFPB Director) enormous authority, but otherwise failed to restrain him by comparable and corresponding checks, balances, and oversight. This structure independently fails the constitutional test because it accumulates

[12] *Ralpho v. Bell*, 569 F.2d 607, 620 (D.C. Cir. 1977) (holding that it is "daring to suggest that Congress, though subject to the checks and balances of the Constitution, may create a subordinate body free from those constraints"); *compare Fed. Mar. Comm'n v. S. C. State Ports Auth*., 535 U.S. 743, 773 (2002) (Breyer, J., dissenting) (observing that the Court permitted Congress to delegate rulemaking and adjudicative powers to agencies in part "because the Court established certain safeguards surrounding the exercise of these powers.").

combined legislative, executive and judicial authority in one person, and therefore may "justly be pronounced the very definition of tyranny."

**D. CFPB's Brief Fails To Confront Constitutional Requirements For Presidential And Congressional Oversight**

**1. The Constitution Requires Political Control Of Government**

CFPB derides "political accountability" as a "vague notion[]" (Opp'n at 1) and contends that there is "no constitutional provision, principle, or precedent to support" a requirement that CFPB have "responsiveness to the electorate." (Opp'n. at 11). CFPB's argument flouts one of the most important bedrock constitutional principles taught in every high school civics class. Governmental power cannot be exercised by unelected bureaucrats who are not closely supervised and disciplined by political actors. For example, in *Freytag v. Comm'r*, 501 U.S. 868, 884 (1991), the Court held that political accountability enables the public to monitor and check through the ballot box government actions to "ensure that those who wield[]" power are "accountable to political force and the will of the people." Also in *Edmond v. United States*, 520 U.S. 651, 663 (1997), the Court held that the Constitution underscores importance of preserving "political accountability relative to important [g]overnment assignments." CFPB would read these cases—and foundational underlying principles—out of existence.

**2. CFPB Never Confronts The Aggregate Effect Of Removing Congressional Appropriations Oversight And Presidential Power To Remove The CFPB Director At Will**

CFPB's brief does not address Dodd-Frank's extinguishment of the combined "checks" provided by presidential removal and congressional appropriation oversight.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

***Presidential At-Will Removal***. With regard to presidential removal, we explained in our opening brief that the Supreme Court's decisions in *Myers*, *Humphreys Executor* and *Free Enterprise Fund*[13] require unfettered presidential power to remove executive officers like the CFPB Director "at will." Mem. at 7-8. Given that there is a single agency head in this case, *Myers* is the controlling precedent and the burden rests with CFPB to prove special circumstances that would allow this Court to depart from the presumptive rule articulated *Myers* that the President must have the ability to remove that agency head without any restriction—including in case the CFPB Director starts acting like a bully (for example, bringing abusive enforcement actions and then refusing to answer Congress' questions about them)—or in a manner that conflicts with the President's policies. The Court reaffirmed *Myers* in *Free Enterprise Fund* and specifically held that special circumstances must exist to encroach upon this important presidential disciplinary tool. *See Free Enterprise Fund*, 130 S.Ct. at 3146-47. CFPB does not respond to this authority.

Faced with the fatal fact that the Supreme Court in *Free Enterprise Fund* affirmed the *Myers* rule requiring presidential at will removal absent special circumstances, CFPB attempts to distract the Court with an inapposite citation to *Morrison v. Olson*, 487 U.S. 654, 696-97 (1988) (Opp'n at 5). However, *Morrison* addressed ***inferior*** executive-branch officers (independent counsels); hence, *Morrison* could possibly apply to this case. CFPB cannot credibly demonstrate—and does not even try to demonstrate—that the CFPB Director is an "inferior" executive branch officer. Moreover, the Supreme Court found that the independent counsel in *Morrison* had extremely narrow duties: the independent counsels had "limited jurisdiction and tenure" and "lack[ed] policymaking or significant

---

[13] *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.* 130 S. Ct. 3138 (2010), *Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935), *Myers v. United States*, 272 U.S. 52 (1926).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

administrative authority," *id.* at 691, and accordingly were not "so central to the functioning of the Executive Branch" so as to require presidential control. *Id.* at 691-92.

