CARA PETERSEN, D.C. Bar #476990
Acting Deputy Enforcement Director For Litigation
R. GABRIEL D. O'MALLEY, MA Bar # 651432
(E-mail: gabriel.o'malley@cfpb.gov)
(Phone: 202-435-9747)
SHIRLEY CHIU, IL Bar # 6296079
(E-mail: shirley.chiu@cfpb.gov)
(Phone: 202-435-7592)
JAN SINGELMANN, DC Bar # 999087
(E-mail: jan.singelmann@cfpb.gov)
(Phone: 202-435-9670)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

KENT KAWAKAMI, CA Bar # 149803 – Local Counsel
(Phone: 213-894-4858)
(E-mail: Kent.Kawakami@usdoj.gov)
United States Attorney's Office
Central District of California - Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Fax: (213) 894-2380

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Morgan Drexen, Inc.,<br>and<br>Walter Ledda, individually, and as owner, officer, or manager of Morgan Drexen, Inc.,<br>Defendants. | Case No. SACV13-01267 JLS (JEMx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU**<br><br>**HON. JOSEPHINE L. STATON**<br><br>**Hearing Date: November 21, 2014**<br>**Time: 2:30pm**<br>**Place: Courtroom 10-A (Santa Ana)** |

## TABLE OF CONTENTS


Introduction ....................................................................................1

Argument........................................................................................2

I. Defendants' Argument That Attorneys May Charge UpFront FeeS For Bankruptcy Services Is Irrelevant To Whether DEFENDANTS Are Violating The TSR, And Is Not A Ground For Summary Judgment..................2

II. Defendants Are Not Entitled to Summary Judgment on the Issue of Whether Two Attorneys—Who Are Not Parties to this Lawsuit—Have Violated the TSR Because that Issue is Wholly Inapposite to the Bureau's Claims...............5

A. The Hoorfar and Munsch Declarations Confirm that Consumers Who Sign Up for Morgan Drexen's Services Do Not Want—and Do Not Receive—Bankruptcy Services, And Are Charged Impermissible Upfront Fees For Debt Settlement Services..........................................................................6

B. No Tribunal Has Ruled that Defendants' Business Model Complies with Federal Law. ..........................................................................9

C. Whether Attorneys Hoorfar and Munsch Have "Abdicated Their Responsibility" Does Not Affect Defendants' Liability Under the TSR.......11

III. Defendants Are Not Entitled to Summary Judgment on the Issue of Whether the Fees Paid by One Consumer—Out of the Tens of Thousands Who were enrolled in the dual program—Should Be Excluded from the Remedies the Bureau Seeks. ..........................................................................13

IV. The Uncontorverted Facts Demonstrate Defendants' Advertisements are Deceptive, and thus the Bureau is Entitled to Summary Judgment on This Issue. ..........................................................................16

A. Defendants are Liable for the Misrepresentations in Morgan Drexen's Advertisements. ..........................................................................16

B. Injunctive Relief Is Warranted to Prevent Defendants From Engaging in Deceptive Acts and Practices ..........................................................19

C. The Uncontroverted Facts Demonstrate that Defendants' Advertisements are Deceptive. ..........................................................................20

Conclusion ..........................................................................25

# TABLE OF AUTHORITIES

**Cases** **Page**

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005)……..…..…20

*Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977)…………………………………..…25

*Campagnolo S.r.L. v. Full Speed Ahead, Inc.*, 2010 WL 1903431 (W.D. Wash. May 11, 2010)………..…………...…23-24

*CFPB v. Gordon*, Case No. 2:12-cv-06147-RSWL-MRW (C.D. Cal, June 26, 2013)……..3, 18

*Church of the Holy Light of the Queen v. Holder*, 443 Fed. Appx. 302 (9th Cir. 2011)………………………...……………19

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242 (9th Cir.1990)……………………………………………...…21

*Cybersitter, LLC v. China*, 805 F. Supp. 2d 958 (C.D. Cal. 2011)…………….…10

*DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169 (9th Cir. 2005)………...……5

*Dydzak v. California*, 2009 WL 499745 (C.D. Cal. Feb. 26, 2009)…………......…9

*FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119 (D. Conn. 2008)………..…22

*FTC v. Capital Choice Consumer Credit, Inc.*, 2004 WL 5149998 (S.D. Fla. Feb. 20, 2004)……………………..…..…22

*FTC v. Dinamica Financiera LLC*, 2010 WL 9488821 (C.D. Cal. Aug. 19, 2010)…………..…………………15

*FTC v. Evans Products Co.*, 775 F.2d 1084 (9th Cir. 1985)……………..……….19

*FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010)………..………..15

*FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006 (C.D. Cal. 2012)………………………….………14

*FTC v. MacGregor*, 360 Fed. Appx. 891 (9th Cir. 2009)…………….……..…11-12

*FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068 (N.D. Cal. 2009)…………...….…22

*FTC v. Merch. Servs. Direct, LLC*, 2013 WL 4094394 (E.D. Wash. Aug. 13, 2013)…………………..……….…19

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009)……………………...…11-12, 14, 18

*FTC v. Swish Mktg.*, 2010 WL 1526483 (N.D. Cal. Apr. 14, 2010)…………...…14

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989)……………...…19

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)……………………….……….…3

*In re R. M. J.*, 455 U.S. 191 (1982)………………..……………………………...25

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125 (3d Cir. 1994)……………..……………………23

*Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992)………………………………22

*Lambert Corp. v. LBJC Inc.*, 2014 WL 2737913 (C.D. Cal. June 16, 2014)..…...14

*Matter of Cliffdale Associates, Inc.*, 103 F.T.C. 110, 1984 WL 565319 (1984)…………………….……………21

*R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906 (9th Cir. 2005)…………...…9

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990)…………………………..………………23

*Summit Technology, Inc. v. High–Line Medical Instruments, Co.*, 933 F.Supp. 918 (C.D.Cal.1996)……………………..…………………..…20

*Thompson Med. Co. v. FTC*, 791 F.2d 189 (D.C. Cir. 1986)…………………...…24

*U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir. 1986)……………..…25

*United States v. Philip Morris USA, Inc.*, 319 F. Supp. 2d 9 (D.D.C. 2004)……..14

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)………….……………..…19

*Waialua Agr. Co. v. Maneja*, 178 F.2d 603 (9th Cir. 1949)…………………...…5

*William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255 (9th Cir. 1995)……….…23-24

*West v. Secretary of Dep't of Transp.*, 206 F.3d 920 (9th Cir. 2000)………….…5-6

*Wyoming Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930 (10th Cir. 1996)………..…3