The CFPB Director, by stark contrast, is one of the most powerful forces in American federal government – and his power grows daily with the agency's increasing stretch into every aspect of the U.S. economy. The CFPB Director has unilateral decision making over rulemaking, supervision, and enforcement authority, power to implement 18 pre-existing statutes, transferred authority from seven different federal regulators, power to declare what constitutes an "abusive act or practice" (which he has not yet defined) and current year funding (from outside the appropriations process) of $597.6 million. The agency's power is massive and unprecedented—and it is just getting started. CFPB's attempt to compare this to the independent counsel in *Morrison* is meritless.

***Congressional Appropriations Oversight***. With regard to the lack of congressional appropriations oversight, CFPB cites three entirely distinguishable cases (Opp'n. at 7*)* and plucks out quotes that—at best— stand for the proposition that Congress can create certain types of self-funding programs. CFPB's cases have nothing to do with how Congress funds federal regulatory agencies. For example, the *Cincinnati Soap* case challenged Congress' decision to permit the Philippines treasury to keep a three-cent per pound tax imposed for the production of coconut oil in the Philippines. *Cincinnati Soap Co. v. United States*, 301 U.S. 308 (1937). CFPB should not be permitted to pluck isolated quotations from wholly distinguishable cases to justify CFPB's annual half a billion dollar war chest that is not authorized through the appropriations power as the Constitution envisons, and which the appropriations committee is expressly forbidden from reviewing.[14] As we explained in our opening brief (Mem. at 9-10), the

[14] 12 U.S.C. § 5497(a)(2)(C) (CFPB funds "shall not be subject to review by the Committees on Appropriations of the House of Representatives and the Senate.")

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

appropriations power is the most important constitutional check against the kind of agency abuse already exhibited by CFPB (and with more expected to come as the agency asserts greater and greater authority). In our opening brief, we challenged CFPB to identify any other agency head like the CFPB Director who was immune from this constitutonal power. *Id.* As we predicted, CFPB identifies none.

**E. CFPB Cannot Cite Any Agencies Operating Comparable Power Without A Multimember Commission Structure**

The briefs show that there is no debate—the absence of a multimember commission structure is unprecedented for sprawling regulatory agencies like CFPB. The Senate broke new ground when it made the last minute decision to depart from the multimember agency conceived by Senator Elizabeth Warren, proposed by the Obama Administration, and enacted by the House of Representatives (Mem. at 13-14). Because Dodd-Frank departs from the tradition established regarding the most comparable agencies of federal government—namely, the SEC, FTC, and CPSC—it merits close constitutional scrutiny given that such tradition "is a consideration of great weight in a proper interpretation of constitutional provisions relating to the separation of powers." *The Pocket Veto Case*, 279 U.S. 655, 689 (1929) (*see also* authorities cited at Mem. at 11-12)

CFPB's response to this is to argue that traditional ways of conducting government – which is giving "great weight" in the constitutional analysis – should be jettisoned whenever one particular Congress decides "to *depart* from that practice." (Opp'n at 14 (emphasis in original)). We have already explained the folly of this approach in Section I-B above.

CFPB's second response is to cite three government agencies that have a single head. (Opp'n at 13) (citing the Social Security Administration, Federal Housing Financial Agency and the Office of Special Counsel). These examples do not help CFPB because these agencies have other safeguards and are not comparable in the scope of function or degree of discretion entrusted to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

CFPB. SSA and the Office of Special Counsel are subject to the appropriations power and have limited functions (SSA administrates benefits and the Office of Special Counsel protects federal employees and applicants from prohibited personnel practices). FHFA, like the independent counsel in *Morrison*, has a more narrow scope of power: whereas CFPB has open-ended jurisdiction over all consumer lending practices by private companies, FHFA's jurisdiction pertains to government-sponsored entities: Fannie, Freddie, and the Federal Home Loan Banks. *See* 12 U.S.C. §§ 4511 (jurisdiction over Fannie, Freddie, and the Office of Finance); 4513 (jurisdiction over "Federal Home Loan Banks"); 1423 (same). Each of these entities pays fees to FHFA. 12 U.S.C. 4516(a)-(b).[15]