**Statutes & Regulations** **Page**

12 U.S.C. § 5517……………………………………………………..…12-13

12 U.S.C. § 5531……...………………………………………..…1, 12-13, 17

12 U.S.C. § 5536…………………………………………..…...…1, 12-13, 17

15 U.S.C. § 6100……………………………..…………………………...…12
16 C.F.R. § 310.2………………………………………………………..…11-12, 17
16 C.F.R. § 310.3………..…………………………………………….…17-18
16 C.F.R. § 310.4………………………………………………………...…1, 4
Fed. R. Civ. P. 56………………………………………………………...…2
Fed. R. Evid. 802……………………………………………………….…10
Fed. R. Evid. 901……………………………………………………….…10
75 Fed. Reg. 48,458 (Aug. 20, 2010)…………………………………..…3, 12
Dodd-Frank Act 12 § 1100C……………………………………………...…12

## INTRODUCTION

The Motion for Partial Summary Judgment and Memorandum of Points and Authorities in Support thereof filed by Defendants Morgan Drexen, Inc. ("Morgan Drexen") and Walter Ledda (collectively, "Defendants") are remarkable in what they *fail* to address. Defendants fail to address the Consumer Financial Protection Bureau's ("Bureau") uncontroverted evidence demonstrating that they have violated the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(a)(5)(i), by collecting upfront fees for debt-settlement services. *See* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment at 13-16 (filed Oct. 7, 2014) (hereinafter "Bureau Memo."). Defendants also do not address the Bureau's allegations that: (a) they violated the TSR, 16 C.F.R. § 310.4(a)(5), by taking upfront fees and refusing to remit them within seven days of a consumer's request, Bureau Memo. 17, Compl. ¶ 16 (filed Aug. 20, 2013); and (b) they violated the TSR and Consumer Financial Protection Act, 12 U.S.C. §§ 5531, 5536 ("CFPA"), by deceptively advertising that consumers will not be charged upfront fees for debt settlement services, Bureau Memo. 17-19, Compl. ¶¶ 17-19.

Instead, Defendants focus on red herrings that have nothing to do with their liability under the TSR and CFPA. For example, Defendants argue that the TSR does not prohibit bankruptcy fees, Defs.' Memo. 7-8, even though: (a) the Bureau has not alleged that it does; and (b) the uncontroverted evidence in this case demonstrates that the upfront fees Defendants collect from consumers are for debt-settlement services, not bankruptcy services, Bureau Memo. 13-16. Defendants also seek summary judgment with respect to two attorneys who are not even parties to this lawsuit, Defs.' Memo. 8-14, and they ask the Court to exclude remedies relating to a single consumer out of tens of thousands of consumers who have signed up for Morgan Drexen's services, *id*. at 14. As this brief explains, this Court need not entertain the merits of these arguments because they do not affect

the outcome of this litigation and are therefore improper subjects of a summary judgment motion.

To the extent any of Defendants' arguments address *actual* claims at issue in this lawsuit, this Court should nonetheless deny Defendants' Motion because: (a) Defendants are not entitled to judgment as a matter of law; and (b) Defendants' legal arguments are premised on incorrect and contradicted factual assertions. *See* Fed. R. Civ. P. 56(a) (summary judgment only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). As this Brief explains, Defendants misstate the controlling case law, and their Memorandum is riddled with factual inaccuracies. Accordingly, they are not entitled to summary judgment on any of the grounds they raise.

## ARGUMENT

### I. DEFENDANTS' ARGUMENT THAT ATTORNEYS MAY CHARGE UPFRONT FEES FOR BANKRUPTCY SERVICES IS IRRELEVANT TO WHETHER DEFENDANTS ARE VIOLATING THE TSR, AND IS NOT A GROUND FOR SUMMARY JUDGMENT.

Defendants' first argument—that the TSR "does not apply to fees received for legal services such as bankruptcy services," Defs.' Memo. 8, either evidences Defendants' profound misunderstanding of the nature of the Bureau's claims or is an attempt to obfuscate the straightforward legal question in this case.

This case is not about whether the TSR prohibits a lawyer who provides bankruptcy services to consumers from charging upfront fees for those services. Rather, it concerns whether Morgan Drexen, a debt settlement company, can charge upfront fees for debt settlement services by masquerading those fees as fees for bankruptcy services when uncontroverted evidence demonstrates that they are really for debt settlement work. Bureau Memo. 8-10; Bureau Statement of Uncontroverted Facts (filed Oct. 7, 2014), Uncontroverted Facts 202-203; 207-213; 232; 248; 255; 257; 294 (hereinafter "Bureau UF [number]"). Defendants' attempt to avoid liability under the TSR by merely labeling the fees they collect as

"bankruptcy fees" instead of "debt settlement" fees elevates form over substance—an approach for which courts have little tolerance. *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 79, n.2 (1984) (Powell, concurring) (noting that "an employer may not evade the strictures of Title VII simply by labeling its employees as 'partners'"); *Wyoming Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 933 (10th Cir. 1996) (party could not evade federal Anti-injunction Act, which prohibits lawsuits that restrain the collection of taxes, merely by characterizing suit as raising a constitutional question because that would "elevate semantics over substance," and the Anti-Injunction Act "would swiftly erode into oblivion").[1]

As the Bureau explained in its Memorandum in Support of Summary Judgment, the uncontroverted facts demonstrate that, despite Defendants' self-serving labels, the upfront fees Defendants collect from consumers are for debt settlement services, not bankruptcy services:

- Morgan Drexen advertises debt settlement services directly to consumers, Bureau Memo. 11, Bureau UF 372-401;
- In response to these advertisements, consumers call Morgan Drexen seeking debt settlement services to *avoid* bankruptcy, Bureau Memo. 6, Bureau UF 142-146;
- Morgan Drexen misleads consumers about the services for which they are signing up, Bureau Memo. 6-7, Bureau UF 186-92;
- As a result, approximately 95% of consumers who seek debt settlement services are enrolled in a "dual program" for both debt settlement and purported bankruptcy services, Bureau Memo. 7, Bureau UF 124;

---

[1]Moreover, as the Bureau explained in its Memorandum, Bureau Memo. 15-16, a defendant cannot evade liability under the TSR by including a "product, such as educational material on how to manage debt, as part of the service it offers," Telemarketing Sales Rule, 75 Fed. Reg. 48,458, 48,467 (Aug. 20, 2010), yet this is precisely what Defendants seek to do here: evade the rule by including another "product"—in this case, "bankruptcy services"—to the debt settlement services they have always offered. *See also CFPB v. Gordon*, Case No. 2:12-cv-06147-RSWL-MRW (C.D. Cal, June 26, 2013), appeal pending No. 13-5684 (bundling products "does not change the fact that defendants were in fact charging advance fees" in violation of federal law).