When one looks at similar agencies that approach the power (even if they fall short) delegated to CFPB, courts have only tolerated the incursion on the President's removal power and Congress' appropriations power where there is a multimember commission. This history is the most important guide to the Court's constitutional decisions. CFPB ironically concedes that its "Director exercises the same kinds of functions as the FTC Commissioners. . ." (Opp'n at 5); yet, CFPB fails to acknowledge or appreciate that FTC Commissioners—unlike its Director—have the restraining effect of bipartisan deliberation and voting.

The cases that CFPB cites underscore the existence of the multimember commission tradition for agencies like CFPB. For example, *Free Enterprise Fund*, *Humphrey's Executor* and *Mistretta v. United States*, 488 U.S. 361 (1988) involve multimember commissions, and yet CFPB cites to these cases as if they support its

[15] For this reason, a decision by this Court granting Defendants' Motion does not impugn the constitutionality of any other federal agency. As the Supreme Court noted in *Free Enterprise* when confronted with a similar concern, the decision invalidating PCAOB's structure did not impact other agencies because each agencies' scope of power versus structural protection requires a unique analysis. *Free Enter. Fund*, 130 S. Ct. at 3160.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

argument. *See also* Mem. at 12-13 (citing the statutes creating FTC, PCAOB, and SEC).

CFPB also conflates the need for structural protections in a federal agency with the idea of "policy benefits of multimember commissions." (Opp'n at 12). Morgan Drexen's argument is not about policy benefits, but about insuring that a federal agency has—as is consistent with traditional ways of operating government—sufficient checks, balances and oversight necessary to restrain government power and to guard against tyranny. To characterize these as "policy benefits" as opposed to constitutional principles requires ignoring Supreme Court cases that articulate the need for checks and balances and structural protections at the federal agency level.

CFPB asserts that requiring a multimember commission is not based on "constitutional principles." Opp'n at 12. However, in our opening brief, we cited, among other things, the following constitutional principles:

1. The mandate to disperse government power and avoid concentrating power in the hands of a single person such as the CFPB Director (Mem. at 5 and 14);
2. The need to create a government structure that enables, and does not undermine, judicial review (Mem. at 15);
3. The "historical practice" of creating multimember commissions for agencies like the ICC, FTC, SEC, CPSC, FCC, FERC—a consideration entitled to "great weight" (Mem. at 11);
4. The Court's emphasis on the "body of experts" that run the independent agencies through a process of informed and nonpartisan deliberation (Mem. at 16-17);
5. The requirement that agencies have structural checks and balanaces that correspond to their scope of power and discretion (Mem. at 4-5)

Each of the foregoing is accompanied by Supreme Court case citations.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**F. CFPB Ignores The Non-Delegation Doctrine**

CFPB deflects Morgan Drexen's non-delegation argument (Mem. at 19-20) by asserting that CFPB's power to bring lawsuits to combat supposed "abusive" acts is guided by a congressionally-supplied "intelligible principle." However (perhaps conceding the hopelessly ambiguous idea of "abusive"), even if CFPB loses this argument, it asserts that only that one provision—and not the entire agency—would be unconstitutional. (Opp'n at 11-12).

To begin with, given that CFPB has been unable to define what "abusive" means,[16] there are serious questions about whether Congress has supplied an intelligible principle. Beyond this, Morgan Drexen's non-delegation argument reflects a deeper constitutional defect where Congress has abdicated and given away its authority to the CFPB.