- Consumers enrolled in the dual program believe they have signed up for debt settlement services, not bankruptcy-related services, Bureau Memo. 7, Bureau UF 193-94, 340;
- Dual program enrollees are provided debt settlement services, and fewer than 1% of these consumers file for bankruptcy, Bureau Memo. 9, 14, Bureau UF 108, 126;
- Consumers enrolled in the dual program have paid more than $90 million in upfront fees for debt settlement services, and Morgan Drexen has received the vast majority of these fees. Bureau UF 110-23, 131.

Accordingly, it is irrelevant whether the TSR permits upfront fees for bankruptcy-related services: the facts demonstrate that Defendants "[r]equest[] or receiv[e] payment of any fee or consideration for any debt relief service," 16 C.F.R. § 310.4, and they must therefore comply with the TSR.

The irrelevance of Defendants' legal argument is underscored by their failure to provide uncontroverted facts to support it. Defendants assert that the "undisputed facts and applicable law in this case demonstrate that the business model used by lawyers employing the support services of Morgan Drexen" do not violate the TSR. Defs.' Memo. 7. Tellingly, Defendants fail to cite even a *single* undisputed fact in support of this assertion. Instead, they erroneously claim that "[t]he CFPB admits that the standard form contract used by attorneys supported by Morgan Drexen does not violate the TSR." Defs.' Memo. 6. This is not true. When the Bureau Representative was asked to review the contracts Defendants use to enroll consumers in the dual program, she stated that the contracts *do* result in the payment of upfront fees in violation of the TSR. Tr. of Corp. Designee, Cara Petersen ("Petersen Tr."), 37:13-17 (Sept. 23, 2014).[2]

---

[2] After the Bureau representative affirmed the Bureau's position, Defense counsel asked whether there was any language "in this *first four pages* of [Exhibit 193]"—which spans seventeen pages total—that violate the TSR. Petersen Tr. 38:15-20 (emphasis added). It was only after counsel for Defendants instructed the Bureau Representative to *ignore* the remaining thirteen pages of the company's contracts that the Bureau Representative responded, "no." *Id*. 38:15-20. Moments later,

In short, Defendants are not entitled to summary judgment with respect to their first argument because: (a) whether the TSR prohibits attorneys from charging upfront fees for bankruptcy services is irrelevant to whether Morgan Drexen has violated the TSR by charging upfront fees for debt settlement services; and (b) Defendants have failed to identify *any* uncontroverted fact demonstrating that their business model complies with the TSR.

## II. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF WHETHER TWO ATTORNEYS—WHO ARE NOT PARTIES TO THIS LAWSUIT—HAVE VIOLATED THE TSR BECAUSE THAT ISSUE IS WHOLLY INAPPOSITE TO THE BUREAU'S CLAIMS.

The bulk of Defendants' Memorandum is devoted to arguing the individual liability of two attorneys affiliated with Morgan Drexen's debt-settlement business, but neither of these attorneys is a party to this action. Undeterred, Defendants request a summary judgment ruling from this Court that these two non-party attorneys are in compliance with the TSR. Defs.' Memo 14, 21. Defendants' request should be denied because such a ruling would violate the United States Constitution's ban on advisory opinions.

Article III, Section 2 of the United States Constitution requires that United States Courts decide only actual "cases" and "controversies." U.S. Const. Art. III, § 2. As the Court of Appeals for the Ninth Circuit explained, "in the absence of a real controversy *between the actual parties*," courts have no power to render mere advisory opinions. *Waialua Agr. Co. v. Maneja*, 178 F.2d 603, 613 (9th Cir. 1949) (citation omitted; emphasis added). Thus, "federal courts do not, and cannot, render advisory opinions." *DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1174 (9th Cir. 2005); *West v. Secretary of Dep't of Transp.*, 206 F.3d 920, 924 (9th

---

however, the Bureau representative described why the fees set forth in the second contract of the dual program are prohibited by the TSR. *Id.* 42:10-17.

Cir. 2000) (noting that, "in order to be justiciable, a 'controversy must be definite and concrete, touching the legal relations *of parties having adverse legal interests*'") (citation omitted; emphasis added).

In this case, the "actual parties"—that is, the "parties having adverse legal interests"—are the Bureau, Morgan Drexen, and Walter Ledda. Defendants' request for a ruling as to the legal rights and liabilities of Attorneys Camron Hoorfar or Tami Munsch—who are not parties to this case—would require this Court to issue an impermissible advisory opinion. Accordingly, this Court should decline to rule on any of Defendants' arguments regarding the rights and liabilities of non-party Attorneys Hoorfar and Munsch.

Constitutional infirmities aside, Defendants' arguments concerning Attorneys Hoorfar and Munsch reveal that the Morgan Drexen business model does not comply with federal law.

### A. The Hoorfar and Munsch Declarations Confirm that Consumers Who Sign Up for Morgan Drexen's Services Do Not Want—and Do Not Receive—Bankruptcy Services, And Are Charged Impermissible Upfront Fees For Debt Settlement Services.

As explained in the Bureau's Memorandum, the uncontroverted facts demonstrate that the upfront fees Defendants charge consumers are for debt settlement services—not bankruptcy services—because, among other things: (a) consumers do not want bankruptcy services and contact Morgan Drexen so that they can settle their debts to *avoid* bankruptcy, Bureau Memo. 6, Bureau UF 142-146; and (b) with rare exception, neither Morgan Drexen nor its network of attorneys performs legitimate bankruptcy-related work, Bureau UF 202-26. The Hoorfar and Munsch declarations only confirm these uncontroverted facts.

First, Hoorfar and Munsch confirm that consumers want debt settlement services—not bankruptcy services—when they contract for services with Morgran Drexen. Both Hoorfar and Munsch state that bankruptcy is "an unsatisfactory option" for most consumers, Hoorfar Decl. 3, Munsch Decl. 3 (same), and that

they "rarely have a client who is eager to have a bankruptcy filing on his or her record." Hoorfar Decl. 7; *see also* Munsch Decl. 6 ("I cannot think of a single client who was eager to have a bankruptcy filing on his or her record.").