The non-delegation doctrine as articulated in the *A.L.A. Schechter Poultry Corp.* and *Panama Refining Co. v. Ryan*,[17] has never been reversed—and has never been tested in the way that Congress has tested it here by creating this so-called "super" agency. As the Court held in *Schechter*, the benefits of the growing administrative state "cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained." *Id.* at 530. The Constitution erects limits. Congress cannot simply give away its power, and the

---

[16] Director Cordray has stated that the Act's use of the term "abusive" is "a little bit of a puzzle because it is a new term"; CFPB has "been looking at it, trying to understand it, and we have determined that that is going to have to be a fact and circumstances issue; it is not something we are likely to be able to define in the abstract. Probably not useful to try to define a term like that in the abstract; we are going to have to see what kind of situations may arise where that would seem to fit the bill under the prongs." *How Will the CFPB Function Under Richard Cordray, Hearing Before the Subcomm. on TARP, Financial Services, and Bailouts of Public and Private Programs*, 112th Cong., 112-107, at 69 (2012).

[17] *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 333 (1935).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Supreme Court much more recently has reaffirmed this principle, declaring that whether an agency has been given "forbidden legislative authority" is a "question for the courts." *Whitman v. American Trucking Ass'n*, 551 U.S. 457, 473 (2001). CFPB's novel structure requires an application of these binding principles and a renewed analysis of them, including in light of Justice Roberts's caution this year about the dangers of the "the administrative state."[18]

**G. Dodd-Frank Plainly Intrudes On The Courts' Power And Consolidates Power From Other Agencies**

We explained in our Motion (at 18-19) that Dodd-Frank prescribes an improper rule of decision that declares CFPB the winner in any inter-branch dispute.[19] CFPB does not deny this; instead, it justifies it as it does with so many of the CFPB's other features—because Congress said so. (Opp'n at 9-10). But Congress is not the arbiter of the boundaries of congressional power—that would be like the fox guarding the chickens. Courts will stop Congress when (as here) Congress breaks the rules—as courts did in *Free Enterprise, Buckley, Myers, Bowsher* and many other cases. This is the essence of judicial review, "to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Significantly, Dodd-Frank transfers authorities from seven other agencies to CFPB. This is a separation-of-powers problem because Dodd-Frank mandates that Courts treat any CFPB interpretation as displacing all previous agency interpretations (including judicially-reviewed ones). Among other things, this reverses decades of judicial precedent, including the cases that mandate *de novo* review. *See* Mem. at 19 (citing cases); *see also Proffitt v. FDIC*, 200 F.3d 855,

---

[18] *City of Arlington*, 133 S.Ct. 1879 (Roberts, J., dissenting).

[19] 12 U.S.C. § 5512(b)(4)(B) as requiring courts to grant the same deference to CFPB's interpretation of federal consumer financial laws that they would "if [CFPB] were the only agency authorized to apply, enforce, interpret, or administer the provisions of such Federal consumer financial law."

860 (D.C. Cir. 2000) (collecting cases that establish that there is no basis for *Chevron* deference when more than one agency administers a statute). Aggregating the power of seven agencies into a single agency (CFPB) and then insulating that agency from any prior statutory interpretation further demonstrates that CFPB possesses unprecedented and dangerous power. Full and vigorous judicial review should have been required; instead, Dodd-Frank dictates a novel and material restraint on judicial power, which is an independent constitutional violation.

## II. Contrary to CFPB's Opposition, CFPB Has Not Stated Claims For Relief Under Rule 12(b)(6)

### A. CFPB Does Not Cite Facts That Support Its Legal Conclusion About Charging Up-Front Fees For Debt Settlement (Counts I-III)

CFPB's opposition mistakes legal conclusions for allegations of fact. For example, CFPB claims that: "Morgan Drexen deceives consumers about up-front fees it charges when they sign up for debt relief services." Opp'n at 16; *see also id.* at 19 ("Morgan Drexen falsely represents to consumers that they will not be charged an up-front fee for Morgan Drexen's debt relief services.").

These are not factual allegations but legal conclusions masquerading as facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted"). *See also Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST, 2012 WL 7071471, *6 (C.D. Cal. Dec. 21, 2012) (Staton, J.) ("Thus, Plaintiffs have failed to plead facts supporting a claim for successor liability because they have wholly failed to allege that the QBE Defendants are the entities that purchased Balboa").