Second, Hoorfar and Munsch confirm that, where attorneys do prepare a bankruptcy petition for a consumer, the petition is used as a debt settlement tool—not a bankruptcy tool. Hoorfar and Munsch declare, "[t]he overwhelming majority of my clients would prefer I use the threat of bankruptcy as a means to stop litigation and maximize the client's position for debt resolution." Hoorfar Decl. 7; Munsch Decl. 6 (same). Thus, these declarations support the Bureau's assertion that whatever so-called "value" there may be in creating bankruptcy petitions for consumers who have no interest in filing for bankruptcy, that value relates to debt settlement, and highlights the obvious: *the services for which Defendants request and receive up-front fees concern debt settlement, not bankruptcy.*

Third, Hoorfar and Munsch's flimsy description of the bankruptcy "services" they purportedly provide consumers only undermines their claim that they perform bankruptcy work. Documents produced by Defendants show Hoorfar assigned to consumers who enrolled in the dual program as early as 2010. Decl. of Timothy Hanson ¶ 9 ("Hanson Decl."), attached as Ex. 1 to Decl. of R. Gabriel D. O'Malley ("O'Malley Decl."), which is Exhibit A to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment. Hoofar's declaration, however, makes no mention of what services, if any, dual program enrollees who signed up between 2010 and 2013 received, what role Hoorfar served in providing those services, or when consumers were charged for the services. Moreover, Hoorfar's declaration only concerns consumers who reside in Kansas. Data produced by Defendants, however, demonstrates that, of the 796 dual program enrollees assigned to Hoorfar, 551 of them reside in Missouri. *Id.* ¶ 8. Hoorfar conveniently omits from his declaration *any* information about what services he

provides the Missouri dual program enrollees and how those consumers are billed. This omission is unsurprising: the Missouri consumers signed contracts that are completely different from the one Hoorfor attaches to his declaration, and are instead materially consistent with the contracts the Bureau cites in its Statement of Uncontroverted facts. *Compare* Hoorfar Decl., Ex. 2, *with* Bureau UF 99-109 and evidence cited therein, and O'Malley Decl., Exs. 3-4 (contracts with Missouri consumers).

Hoorfar's description of the purported bankruptcy services he and Morgan Drexen now provide to Kansas consumers makes clear how limited the services are: other than advising consumers to allow him to attempt to negotiate their debts before filing for bankruptcy, Hoorfar's purported bankruptcy work consists of preparing a petition. Hoorfar Decl. 22. Data produced by Morgan Drexen, however, reveals that only 3% of dual program enrollees assigned to Hoorfar have filed a bankruptcy petition. Hanson Decl. ¶ 7. To address the Bureau's evidence that attorneys rarely provide bankruptcy services to consumers, Hoorfar states that he once drove nearly 400 miles to meet with two clients. Hoorfar Decl. 22. If Hoorfar believes that driving nearly 400 miles is tantamount to performing bankruptcy-related work, then this proves the Bureau's point that Morgan Drexen's affiliated attorneys are not truly performing bankruptcy-related work at all.

Attorney Munsch fares no better. She provides one example where her colleague, rather than she, filed a Chapter 7 bankruptcy petition on behalf of one client, but also explains that she provided probate and personal injury services to this particular client as well. Munsch Decl. 23. She neglects to explain whether she counseled this client—or any others—about bankruptcy options, or whether she engaged in any legal or factual analysis of her clients' assets, debts, income, and expenses to determine the benefits or drawbacks of filing for bankruptcy. The striking absence of detail in Attorney Munsch's declaration regarding the specifics

of the "bankruptcy services" she provides is telling, and—at a minimum—casts serious doubt on Munsch's claim that she performs any bankruptcy-related work for Morgan Drexen customers.

Data produced by Morgan Drexen makes clear that Munsch has performed little to no bankruptcy work at all: of the 1,105 dual program enrollees who have been assigned to Attorney Munsch, *none* have had a bankruptcy petition filed. Hanson Decl. ¶ 11.[3]

In short, Defendants have cherry-picked two attorneys from their network in an attempt to put their best case forward, but these attorneys only confirm the Bureau's uncontroverted facts that Defendants collect upfront fees from consumers for debt settlement—not bankruptcy—services.

### B. No Tribunal Has Ruled that Defendants' Business Model Complies with Federal Law.

Defendants rely on the Hoorfar and Munsch Declarations to create a façade that some neutral tribunal has blessed the Morgan Drexen business model, but nothing could be further from the truth.[4]

According to Defendants, the Kansas State Bar and Mississippi Bar investigated the law practices of Attorneys Hoorfar and Munsch, respectively, and "approved the paraprofessional contract between the attorneys and Morgan Drexen." Defs.' Memo. 12. Aside from the fact that the findings of state bar associations do not bind a federal court,[5] these investigations are wholly inapposite because neither addressed *any* of the issues presented in this case. Rather, they

---

[3] Munsch's associate, Samuel Tucker, has filed a mere 5 bankruptcy petitions (0.9%) for the 536 dual program enrollees assigned to him. Hanson Decl. ¶ 14.

[4] Bureau UF 425-34 (explaining the findings of fact and conclusion of law in the Wisconsin and West Virginia actions against Morgan Drexen).

[5] *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 920 (9th Cir. 2005) (noting that state bars "undoubtedly perform[] important and valuable services for the State by way of governance of the profession, but those services are essentially advisory in nature"); *Dydzak v. California*, 2009 WL 499745, at *6 (C.D. Cal. Feb. 26, 2009) (noting that a "State Bar's determinations are advisory only").

addressed whether Attorneys Hoorfar and Munsch violated the rules of professional conduct of their respective states—which is irrelevant to whether Morgan Drexen and Walter Ledda are violating the TSR by charging upfront fees for debt settlement services, and the TSR and the CFPA by engaging in deceptive acts and practices. *See generally Cybersitter*, *LLC v. China*, 805 F. Supp. 2d 958, 963 (C.D. Cal. 2011) (noting, in the context of ruling on evidentiary objections to declarations submitted by parties, this Court "relies only on admissible, relevant evidence").

Moreover, Defendants significantly overstate the findings of each investigation. The Kansas State Bar's ostensible "conclu[sion] that Hoorfar['s] law practice complies with the Kansas Rules of Professional Conduct" consists of a single sentence in an email from a deputy disciplinary administrator stating, "It all looks good." Hoorfar Decl. Ex. 6. It is telling that the best support for Defendants' claim that their business model withstands scrutiny is a four-word sentence in an inadmissible email that is devoid of any legal analysis.[6]

Defendants' reliance on the Mississippi Bar investigation of Attorney Munsch's law practice is equally misplaced. Most notably, the Bar closed its investigation in June 29, 2010—*before* the TSR amendments prohibiting upfront debt settlement fees went into effect. Munsch Decl. Ex 7. Timing aside, as in Kansas, the Mississippi Bar considered only whether the attorney had violated the state's rules of professional conduct; it did not address whether the particular parties in this case (Morgan Drexen and Walter Ledda) violated federal law.

In short, these state bar investigations only serve to highlight the absurdity of Defendants' suggestion that the Morgan Drexen business model has been approved by any neutral tribunal.

---

[6] The Bureau notes that email has not been authenticated and contains hearsay, and is therefore not admissible. Fed. R. Evid. 802, 901.

### C. Whether Attorneys Hoorfar and Munsch Have "Abdicated Their Responsibility" Does Not Affect Defendants' Liability Under the TSR.

Defendants further argue that Attorneys Hoorfar and Munsch—not Morgan Drexen—"actually do[] the legal work . . . as opposed to facilitating a Morgan Drexen ruse," as if this matters for the purposes of establishing Defendants' liability under the TSR. Br. 9. It does not.