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

CFPB's factual allegations present a different picture. Instead of deception, the Complaint alleges that "the Debt Relief Contract the consumer signs ***does not require the payment of up-front fees***." Compl. ¶ 41 (emphasis added). These factual allegations trump the Opposition's legal conclusions. CFPB's bullet list fares no better. Opp'n at 18-19. For example, CFPB claims that Morgan Drexen "makes a series of contradictory statements" to consumers. *See* Opp'n at 18 (bullet two). However, the Complaint explains this "contradictory" allegation to mean that Morgan Drexen explains to consumers that "the 'only fee' a consumer will be charged ***for debt relief services*** is a flat percentage . . . ***once the debt is settled***." Compl. ¶ 32 (emphasis added). With respect to "***bankruptcy services***" on the other hand, the Complaint alleges that consumers are informed of a different fee structure. *Id.* ¶ 33 (emphasis added). Thus, the factual allegations demonstrate that there is nothing contradictory. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with . . . liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

CFPB's argument that "[c]ourts have consistently refused to allow the terms of contracts between private parties to limit or interfere with public enforcement actions" (Opp'n at 19) is meaningless because CFPB alleges that Morgan Drexen does not require "the payment of up-front fees" (Compl. ¶ 41). CFPB may not be bound by a contract, but it is not free to disregard its own factual allegations.[20]

---

[20] CFPB differs from a private party in one other important way. CFPB has already taken discovery (both from Morgan Drexen and third parties) and depositions—all before bringing this action. *See Morgan Drexen, Inc. v. Consumer Fin. Protection Bureau*, --- F. Supp. 2d ---, 2013 WL 5664696, at *2 (D.D.C. 2013) (noting that CFPB "sought records from third parties and deposed various officers of Morgan Drexen, including Ledda"). CFPB's existing access to discovery weighs in favor of holding them to the Rule 12(b)(6) standard envisioned by *Twombly* and reaffirmed in *Iqbal*.

**B. CFPB Does Not Cite Facts That Could Remove Defendants From The Exclusion For The Practice Of Law (Counts I, III, IV, V, VI)**

As explained in Defendants' motion to dismiss, CFPB's counts for violation of the CFPA depend on its UDAAP authority. (Mot. at 23). Section 1027(e) contains an "exclusion" from the UDAAP authority for attorneys engaged in the practice of law. 12 U.S.C. § 5517(e). This exclusion provides, with certain exceptions, that "the Bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e).

Here, the Complaint lays out all of the facts one would expect to accompany the practice of law: lawyers, doing legal work (perhaps "little"), for clients, pursuant to engagement letters. *See* Compl. ¶ 42 ("The contract commits a Network Attorney to represent a consumer with respect to the attempted negotiation and settlement of the consumer's debts"); ¶ 45 ("When Morgan Drexen has negotiated a settlement offer from a creditor, it emails Local Attorneys through a web portal"); ¶ 50 (admitting that the Bankruptcy Contract "limits a Network Attorney's engagement to counseling the consumer 'with respect to preparation for possibly filing a bankruptcy petition' and 'with respect to pre- and post-filing claims by creditors.'").

CFPB's opposition appears to take issue with the percentage of time spent on the matter by attorneys versus the percentage of time spent on the matter by outsourced paraprofessional Morgan Drexen. *See* Opp'n at 20 (arguing Morgan Drexen falls outside of Section 1027(e) because Network Attorneys perform "little, if any, legal work"). However, these allegations are—again—legal conclusions, and any marginal value "stop[s] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 566 U.S. at 678. CFPB's allegations

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

are equally consistent (if not more consistent) with the notion that attorneys around the country are using Morgan Drexen to assist them in providing low cost legal services to the underprivileged or financially disadvantaged. The underprivileged cannot afford to pay attorneys an hourly rate for bankruptcy services, and outsourced paraprofessionals like Morgan Drexen ensure that they have access to top flight attorneys with top flight support. If CFPB were king and could stop Morgan Drexen by fiat, it would be taking away consumers' legal representation and placing them at the mercy of debt collectors.