Defendants can be held liable for violating the TSR as either sellers or telemarketers regardless of the role other individuals or entities serve in the enterprise. The TSR defines "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or *arranges for others to provide* goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(aa) (emphasis added). The Ninth Circuit has held that a party who "retained authority to review and approve all marketing materials and made the decision as to what products were sold through the program" was a "seller" for the purposes of the TSR, despite the involvement of others in carrying out the telemarketing functions of the business. *FTC v. Stefanchik*, 559 F.3d 924, 930 (9th Cir. 2009). In a different case, the Ninth Circuit held that a party who "entered into contracts with third party call centers to place telemarketing calls," and who "maintain[ed] control over the product, scripts, and quality assurance," demonstrated that the party was a "seller" despite the fact that the party never authorized the calls itself. *FTC v. MacGregor*, 360 Fed. Appx. 891, 893-94 (9th Cir. 2009).

The uncontroverted facts in this case demonstrate that—regardless of whether Attorneys Hoofar and Munsch are "doing the legal work," as Defendants claim—Defendants are "sellers," as that term is defined by the TSR, and are therefore subject to liability for violating the TSR. Among other things, Defendants: advertise for debt settlement services nationwide; perform consumer intake; determine how much consumers who enroll in the debt settlement program

will pay each month; assign consumers to attorneys; send letters to creditors instructing them to call Morgan Drexen rather than the assigned attorney; directly negotiate consumers' debts with creditors; determine which consumer debts to negotiate and when; determine what strategies to employ when negotiating with creditors; receive debt settlement offers from creditors; handle all paperwork relating to consumers' debts; administer consumers' and attorneys' accounts to pay creditors and itself; and receive 85%-95% of all fees paid by consumers. Bureau UF 13, 20-54, 88, 111, 341, 347, 350-53, 356, 360-62. Defendants are therefore significantly more involved in "provid[ing], offer[ing] to provide, or *arrang*[*ing*] *for others to provide* goods or services to the customer" in this case than the defendants subject to seller liability in either *Stefanchik* or *MacGregor*.

Defendants are also subject to liability for violating the TSR as "telemarketers," which is defined as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor." 16 C.F.R. § 310.2(cc). Again, the uncontroverted facts demonstrate that Defendants receive telephone calls from consumers who respond to the telephone numbers listed in Morgan Drexen's advertisements, Bureau UF 33, and therefore Defendants are "telemarketers" subject to liability under the TSR.

To the extent Defendants argue that the TSR does not apply to them because they are affiliated with attorneys, this argument has no merit and has already been rejected by this Court. Section 1027(e)(3) of the CFPA specifically states that the Bureau shall have authority to regulate the conduct of an attorney "to the extent that such attorney is otherwise subject to any of the enumerated laws or the authorities transferred under subtitle F or H." 12 U.S.C. §§ 5517(e)(3). Subtitle H of the CFPA transferred authority to the Bureau to enforce the TSR. Dodd-Frank Act 12 § 1100C (amending Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6100, *et seq.*). The TSR does not contain an

exemption for attorneys who act as "sellers" or "telemarketers" under the TSR, nor does it exempt any party or entity assisting any such attorney. *See* 75 Fed. Reg. 48,458, 467-68 (Aug. 10, 2010); Order Denying Defs.' Mot. to Dismiss at 17-18 (Jan. 10, 2014) (noting that, as Defendants admit, the Bureau's TSR claims are not subject to Section 1027(e)'s limitation on the Bureau's enforcement power over attorneys).[7]

In short, whatever role Attorneys Hoorfar and Munsch serve in connection with Morgan Drexen's provision of debt settlement services does not absolve Defendants of liability for violating the TSR.

## III. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF WHETHER THE FEES PAID BY ONE CONSUMER—OUT OF THE TENS OF THOUSANDS WHO WERE ENROLLED IN THE DUAL PROGRAM—SHOULD BE EXCLUDED FROM THE REMEDIES THE BUREAU SEEKS.

Of the 62,654 consumers who were enrolled in the dual program from October 27, 2010, to August 31, 2014, Defendants request that this Court grant

[7] Defendants also claim that Section 1027(e) of the CFPA "prohibits CFPB from regulating lawyers engaged in the practice of law." Defs.' Memo. 11. Section 1027(e) is irrelevant in this case because the Bureau has not named any lawyers as defendants. Moreover, Defendants' claim is incorrect. In addition to the carve out in 1027(3)(3) discussed above, Section 1027(e) specifically provides that the Bureau *may* exercise authority with respect to activities of attorneys if: (1) the consumer financial product or service is "not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship;" or (2) the consumer financial product or service is "otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service." 12 U.S.C. §§ 5517(e)(2)(A)-(B). Here, the Bureau has demonstrated that Defendants' dual program is designed to disguise consumers' up-front payments for debt settlement services performed by non-attorneys employed by Morgan Drexen as payments for bankruptcy-related work purportedly performed by attorneys. As such, the services provided to Morgan Drexen customers are not part of, or incidental to, the practice of law occurring exclusively within the scope of the attorney-client relationship. Thus, the limited exemption for attorneys in Section 1027(e) does not preclude the Bureau from enforcing the CFPA against Defendants or an attorney if it chooses.

summary judgment as to a single consumer—Libby Moore-Kile—and exclude the fees paid by this consumer from the remedies the Bureau seeks. Defs.' Memo. 16. This request is neither timely nor warranted, and should be denied.

Whether one consumer receives "value for the monies she paid," as Defendants contend, Br. 14-15, has no bearing on the issue of whether Defendants violated the TSR and CFPA.[8] Rather, this argument addresses the scope of remedies the Bureau seeks. In *United States v. Philip Morris USA, Inc.*, 319 F. Supp. 2d 9, 12 (D.D.C. 2004), the court held that summary judgment as to remedies was inappropriate where there had not yet been a finding as to liability. The court explained that "[e]very lawsuit has two components: liability and remedy," and ruling on remedies before determining liability would impermissibly put the "cart before the horse." *Id.*; *see also Lambert Corp. v. LBJC Inc.*, 2014 WL 2737913, at *5 n.4 (C.D. Cal. June 16, 2014) (noting that "it would be premature for the Court to address what remedies are available to plaintiff" when liability had not been established); *FTC v. Swish Mktg.*, 2010 WL 1526483, at *2 (N.D. Cal. Apr. 14, 2010) ("Before this Court may even reach the question of an appropriate remedy, the [Federal Trade Commission] must first establish defendants' liability.").

As in *Phillip Morris*, Defendants ask this Court to put the "cart before the horse" and issue a summary judgment ruling on the issue of remedies, despite the fact that they have not sought summary judgment on the underlying issues of whether they are liable for violating the TSR and CFPA. Their request is premature and should be denied.