CFPB's opposition does not refute the fact that Morgan Drexen's business model is expressly authorized by the Rules of Professional Conduct. *See* ABA Model Rule of Professional Conduct 5.3 (permitting lawyers to use nonlawyer assistants); and Comment 3 ("A lawyer may use nonlawyers outside the firm to assist the lawyer in rendering legal services to the client. Examples include the retention of . . . a paraprofessional service.") Nor does CFPB explain why it can come in and second-guess courts in states like Colorado. *See* Docket No. 22-6 (concluding that Morgan Drexen was engaged in the practice of law). CFPB's extreme position would pit this Court against decisions in other jurisdictions.

### C. CFPB's Wisconsin Administrative Decision—To The Extent It Can Be Considered At All—Is An Unpersuasive Outlier Contradicted By Other States That Have Reviewed Defendants

To overcome the issue of a court decision inconsistent with CFPB's legal conclusions, CFPB cites an outlier, the Wisconsin decision (Docket No. 25-2), which is on appeal, and asks the Court to credit Wisconsin over Colorado (because the "record" in Colorado was "inadequate."). Opp'n at 22.

First, CFPB's tactics are inappropriate because the Wisconsin decision is an administrative decision, whereas the decision in Colorado is a judgment issued by a Court and is a matter of public record and appropriate for judicial notice.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Second, if the Court is inclined to consider the Wisconsin decision (as CFPB urges), then the Court should also consider that every other state to review Morgan Drexen's business practice has come out differently. As explained in the Declaration of Randal M. Shaheen, Morgan Drexen and the attorneys it supports have obtained favorable rulings that demonstrate that Morgan Drexen is an appropriate outsourced paraprofessional organization assisting attorneys engaged in the practice of law. *See* Declaration of Randal M. Shaheen (filed herewith).

Third, CFPB's citation to Wisconsin proves the broader point, which is that the very existence of state scrutiny demonstrates CFPB is intruding into an area reserved to the states under the Tenth Amendment. CFPB does not address *ABA v. FTC*, 430 F.3d 457, 471 (D.C. Cir. 2005) (cited at Mot. 25), which held that federal law "may not be interpreted to reach into areas of State sovereignty unless the language of the federal law compels the intrusion" (citation omitted). CFPB's attempts at overreach should be rejected on the "language of the federal law" because it contains an "exclusion" from the practice of law in Section 1027(e). CFPB's conclusory assertions are insufficient to overcome the facts pled in its Complaint about attorney involvement.

The Tenth Amendment "restrains the power of Congress . . . [because] the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the states." *New York v. United States*, 505 U.S. 144, 156 (1992). Courts must curtail Congress' authority when it violates the Tenth Amendment and principles of federalism. *See Gregory v. Ashcroft*, 501 U.S. 452, 469-470 (1991); *See also ACORN v. Edwards*, 81 F. 3d 1387, 1394 (5th Cir. 1996).[21] Regulating the practice of law is a state function. *See Bates v. State Bar*

---

[21] *See also United States v. Lopez*, 514 U.S. 549, 583 (1995) (Kennedy, J. concurring) (noting that federal legislation involving gun-free school zones "contradicts the federal balance the Framers designed and that this Court is obliged to enforce"); *United States v. Morrison*, 529 U.S. 598 (2000).

*of Arizona*, 433 U.S. 350, 360 (1977) (State Supreme Court speaks as sovereign because it is the "ultimate body wielding the State's power over the practice of law"). To the extent the Court finds that CFPB is not violating Section 1027(e)'s exclusion for lawyers engaged in the practice of law, the Court should nonetheless dismiss this case because CFPB's actions intrude upon the practice of law—reserved to the States—in in violation of the Tenth Amendment.

**CONCLUSION**

Defendants respectfully request that the Court grant their motion to dismiss.

Dated: December 6, 2013

VENABLE LLP

By: /s/ Celeste M. Brecht
Celeste M. Brecht
Attorneys for Defendants
MORGAN DREXEN and
WALTER LEDDA

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900