[8] A defendant can violate the TSR and the CFPA regardless of whether the defendant ultimately provides valuable services or products to consumers. *See* Bureau Compl. ¶¶ 63-97; *see, e.g.*, *Stefanchik*, 559 F.3d at 929 n.12 (noting that "[t]he existence of some satisfied customers does not constitute a defense" to a deceptive practices claim) (citation omitted).

Timing issues aside, Defendants' argument fails on its merits. Any purported "value" that one consumer may have received from Defendants does not limit the type or scope of remedies to which the Bureau is entitled. In *FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1018-19 (C.D. Cal. 2012), the defendant similarly argued that the Court should subtract from the total amount of restitutionary damages "monies attributable to consumers who benefitted from the programs" that the defendant had sold to consumers in violation of the Federal Trade Commission Act and the TSR. Judge Nguyen rejected the defendant's argument, noting that "[w]hether the consumer is lucky enough to make a profit or some small amount of money from applying what he learned from Defendants' products is irrelevant to the issue of whether Defendants' representations were deceptive and misleading." *Id*.[9]

Here, too, whether one consumer out of the tens of thousands who were enrolled in the dual program received any benefit does not cure the fact that Defendants collected illegal upfront fees in violation of the TSR and engaged in deceptive acts and practices in violation of both the TSR and CFPA. In fact, as Moore-Kile's own declaration demonstrates, Defendants collected upfront fees for debt settlement services—not bankruptcy services. Moore-Kile Decl. ¶ 11 ("I understood that the preparation of the bankruptcy petition was part of Tami Munsch Attorney at Law's legal strategy to leverage the bankruptcy petition so that the creditors forego filing costly litigation and allow the settlement negotiation

[9] *See also FTC v. Dinamica Financiera LLC*, 2010 WL 9488821, at *7 (C.D. Cal. Aug. 19, 2010) (advertisements that led consumers to believe loan modifications were guaranteed—when they were not—constituted deceptive advertising practice, and "[a]lthough some clients received loan modifications, the fact that some customers were satisfied with defendants' services is not a defense"); *see generally FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1011 (N.D. Cal. 2010); *aff'd*, 475 F. App'x 106 (9th Cir. 2012) (federal agency "is not required to prove that every individual consumer was injured" to justify restitution in the full amount of funds lost by consumers because "[t]o require such individualized proof 'would thwart effective prosecutions of large consumer redress actions'") (citation omitted).

process to unfold."); *id.* at ¶ 20 noting that Moore-Kile did not want to file for bankruptcy); O'Malley Decl., Ex. 5 (Feb. 4, 2011 letter from Morgan Drexen to Moore-Kile, stating that Munch and Morgan Drexen would be "assist[ing] you with your desire to AVOID bankruptcy") (emphasis in original). Despite Defendants' best efforts to convince this Court that the fees Moore-Kile paid were "bankruptcy fees," the facts tell a different story: Moore-Kile paid upfront fees for debt-settlement services, as she did not want—and did not receive—bankruptcy services. It is irrelevant that she may have received some debt-settlement benefit in the process: the fact remains that Defendants violated the law, even with respect to Moore-Kile.[10] For this reason, the fees Moore-Kile paid should be included in the Bureau's calculation of restitution.

In short, Defendants' request for summary judgment on the issue of whether the fees paid by one consumer should be excluded from the calculation of remedies the Bureau seeks is both premature and improper, and should be denied.

## IV. THE UNCONTROVERTED FACTS DEMONSTRATE DEFENDANTS' ADVERTISEMENTS ARE DECEPTIVE, AND THUS THE BUREAU IS ENTITLED TO SUMMARY JUDGMENT ON THIS ISSUE.

Defendants are not entitled to summary judgment on the issue of whether their advertisements deceptively represent, in violation of the TSR and CFPA, that consumers will be debt free in months. Rather, the uncontroverted facts demonstrate that Defendants' advertisements are deceptive because they: contain express representations that are false; are likely to mislead consumers acting reasonably under the circumstances; and are material. Bureau Memo. 17-19. Defendants' arguments to the contrary are meritless.

### A. Defendants are Liable for the Misrepresentations in Morgan Drexen's Advertisements.

[10] Whether Moore-Kile actually consented to being charged upfront fees is irrelevant: the TSR does not permit sellers or telemarketers to circumvent the rule's prohibition by obtaining consent.

Defendants attempt to avoid liability by placing the blame for their deceptive advertisements on an attorney named Vincent Howard. Defs.' Memo. 16. This tactic fails for three reasons.

First, even assuming that Howard—or anyone else—has "final approval" over Morgan Drexen's advertisements as Defendants claim, *id.*, Defendants are not absolved of their independent duty to comply with the TSR and CFPA. As explained above, TSR liability attaches to "any seller" who so much as "*arranges for others to provide* goods or services" to consumers. 16 C.F.R. § 310.2(aa) (emphasis added).[11] Moreover, as the Bureau explains in its Memorandum, CFPA deception liability attaches to any "covered person[]," which includes any entity that "offer[s] or provid[es] a consumer financial product or service." 12 U.S.C. §§ 5481(6)(A) and (19); *see also* Bureau Memo. 12. Since the uncontroverted facts in this case demonstrate that (a) Defendants are "sellers" under the TSR, Bureau UF 1, 19-54, and "covered persons" under the CFPA, *id.*, and (b) Defendants made material misrepresentations, Bureau UF 372-97, Defendants are indeed liable for their deceptive advertising practices under both statutes regardless of whether anyone else had approval—final or otherwise—over the advertisements. 16 C.F.R. §§ 310.3(a)(2)(ii) and (ix) (TSR deception liability); 12 U.S.C. §§ 5531(a), 5536(a)(1)(B) (CFPA deception liability).

Second, Ledda is individually liable for the deceptive Morgan Drexen advertisements. As set forth above, Ledda is a "telemarketer" or "seller" of "debt relief products or services" under the TSR who is charging consumers fees before settling their debts and misrepresenting core aspects of the debt relief services he claims to provide to consumers. The evidence also overwhelmingly shows he is a

[11] As explained, *supra*, at p.12, the uncontroverted facts further demonstrate that Defendants receive telephone calls from consumers, Bureau UF 33, and are therefore subject to liability under the TSR as "telemarketers" as well. 16 C.F.R. § 310.2(cc).

"covered person" who deceptively offers or provides services to consumers in violation of the CFPA. Furthermore, Ledda is a "related person" under the CFPA, and is thus deemed a "covered person" who is also subject to the CFPA's bar on deceptive practices. 12 U.S.C. § 5481(25)(B)(C); *see also* Bureau UF 27, 354-55, 371.

Again, the uncontroverted facts in this case demonstrate that Ledda both participated directly in, and had the authority to control the creation and dissemination of Morgan Drexen's advertisements. Bureau UF 27-28, 354-55. Given his active involvement in Morgan Drexen's marketing department, Bureau UF 354-55, 371, at a bare minimum, Ledda should have known about the company's deceptive practices; in fact, the Bureau has presented evidence of Ledda's *actual* knowledge. *See* Bureau UF 398 (testimony from Ledda in April 2013—during which time Morgan Drexen aired advertisements declaring "no upfront fees"—that the "no upfront fees" claim is one that he "do[es not] feel comfortable with today"). Accordingly, Ledda is personally liable for Morgan Drexen's deceptive advertisements regardless of Howard's involvement.[12]

Third, Defendants' claim that Howard is the only person who has final approval for all Morgan Drexen advertisements is untrue. The only support Defendants cite for this claim is the contract between Howard and Morgan Drexen, which merely states that Howard has "prior approval [for] any ad *naming HOWARD*." Ledda Decl. Ex. 1, ¶ 3(C) (emphasis added). However, Defendants

[12] 16 C.F.R. §§ 310.3(a)(2)(ii) and (ix) (TSR deception liability); 12 U.S.C. §§ 5531(a), 5536(a)(1)(B)(C) (CFPA deception liability); *see Gordon*, Case No. 2:12-cv-06147-RSWL-MRW at 4 (holding the individual defendant liable for the acts of a corporate defendant under the CFPA because he participated in the deceptive practices or had authority to control them and had knowledge or was recklessly indifferent to the truth or falsity of the misrepresentations or was aware of a high probability of fraud along with an intentional avoidance of the truth) (citing *Stefanchik*, 559 F.3d at 928 (officer was "at least recklessly indifferent" because he was warned by counsel and employees that scripts were unsubstantiated and consumers did not receive promised results)).

utilized myriad advertisements that make no mention of Howard (or any other attorney for that matter), so Howard did not have "prior" (or any) approval over those advertisements. *See, e.g.*, Bureau UF 372, 374, 377, 379, 381, 383, 385, 387, 389. Contractual language aside, there is no evidence that Howard did, in fact, review and approve the advertisements that are the subject of the Bureau's Complaint, and thus there is no evidence to support Defendants' summary judgment argument.

**B. Injunctive Relief Is Warranted to Prevent Defendants From Engaging in Deceptive Acts and Practices**

As explained in the Bureau's Memorandum, courts enjoy "broad discretion" in fashioning injunctive relief, *Church of the Holy Light of the Queen v. Holder*, 443 Fed. Appx. 302, 303 (9th Cir. 2011), and—despite Defendants' contention to the contrary—it is black-letter law that a "court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). This is because "[t]he purpose of an injunction is to prevent future violations" of the law. *W. T. Grant Co.*, 345 U.S. at 633. Accordingly, Defendants' argument that this Court is deprived of its broad discretion to issue an injunction has no basis in the law, and Defendants' request for summary judgment on this issue should be denied.

None of the cases Defendants cite, Defs.' Memo. 16, salvages their position. *Federal Trade Commission v. Evans Products Co.*, 775 F.2d 1084, 1088 (9th Cir. 1985), is distinguishable because the deceptive conduct at issue there had ceased three years prior to when the Federal Trade Commission ("FTC") filed its complaint and was unlikely to recur. *Federal Trade Commission v. World Wide Factors, Ltd.*, 882 F.2d 344, 346-47 (9th Cir. 1989) and *Federal Trade Commission v. Merch. Servs. Direct, LLC*, 2013 WL 4094394, at *3 (E.D. Wash. Aug. 13, 2013), are distinguishable because they both involve preliminary injunctions, which are evaluated under an entirely different set of criteria than the

criteria for permanent injunctions. Even in *World Wide Factors*, however, the court held that a preliminary injunction *was proper* because the defendants had "attempt[ed] to engage in further fraudulent activity." 882 F.2d at 347.

Injunctive relief is especially appropriate in this case given Defendants' blatant disregard of the law, and their history of engaging in unlawful practices. Bureau Memo. 21-23. As the uncontroverted facts demonstrate, despite years of complaints from consumers, investigations by state regulatory agencies, orders finding that Morgan Drexen has violated state law, and even an injunction from the FTC barring Walter Ledda from, among other things, making material misrepresentations to consumers, Defendants continue—to this day—to drain consumers of millions of dollars through their unlawful conduct. Bureau UF 425-39. This is precisely the type of case where injunctive relief is vital to protect consumers from Defendants' unlawful practices moving forward.

### C. The Uncontroverted Facts Demonstrate that Defendants' Advertisements are Deceptive.

Defendants request summary judgment on the ground that—according to Defendants—Morgan Drexen's advertisements do not convey a guarantee message to consumers. Defs.' Memo 17. This argument fails because the uncontroverted facts demonstrate that Defendants' advertisements expressly claim that consumers who enroll in Morgan Drexen's debt settlement program will be debt free in months. Accordingly, it is the Bureau—not Defendants—who is entitled to summary judgment on this issue.

First, Defendants ask this Court to treat the express language in Morgan Drexen advertisements that consumers will "be debt free in months" as mere "puffery." Defs.' Memo. 17. This argument has no basis in fact or law.

Puffery involves "generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." *Summit Technology, Inc. v. High–Line Medical Instruments, Co.*, 933 F.Supp. 918, 931 (C.D.Cal.1996)

(citation omitted). In *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005), for example, the Court distinguished between a defendant's statement that its laptop computers had "outstanding quality, reliability, and performance," which was puffery, and its statement that the laptops "pass[] through the most stringent quality control tests," which was not puffery, and therefore actionable. The distinction is this: "[a]dvertising which merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 246 (9th Cir.1990).

If Defendants' advertisements had merely represented that Morgan Drexen could provide consumers with "quality" debt settlement services, then Defendants might have a colorable puffery defense. The advertisements at issue here do no such thing. Rather, they proclaim that Morgan Drexen enables consumers to "Be DEBT FREE in months." Bureau UF 391 (emphasis in original); *see also id.* at 372 ("You could become completely debt free in months"); *id.* at 376 ("Be debt free in months"); *id.* at 377, 379, 381, 383, 385, 387 (same). These statements fall squarely within the realm of advertisements describing "specific or absolute characteristics" of a product or service that are plainly actionable.

Second, Defendants' reliance on an expert report, which purportedly shows that consumers do not take away "any sort of guarantee message" from Morgan Drexen's advertisements, Defs. Memo. 17-19, is misplaced.[13] The Bureau has alleged that Defendants' advertisements contain *express* claims that are demonstrably false. Compl. ¶¶ 81, 85, 92, 96; Bureau Memo. 18-19. As such, this Court need only examine the claims themselves—and not any extrinsic evidence such as consumer surveys or expert opinions—to conclude that the advertisements

[13] The Bureau anticipates filing a Daubert motion to exclude Thomas Maronick's report, and is taking Professor Maronick's deposition today (October 31, 2014).

are deceptive. *See Matter of Cliffdale Associates, Inc.*, 103 F.T.C. 110, 1984 WL 565319, at *37 (1984) (noting that, "[w]hen the advertisement contains an *express* claim, the representation itself establishes its meaning" without the need for extrinsic evidence); *see also id*. at *39 (express claim that product was a "new invention"—when it was not—was held to be deceptive on its face) (citation omitted); *FTC v. Capital Choice Consumer Credit, Inc.*, 2004 WL 5149998, *33 (S.D. Fla. Feb. 20, 2004); *aff'd*, 157 F. App'x 248 (11th Cir. 2005) (when an advertisement contains an express claim or a deliberately-made implied claim, "[e]xtrinsic evidence of deception is not required, but deception may be found by reviewing the claims themselves") (citation omitted); *FTC v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 125 (D. Conn. 2008) ("If an advertisement makes a claim expressly, then extrinsic evidence is not necessary."). Defendants' consumer survey is therefore insufficient as a matter of law to overcome the plain meaning of the express claims made in Defendants' advertisements.

Even if this Court determines that the claims made in Defendants' advertisements are implied, extrinsic evidence is not required to determine the "take-away" message conveyed by a challenged advertisement. In *Kraft, Inc. v. FTC*, 970 F.2d 311, 318 (7th Cir. 1992), the FTC was permitted to "view the ad first and, if it is unable on its own to determine with confidence what claims are conveyed in a challenged ad, to turn to extrinsic evidence." Although the defendant in *Kraft* acknowledged that extrinsic evidence was not required to determine the message conveyed when an advertisement contained an *express* claim, the defendant argued that—as a matter of law—extrinsic evidence was necessary where the advertisement contained *implied* claims. *Id*. The Seventh Circuit rejected this argument, holding that the FTC "may rely on its own reasoned analysis to determine what claims, including implied ones, are conveyed in a challenged

advertisement, so long as those claims are reasonably clear from the face of the advertisement." *Id*. at 319.[14]

The cases Defendants cite do not undermine the Bureau's position or the case law upon which it relies. First, none of these cases involves *express* claims, so they do not address the well-established principle that extrinsic evidence is insufficient to overcome the plain meaning of an express claim made in an advertisement. Second, none of these cases supports Defendants' claim that proving the "take-away" *implied* message of an advertisement "*requires* some sort of extrinsic proof." Defs.' Memo. 18 (emphasis added). In fact, both *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228 (3d Cir. 1990), and *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 130 (3d Cir. 1994), confirm the Bureau's well-supported argument that extrinsic evidence is unnecessary to prove an implied claim. In both cases, the U.S. Court of Appeals for the Third Circuit explained that "[t]he FTC, as a plaintiff, can rely on its own determination of deceptiveness" of an implied claim, and "consumer testimony proving actual deception is not necessary when the FTC claims that an advertisement has the capacity to deceive or mislead the public." *Sandoz Pharm.*, 902 F.2d at 228; *see also Johnson & Johnson*, 19 F.3d at 130 (noting that "the FTC plaintiff could rely on its own determination of deceptiveness"). Indeed, the out-of-context language Defendants cite from *Sandoz*, *Johnson & Johnson*, and other cases applies *only* to private plaintiffs—not to government agencies like the FTC or the Bureau—because a

---

[14] *See also FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068, 1077-78 (N.D. Cal. 2009) (noting that "[t]he FTC does not need to present consumer survey data in order to prove what is obvious to any rational reader"); *see also id.* (listing cases where courts held that FTC was not required to present extrinsic evidence to demonstrate the existence of an implied representation); *Bronson Partners*, 564 F. Supp. 2d at 126 (noting that, "[e]ven if an advertisement makes a claim by implication, extrinsic evidence is not . . . necessary, so long as those claims are reasonably clear from the face of the advertisement").

private plaintiff, unlike a federal agency, "is not entitled to the luxury of deference to its judgment." *Sandoz Pharm.*, 902 F.2d at 228; *see also Johnson & Johnson*, 19 F.3d at 130; *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995); *Campagnolo S.r.L. v. Full Speed Ahead, Inc.*, 2010 WL 1903431, at *8 (W.D. Wash. May 11, 2010). Finally, *Thompson Med. Co. v. FTC*, 791 F.2d 189, 197 (D.C. Cir. 1986), has no bearing here because that court merely concluded that "[t]he issue of what message was reasonably likely to be conveyed to consumers by [the defendant's] advertising was extensively addressed by expert testimony," and "the FTC's expertise and experience in this area make its opinion very difficult to challenge." This finding is hardly tantamount to a "requirement" that extrinsic evidence is necessary to demonstrate implicit advertising messages, as Defendants claim.

Morgan Drexen's advertisements plainly satisfy the "reasonably clear" standard: they clearly represent that Morgan Drexen will enable consumers to be "debt free" and they clearly state that it will take Morgan Drexen only a matter of months to achieve this result. *See, e.g.,* Bureau UF 372, 377, 379, 381, 383, 385, 387, 391. Accordingly, Defendants' attempt to question the obvious claims made by these advertisements with a consumer survey fails.

Even were the Court to consider Defendants' expert report, his findings (flawed though they are) actually corroborate the Bureau's allegations: according to Maronick, 57% of consumers who viewed the Morgan Drexen commercial believed that it would take months—not years—to become debt free. Maronick Decl., Ex. 5 (see prompt number 11). Nearly half of these respondents believed that the program guaranteed they would become debt free within a year.[15] *Id*.

[15] Even if the Court were to find that the advertisement about which Maronick opines is not deceptive, Defendants would still not be entitled to summary judgment on the Bureau's deception claims. Maronick's opinion concerns only one of the commercials at issue in this case, and ignores the remaining ten advertisements that the Bureau asserts are deceptive.

Finally, the First Amendment does not give Defendants—or any other entity or individual engaged in commercial speech—free reign to make deceptive representations in advertisements. As the U.S. Supreme Court has explained, "[a]dvertising that is false, deceptive, or misleading . . . is subject to restraint" and may be prohibited. *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977); *see also In re R. M. J.*, 455 U.S. 191, 203 (1982) ("Misleading advertising may be prohibited entirely."); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986) ("Nothing is clearer in the emerging law of commercial free speech than that false or misleading commercial speech is clearly subject to restraint."). Accordingly, Defendants' First Amendment argument is meritless.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion for Partial Summary Judgment on all issues raised in the Motion and Memorandum in support thereof.

Respectfully submitted,

CARA PETERSEN
Acting Deputy Enforcement Director
For Litigation

/s/ R. Gabriel D. O'Malley
R. Gabriel D. O'Malley
Shirley Chiu
Jan Singelmann
*Enforcement Attorneys*
Consumer Financial Protection
Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722