GERALD A. KLEIN
KLEIN & WILSON
326 Old Newport Boulevard
Newport Beach, CA 92663
Tel. (949) 631-3300
Fax. (949) 631-3703
Email: Klein@kleinandwilson.com

RANDALL K. MILLER (admitted *pro hac vice*)
NICHOLAS M. DEPALMA (admitted *pro hac vice*)
RANDAL M. SHAHEEN (admitted *pro hac vice*)
VENABLE LLP
8010 Towers Crescent Drive
Suite 300
Tysons Corner, VA 22182
(Phone) 703.905.1449
(Fax) 703.821.8949
Email: rkmiller@venable.com
nmdepalma@venable.com

CELESTE M. BRECHT (SBN 238604)
VENABLE LLP
2049 Century Park East
Suite 2100
Los Angeles, CA 90067
(Phone) 310-229-9900
(Fax) 310-229-9901
Email: cmbrecht@venable.com

Attorneys for Defendants Morgan Drexen, Inc.
and Walter Ledda

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CONSUMER FINANCIAL PROTECTION BUREAU

Plaintiff,

v.

MORGAN DREXEN, INC.
and
WALTER LEDDA, individually, and as owner, officer, or manager of Morgan Drexen, Inc.

Defendants.

CASE NO. SACV13-01267 JLS (JEMx)

Hon. Josephine L. Staton
Courtroom: 10A (Santa Ana)

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU**

**Hearing Date: November 21, 2014**
**Time: 2:30 p.m.**
**Courtroom: 10A**

**Discovery Cut-Off: September 16, 2014**
**Pretrial Conference: January 23, 2015**
**Trial Date: February 10, 2015**

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**TABLE OF CONTENTS**

**Page**

I. CFPB CANNOT DEFEAT PARTIAL SUMMARY JUDGMENT BY IGNORING THE UNCONTROVERTED FACTS THAT MORGAN DREXEN SUPPORTS LAWYERS -- IN PARTICULAR, ATTORNEY HOORFAR AND ATTORNEY MUNSCH ..........1

II. CFPB FAILS TO PROVIDE ANY FACTUAL BASIS ON WHICH THE COURT SHOULD DENY PARTIAL SUMMARY JUDGMENT AS TO MORGAN DREXEN'S SUPPORT FOR ATTORNEYS HOORFAR AND MUNSCH ..........6

III. CFPB HAS FAILED TO CONTEST FACTS SUFFICIENT FOR THE COURT TO DENY MORGAN DREXEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CONSUMER LIBBY MOORE-KILE ..........13

IV. CFPB FAILS TO REBUT MORGAN DREXEN'S ENTITLEMENT TO AN ORDER OF PARTIAL SUMMARY JUDGMENT THAT IT DID NOT MAKE A FALSE "GUARANTEE" ADVERTISING CLAIM ..........14

A. Morgan Drexen Is Not the "Advertiser" ..........14

B. CFPB Alleges -- But Fails to Identify -- the "Express" Advertising Statement ..........16

C. CFPB's Alternative "Implied" Falsity Claim Contradicts the Consumer Perception Data ..........17

D. Morgan Drexen's First Amendment Rights Create Important Limitations on CFPB Enforcement Authority ..........19

V. CONCLUSION ..........21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Bar Ass'n v. F.T.C.*,
430 F.3d 457 (D.C. Cir. 2005) ......9

*Bates v. State Bar of Arizona*,
433 U.S. 350 (1977) ......20

*Brooks v. Capistrano Unified School Dist.*,
1 F. Supp. 3d 1029 (C.D. Cal. 2014) ......5

*Buetow v. A.L.S. Enters., Inc.*,
650 F.3d 1178 (8th Cir. 2011) ......17

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
2010 WL 2079694 (W.D. Wash. May 20, 2010) ......15

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980) ......20

*Hansen v. United States*,
7 F.3d 137 (9th Cir. 1993) ......5

*Hexcel Corp. v. Ineons Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) ......5

*In re Glemaud*,
11-31697, 2013 WL 4498677 (Bankr. D. Conn. Aug. 21, 2013) ......10

*In re Hearn*,
10-81355, 2011 WL 5357849 (Bankr. M.D.N.C. Nov. 4, 2011) ......10

*In re Prudhomme*,
152 B.R. 91 (Bankr. W.D. La. 1993) ......10

*In re Toyota Motor Corp. Hybrid Brake Mktg.*,
959 F. Supp. 2d 1244 (C.D. Cal. 2013) ......5

*Keller Fin. Servs. of Florida, Inc.*,
248 B.R. 859 (Bankr. M.D. Fla. 2000) ......10

*Kraft v. FTC*,
970 F.2d 311 (7th Cir. 1992) ......19

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ......12

*Merck Cons. Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*,
19 F.3d 125 (3d Cir. 1994) ......18

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

*Millennium Labs., Inc. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594 (D. Md. 2013) .......... 17

*Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999) .......... 20

*Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131 (C.D. Cal. 2004) .......... 13

*R.J. Reynolds Tobacco v. Shewry*, 423 F.3d 906 (9th Cir. 2005) .......... 7

*Steinberg Moorad & Dunn, Inc. v. Dunn*, 2002 WL 31968234 (C.D. Cal. Dec. 26, 2002) .......... 15

*Thompson Med. Co. v. FTC*, 791 F.2d 189 (D.C. Cir. 1986) .......... 19

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) .......... 17

*United Inds. Corp. v. Clorox Co.*, 140 F.3d 1175 (8th Cir. 1998) .......... 18

*William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255 (9th Cir. 1995) .......... 17

**Statutes**

11 U.S.C. § 329 .......... 9, 10

12 U.S.C. § 5517 .......... 2, 3, 8

16 C.F.R. § 310 .......... 10

47 U.S.C. § 230 .......... 15

Kansas Rules of Professional Conduct R. 7.5 .......... 16

Rules of Professional Responsibility Rule 5.3 .......... 8

**Other Authorities**

156 Cong. Rec. E1347, (July 15, 2010) .......... 8, 9



VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Defendants Morgan Drexen, Inc. and Walter Ledda (together "Morgan Drexen"), hereby reply in support of their Motion for Partial Summary Judgment (Document 145-1), respectfully stating as follows:

## I. CFPB CANNOT DEFEAT PARTIAL SUMMARY JUDGMENT BY IGNORING THE UNCONTROVERTED FACTS THAT MORGAN DREXEN SUPPORTS LAWYERS -- IN PARTICULAR, ATTORNEY HOORFAR AND ATTORNEY MUNSCH

The CFPB opposition fails to address two key questions: How is it that the lawyers are not violating the TSR, but the paralegals who work for them are? Why is it that the lawyers are allowed to keep the fees they earned for their bankruptcy services, but the paralegals must not only disgorge the money the lawyers paid to them in support of those services, but also disgorge money clients paid to the lawyers as legal fees?

A fatal flaw that pervades CFPB's opposition to partial summary judgment[1] is an intellectually dishonest attempt to pretend that the lawyers Morgan Drexen supports like declarants Hoorfar and Munsch – whom the Bureau previously accused of perpetrating a "ruse" – are now so irrelevant that any attempt to discuss the lawyers amounts to a request for an "advisory opinion" (Opp'n at 5) about disinterested persons "who are not parties to this case." (Opp'n at 6).

It is a true "Wizard of Oz" moment where the Bureau is shouting for the Court to pay no attention to those lawyers behind the curtain – the ones who are actually holding the reins of authority over the legal services provided and advertising disseminated, and who stand in privity with the law client/consumers who the Bureau purports to protect. This is a changed rhetoric for the CFPB and

---

[1] Document 189, referred to herein as "Opp'n."

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

impossible to reconcile with other CFPB statements in this case and the uncontroverted facts. CFPB's Complaint alleges that consumers pay lawyers for legal services but that the lawyers lie, actually do "little to no work," and kick back the legal fee payments to Morgan Drexen. The Complaint says that the "Dual Contract Model" is "designed to disguise consumers' up-front payments for debt relief services provided by Morgan Drexen as payments for bankruptcy-related work ***purportedly*** performed by Network Attorneys" which legal services are actually not performed (*i.e.*, the lawyers are lying). Compl. ¶ 14 (emphasis added). The same day it filed this lawsuit, CFPB issued a press release, stating: "CFPB believes the bankruptcy-related contract is a ***ruse*** designed to disguise the illegal upfront fees the company is charging consumers for debt-relief services as bankruptcy-related fees." http://www.consumerfinance.gov/newsroom/cfpb-files-suit-against-morgan-drexen-inc-for-charging-illegal-fees-and-deceiving-consumers/ (emphasis added)

Aside from the fact that CFPB cannot reconcile its constantly-changing characterizations about the lawyers (going from accusing the lawyers of intentional misconduct ("ruse") to treating them as irrelevant), the Bureau's attempt to avoid the lawyers:

- Disregards the actual contracts -- legally-enforceable instruments establishing that consumers engage a lawyer and pay a lawyer for legal services and, separately, Morgan Drexen contracts with the lawyers to provide support services.
- Circumvents the practice-of-law exclusion (12 U.S.C. § 5517(e))[2], which is intended to avoid CFPB regulation of the practice of law.

---

[2] The Dodd-Frank Act provides under the "exclusion for the practice of law," provision that "the Bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the

(continued…)

- Fails to acknowledge that many of the consumers ***want*** legal representation and therefore engage a ***lawyer*** -- rather than hire a "debt settlement company" as the Bureau alleges, from which legal representation they derive substantial benefit (such as stopping the harassing collection phone calls).
- Denies the nature of the relationship between a lawyer and paralegal, and the truth that both lawyer and paralegal are inextricably intertwined in the provision of legal services, protected by the same protections (attorney-client privilege and work product doctrine), and the lawyer is responsible for, and must supervise, the paralegal under state ethics rules. The relationship is significantly closer than a mere principle-agent relationship, which appears to be the round hole into which the Bureau attempts to cram the square peg that are the facts of this case (*see* Opp'n at 11-12, alleging that Morgan Drexen is simply a "telemarketer" who is facilitating violations of law).
- Disregards the fact that the Bureau seeks to recover fees paid by law clients to lawyers as part of CFPB's outlandish and punitive "$90 million" damages claim (including the bankruptcy legal fees paid by law client Moore-Kile to Attorney Tami Munsch that are the subject of the motion for partial summary judgment).
- Ignores that fact that in its own motion for summary judgment and supporting statement, the Bureau made ***hundreds*** of references to testimony and documents supplied by the lawyers – making clear

---

(continued)

practice of law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

that the lawyers are integral not only to the business at issue, but also unavoidably ***integral to the Bureau's case***.

- Ignores the fact that Morgan Drexen is not responsible for the content of lawyer advertising; in fact, the state ethics rules – like those in Mississippi and Kansas, where Hoorfar and Munsch practice –expressly identify the lawyer as the party "responsible for [the] content" of lawyer advertising.

CFPB seeks to disregard the lawyers and thereby immunize itself from the issues presented by the central role of lawyers in this case based on CFPB's self-serving and ***unilateral*** strategic decision to not sue the lawyers. *See* Opp'n at 13 n.7 ("Section 1027(e) is irrelevant in this case because the Bureau has not named any lawyers as defendants.").

The existence of the lawyers and the role the lawyers play in this case is undisputed – CFPB cannot make them vanish by pronouncing them as irrelevant. Neither can CFPB make legal issues in this case disappear by unilateral fiat. For example, in its Opposition, CFPB makes the following statement: "This case is not about whether the TSR prohibits a lawyer who provides bankruptcy services to consumers from charging upfront fees for those services." Opp'n at 2. However, that is precisely what this case is about – the undisputed facts establish that is "the" issue.

Ironically, the Bureau says that the parties should not elevate "form over substance" in this case, but that is precisely what the Bureau does by refusing to confront the lawyers and the actual business model that the Bureau seeks to terminate. The purpose of the practice-of-law exclusion is to prevent the Bureau from regulating lawyers or exposing lawyers to obligations that are inconsistent with those imposed by the State Bars. Ironically, the Bureau derides decisions from the State Bars that have approved the business model at issue as decisions that "do not bind a federal court." Opp'n at 9. Enough is enough – the Bureau

should join the lawsuit that it commenced, and stop litigating an imaginary case that does not include lawyers.

This issue is crucial now that we are at summary judgment. CFPB is required to confront specific attorney declarations and uncontroverted facts establishing that attorneys Hoorfar and Munsch provided legal services (bankruptcy) to law clients – and that these fees are not subject to the TSR. In addition, one of Munsch's clients, Ms. Moore-Kile, submitted a declaration demonstrating that she wanted, received, and paid for bankruptcy legal services that are not subject to the TSR.

As both the plaintiff, which bears the burden of proof in this case, and as the non-movant on this motion for partial summary judgment, CFPB no longer can sit back and rely on generalized allegations or conclusory assertions. For example, CFPB cannot controvert facts about lawyers Hoorfar and Munsch based upon what CFPB believes that other lawyers, in other states, governed by other State Bars may be doing. The time has come for CFPB to move past its conclusory allegations and come forth with facts about lawyers Munsch and Hoorfar or permit partial summary judgment to eliminate that aspect of CFPB's claim. This Court consistently has reaffirmed this principle in cases granting defense motions for summary judgment. *See Brooks v. Capistrano Unified School Dist.*, 1 F. Supp. 3d 1029, 1035 (C.D. Cal. 2014) (holding that "the non-moving party may not rely on conclusory allegations or mere speculation."); *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 959 F. Supp. 2d 1244, 1249 (C.D. Cal. 2013) ("conclusory and speculative testimony … is insufficient to raise triable issues of fact and defeat summary judgment"); *see also Hexcel Corp. v. Ineons Polymers, Inc.*, 681 F.3d 1055, 1063-64 (9th Cir. 2012) (plaintiff's "self-serving, boilerplate declarations were … insufficient to create a genuine issue of material fact"); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam) (holding that the non-movant

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

"cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

CFPB's fatal flaw with regard to the lawyers permeates each of the subparts of Morgan Drexen's motion for partial summary judgment as discussed below.

## II. CFPB FAILS TO PROVIDE ANY FACTUAL BASIS ON WHICH THE COURT SHOULD DENY PARTIAL SUMMARY JUDGMENT AS TO MORGAN DREXEN'S SUPPORT FOR ATTORNEYS HOORFAR AND MUNSCH

CPFB's Opposition argues that attorneys Hoorfar and Munsch are not themselves identified as defendants in this lawsuit. Opp'n at 5-6. However, this misses the point of Morgan Drexen's motion for partial summary judgment, which applies to the support services ***Morgan Drexen*** – the defendant -- has provided to these lawyers, for which Morgan Drexen was justifiably paid. Notably, CFPB admits, as it must, to the key uncontroverted facts that Morgan Drexen has: (1) contracted to provide legal support services to Hoorfar and Munsch; (2) has been appointed by attorneys Hoorfar and Munsch to act as the agent for those attorneys SUF ¶¶ 3 and 28; (3) accepted the agency appointment of Hoorfar and Munsch (SUF ¶¶ 4 and 29); and (4) that Morgan Drexen is subject to Hoorfar's and Munsch's absolute control and supervision. *See* Document 189-1, CFPB response to SUF ¶¶ 6 and 31. CFPB then relies on generalized allegations and facts having nothing to do with Hoorfar and Munsch in attempting to dispute Morgan Drexen's uncontested facts establishing that this is exactly how the relationship functioned in reality.

Specifically, Morgan Drexen provided evidence that during the course of its relationship with Munsch and Hoorfar it has never failed to follow these attorneys' directions. CFPB responds by relying on the testimony of Eric Rosen (an attorney in Florida), Joseph Saulski (an attorney in Michigan), and Barbara Franklin (an attorney in Hawaii) to dispute the functioning relationship between Tami Munsch

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

(an attorney in Mississippi) and Morgan Drexen; and the functioning relationship between Camron Hoorfar (a Kansas-licensed attorney in Missouri) and Morgan Drexen. See CFPB response to SUF ¶¶ 7 and 32. CFPB has presented no evidence that would establish that Rosen, Saulski and/or Franklin have any knowledge regarding Morgan Drexen's support of Hoorfar or Munsch.

CFPB could have deposed Hoorfar and Munsch but again made the strategic and unilateral decision not to do so. Accordingly, Morgan Drexen's motion for partial summary judgment as to the activities it undertook to provide support services Hoorfar and Munsch should be granted because CFPB has not, and cannot, controvert the facts establishing that they are lawyers providing bankruptcy services (including to clients like Ms. Moore-Kile) that are not subject to the TSR.

In its attempt to survive summary judgment, CFPB likewise cannot controvert the facts that the State Bars of Kansas and Mississippi that oversee Hoorfar and Munsch have approved of these lawyers' contractual arrangement for administrative support from Morgan Drexen. As a consequence, CFPB is reduced to ***attacking*** these State Bars. In its opposition, CFPB derides these State Bars, saying that the State Bars: (1) are "irrelevant"; (2) are "wholly inapposite"; (3) "do not bind a federal court"; and (4) that some of their functions have been described as "advisory" (based on a citation to *R.J. Reynolds Tobacco v. Shewry*, 423 F.3d 906, 920 (9th Cir. 2005) involving a surtax on cigarettes). CFPB concludes this assault on the State Bars by saying that Morgan Drexen's citations to State Bar decisions "only serve to highlight the absurdity of Defendants' suggestion that the Morgan Drexen business model has been approved by a neutral tribunal." Opp'n at 9-10.

The Federal Trade Commission, itself, by contrast, when issuing the amendment to the TSR recognized the validity of State Bars and their governance over licensed attorneys: "[T]he Commission believes that attorneys acting in compliance with ***state bar rules*** and providing bona fide legal services ***already fall***

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

***outside the TSR's coverage*** in most instances." 16 CFR § 310, TSR Statement of Basis and Purpose, at 48468 (emphasis added).[3] Thus, there is tremendous significance to the Kansas and Mississippi Bars' statements that attorneys Hoorfar and Munsch's use of Morgan Drexen complies with state bar rules (*i.e.*, the attorneys are using Morgan Drexen non-attorneys in compliance with Rule 5.3 of the Rules of Professional Responsibility). Further, the Kansas State Bar's specifically approved Hoorfar's strategic approach to representing his clients with financial hardship (through his utilization of his bankruptcy and ancillary services attorney-client fee agreement, which is bona fide and compliant with state bar rules).

Also in contrast to the attack on State Bars by CFPB in the Opposition, when CFPB was created, the State Bars were specifically identified as having "***specialized expertise***" in regulation of lawyers, and therefore the practice-of-law exclusion (12 U.S.C. § 5517(e)) was required to ensure that the CFPB would not interfere with the state regulation of the profession. Representative John Conyers, Jr., Chairman of the House Judiciary Committee, which was instrumentally involved in shaping the practice-of-law exclusion in the Consumer Financial Protection Act, articulated Congress's intent to maintain the role of states as the regulators of the practice of law without interference from the Bureau. 156 Cong. Rec. E1347, 1348-49 (July 15, 2010) (Rep. Conyers). Representative Conyers noted that the activities of lawyers as "'officers of the court' are regulated by the States, through government bodies overseen by the State's highest court, with ***specialized expertise in the sometimes complex duties imposed by the code of legal ethics***." *Id.* at E1348 (emphasis added). He further explained that the

[3] Available at: http://www.ftc.gov/sites/default/files/documents/federal_register_notices/telemarketing-sales-rule-final-rule-amendments/100810tsr.pdf

furnishing of consumer financial products or services that the Bureau is authorized to regulate is "distinguishable from the practice of law." *Id.* at E1348. Accordingly, due to concerns that the Bureau's authority would be interpreted to overlap with the regulatory authority of states, and to avoid "undermin[ing] the authority of the State supreme courts to effectively oversee and discipline lawyers," the practice of law exclusion was explicitly crafted "to avoid any possible overlap between the Bureau's authority and the practice of law." *Id.* at E1348-49.

This legislative history, explaining why CFPB should not interfere with the practice of law, is consistent with long-standing authority that prevents federal regulators from interfering with the practice of law. "It is undisputed that the regulation of the practice of law is traditionally the province of the states." *Am. Bar Ass'n v. F.T.C.*, 430 F.3d 457, 471 (D.C. Cir. 2005). *See also id.* at 469 (the profession of law has been "never before regulated by 'federal functional regulators'").

Next, CFPB argues that many Hoorfar and Munsch bankruptcy clients want to ***avoid*** bankruptcy, or to use the threat of bankruptcy as a debt settlement tactic. Based on this, CFPB concludes that the services must be "debt settlement" services rather than "bankruptcy" services. Opp'n at 6-7. However, this analysis contradicts well-established bankruptcy law that legal services by a bankruptcy lawyer are undeniably "bankruptcy" services even though the client's objective is to avoid bankruptcy. Bankruptcy courts consistently have held that when a law client engages a bankruptcy lawyer and the client's stated objective is to avoid bankruptcy, payment for such services are made "in contemplation" of bankruptcy, and thus must be considered bankruptcy services that must be disclosed under Section 329(a) of the Bankruptcy Code. Section 329 provides as follows:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for





VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

> compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered ***in contemplation of or in connection with*** the case by such attorney, and the source of such compensation

*Id*. (emphasis added). *See In re Hearn*, 10-81355, 2011 WL 5357849 (Bankr. M.D.N.C. Nov. 4, 2011) ("because the Plaintiff retained the Defendant to avoid filing bankruptcy, the Court finds that the payments made to the Defendant were made 'in contemplation' of bankruptcy and thus warranted disclosure under § 329(a)"); *see also In re Keller Fin. Servs. of Florida, Inc.*, 248 B.R. 859, 881 (Bankr. M.D. Fla. 2000) ("All of the work described by Massari for this period was designed, either directly or indirectly, to impact on the bankruptcy case, either by preparing the Debtor for a potential filing, or by seeking a method to avoid the filing"); *accord In re Glemaud*, 11-31697, 2013 WL 4498677 (Bankr. D. Conn. Aug. 21, 2013); *In re Prudhomme*, 152 B.R. 91, 103 (Bankr. W.D. La. 1993).

Bankruptcy services obviously can overlap with debt settlement strategies, but that does not change the character of the lawyers' work as something other than bankruptcy services (for which upfront fees can be, and routinely are, charged), and the TSR simply does not provide otherwise. *See* 16 C.F.R. § 310.2(m) defining "debt relief service" subject to the ban on upfront fees, and not including legal services such as bankruptcy in the definition. There are numerous reasons that a consumer would engage a bankruptcy lawyer as opposed to enrolling in a program with a "debt settlement company." (CFPB insists on calling Morgan Drexen a "debt settlement company," Opp'n at 2, even though it actually provides support services for lawyers practicing law). They are not the same and CFPB cannot disregard the actual bankruptcy engagement. CFPB's own bankruptcy expert admitted that bankruptcy lawyers regularly charge upfront fees for pre-

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

bankruptcy filing consultation to clients who wish to avoid filing bankruptcy, and many such clients do not end up filing. Document No. 188-2, Ex. 111, deposition excerpts from CFPB's bankruptcy expert.[4] CFPB's position would mean that all of these lawyers are violating the TSR, and such an extreme and unwarranted position, if adopted by this Court, would severely dry up the availability of bankruptcy counsel for debtors. There is nothing in the TSR that suggests such a draconian outcome, which would harm the very consumers CFPB is charged with protecting.

CFPB's attempt to controvert statements of uncontroverted facts pertaining to Hoorfar and Munsch fail the Rule 56 test. For example, CFPB admits that the contracts between Hoorfar/Munsch and Morgan Drexen require that these lawyers retain at all times an "absolute right of control and supervision." *See* Document 189-1, CFPB response to SUF ¶¶ 6 and 31. But then CFPB denies the sworn statement of these lawyers testifying that there was never a time when "Morgan Drexen failed to follow the directions" of Munsch and Hoorfar. *See* Document 189-1, CFPB's response to SUF ¶¶ 7 and 32. CFPB has nothing from Hoorfar and Munsch on which to base its denial – as noted, CFPB made the unilateral strategic decision not to depose these lawyers. The only evidence cited is CFPB's general assessment that "(a) affiliated counsel rarely provided direction to Morgan Drexen; (b) in instances where they do, Morgan Drexen took action against the wishes or without informing affiliated counsel." *Id.* The "affiliated lawyers" to which CFPB refers are not Hoorfar and Munsch. CFPB has no facts to support a contention that Hoorfar and Munsch "rarely" (whatever that means) provided direction to Morgan Drexen; nor does CFPB have any facts to support its contention that when Hoorfar

---

[4] As these excerpts show, this expert also testified at length that bankruptcy lawyers regularly and properly use paralegals.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

and Munsch provided direction, Morgan Drexen "took actions against [Hoorfar and Munsch's] wishes." Beyond accusing lawyers of lying in their sworn testimony, CFPB's response is a violation of fundamental summary judgment rules. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (when opposing a motion for summary judgment, the non-moving party "may not rely merely on allegations or denials," but instead must come forward with "specific facts showing a genuine issue for trial."). Compounding this Rule violation, CFPB later leverages its denial of Hoorfar and Munsch supervision to characterize the Rules of Professional Conduct authorizing Hoorfar and Munsch to use Morgan Drexen for nonlawyer support services as "irrelevant" because the Rules permit nonlawyer support only when there is supervision. *Id*. ¶ 36.

Because CFPB has failed to carry its burden as the non-movant under Rule 56, the Court should enter an order of partial summary judgment providing that Attorney Hoorfar and Munsch's individual law practices do not violate the TSR (even though Hoorfar and Munsch use Morgan Drexen as their paraprofessional support service), and therefore none of the support services Morgan Drexen provided to Hoorfar and Munsch, or fees Morgan Drexen received from Hoorfar and Munsch, should be part of CFPB's claim in this case, and any fees paid by clients of these lawyers should be excluded from the $90 million CFPB seeks as damages in this case. It is noteworthy that CFPB's damage calculation is based on fees that law clients to pay to lawyers like Hoorfar and Munsch. But in its Opposition, CFPB seeks to make the lawyers vanish. CFPB cannot have it both ways. An order of partial summary judgment is the appropriate remedy given these circumstances.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

## III. CFPB HAS FAILED TO CONTEST FACTS SUFFICIENT FOR THE COURT TO DENY MORGAN DREXEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CONSUMER LIBBY MOORE-KILE

In opposing Morgan Drexen's request for partial summary judgment as to Libby Moore-Kile, CFPB erroneously contends that Morgan Drexen has not moved to partial summary judgment as to liability – but Morgan Drexen has in fact done so. CFPB does not dispute Morgan Drexen's uncontroverted fact 49, establishing that Ms. Moore-Kile is a law client of attorney Tami Munsch; and that Munsch uses Morgan Drexen for support services. *See* Document 189-1, CFPB's response to SUF ¶ 49. Morgan Drexen has requested an Order of Partial Summary Judgment based on services Morgan Drexen provided to attorney Tami Munsch. Thus, Morgan Drexen requests an Order of Partial Summary Judgment as to both liability and damages as it relates to Ms. Moore-Kile.

CFPB next argues that Ms. Moore-Kile is only one consumer out of thousands. However, CFPB fails to articulate why this disqualifies Morgan Drexen's request for partial summary judgment. In Morgan Drexen's opening brief, Morgan Drexen cited cases establishing this Court's authority to isolate and dispose of a subset of claims, portion of claims, or a subset of legal issues. *See, e.g., Peliculas Y Videos Internacionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc*., 302 F. Supp. 2d 1131, 1133 (C.D. Cal. 2004); *see also E. piphany, Inc. v. St. Paul Fire & Marine Ins. Co*., 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008). CFPB has identified no exception to the rule or justification for contending that the request for partial summary judgment is too small. Either partial summary judgment is warranted or it is not.

CFPB attempts to dispute uncontroverted fact 50 that Ms. Moore-Kile engaged Munsch for bankruptcy on the basis that Ms. Moore-Kile declaration stated that she wanted to "AVOID bankruptcy." Document 189-1, CFPB's

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

response to SUF ¶ 50. However, as noted above, engaging a lawyer with the goal of avoiding bankruptcy is, as a matter of bankruptcy law, "bankruptcy" services. Thus, the uncontroverted fact is not validly disputed.

Morgan Drexen's request for partial summary judgment makes a broader point that individualized circumstances can and do matter, and if a law client received the contracted for bankruptcy services from their lawyer, thus deriving substantial benefits, and that lawyer received their fees from their client and then paid for support services from Morgan Drexen, the TSR has not been violated, and partial summary judgment order should be entered. Such an order would reflect the truth that there are many lawyers across the country with different rules of professional conduct and different practices and procedures, providing legal services to a diverse set of clients, and CFPB's attempt to paint the entire business with a single conclusory stroke is not fair, appropriate, or justified under Rule 56 or any source of law. There are, in fact, different sub-classes of law clients at issue. Partial summary judgment is necessary and appropriate to narrow the issues so that the parties and the Court can focus at trial on those classes of law clients where there are bona fide issues in dispute.

As to Ms. Moore-Kile, partial summary judgment is required because CFPB cannot establish liability -- Ms. Moore-Kile did not pay Morgan Drexen up-front fees for debt settlement services; instead she paid her lawyer, Munsch, fees for legal services. The Court should enter an Order granting partial summary judgment and confirming that CFPB's claim does not include any fees paid by Ms. Moore-Kile.

## IV. <u>CFPB FAILS TO REBUT MORGAN DREXEN'S ENTITLEMENT TO AN ORDER OF PARTIAL SUMMARY JUDGMENT THAT IT DID NOT MAKE A FALSE "GUARANTEE" ADVERTISING CLAIM</u>

### A. <u>Morgan Drexen Is Not the "Advertiser"</u>

CFPB's attempt to portray Morgan Drexen as the "advertiser" -- responsible

for the ***content*** of lawyer advertising -- is another version of CFPB's fiction that the tail is wagging the dog, *i.e.*, the paralegal is in control of the lawyer's law practice. The argument contradicts unrefuted facts set forth in Morgan Drexen's motion, and disregards the nature of the lawyer-paralegal relationship, including the legal rules about that relationship under the state rules of professional conduct for lawyers.

Lawyers bear responsibility for their own lawyer advertising, and this responsibility cannot be shifted simply because lawyers use the back office support services of Morgan Drexen (and/or other administrative and support vendors and personnel to help with lawyer advertising). Given the nature of the attorney-paralegal relationship, Morgan Drexen is more akin to a remote affiliate of an advertiser that does not bear responsibility for advertising content. The law is clear that advertising liability does not attach to each and every person and company in the chain of advertising distribution. *See Steinberg Moorad & Dunn, Inc. v. Dunn*, 2002 WL 31968234, at * (C.D. Cal. Dec. 26, 2002) (affiliate lacked responsibility for advertiser's statements); *Campagnolo S.R.L. v. Full Speed Ahead, Inc*., 2010 WL 2079694, at *4 (W.D. Wash. May 20, 2010) (parent company not responsible for advertising statements and "is not liable as a matter of law."); *compare* Section 230 of the Communications Decency Act, which shields internet service providers from suits over advertising disseminated over the internet service: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. 230.

Here, the case is even stronger that Morgan Drexen should not be deemed to be the speaker or otherwise responsible for the content of lawyer advertising. The Rules of Professional Conduct uniformly require that a lawyer be identified as the person "responsible" for all lawyer advertising. Kansas and Mississippi (where lawyers Hoorfar and Munsch practice) illustrate this point. *See* Kansas Rules of

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Prof'l Conduct R. 7.5(d) ("Any communication made pursuant to this rule shall include the name of ***at least one lawyer responsible for its content***.") (emphasis added); Mississippi Rules of Prof'l Conduct R. 7.2(d) ("All advertisements and written communications provided for under these rules shall include the name of at least one ***lawyer*** or the lawyer referral service ***responsible for their content***.") (emphasis added); *see also* Mississippi Bar Ethics Opinion No. 182 (Mar. 9, 1991) (lawyers may not employ "blind advertising" because all legal services advertisements must bear name of at least one lawyer responsible for the content).

### B. CFPB Alleges -- But Fails to Identify -- the "Express" Advertising Statement

CFPB rests heavily on its argument that it is attacking an advertising statement made "expressly." *See* Opp'n at 20-21. However CFPB never identifies the advertising statement it alleges was made "expressly". CFPB provides no quotation. Indeed, CFPB's brief and clever use of ellipses betray the fact that CFPB is putting its own gloss and interpretation on the attorneys' advertising, and is not quoting any express claim. For example, on page 20 of its Opposition, CFPB characterizes the advertisements as stating "that consumers ***will*** 'be debt free in months.'" *Id*. at 20 (emphasis added). The word "will" – which is indispensable to the alleged guarantee claim (*i.e.* that Morgan Drexen is guaranteeing that consumers will be debt free in months) -- is not present in the advertising, and CFPB does not contend otherwise. An advertising statement that a law client "could" or "might" become debt free as the result of engaging a bankruptcy lawyer is a completely different advertising statement: that statement (1) it does not guarantee any outcome; and (2) happens to be true. In its Opposition, the most applicable quotation is CFPB's quotation from an advertisement that says that a law client "***could***" become debt free. Opp'n at 21. That's true; in any event, it is irrelevant to the guarantee claim.

CFPB simply has not complied with its obligations in alleging express





VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

falsity and that is because there is no express guarantee claim in any of the advertising. *See Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1186 (8th Cir. 2011) ("The standard for proving literal falsity is rigorous. Only an unambiguous message can be literally false… When an ad can reasonably be understood as conveying different messages, [a] literal falsity argument must fail.") (internal citations and quotations omitted); *Millennium Labs., Inc. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594, 600 (D. Md. 2013) ("For an advertisement to be literally false, the falsity must be evident from the *face of the ad itself*. An advertisement cannot be said to be literally false if the advertising message is ambiguous, meaning that it is susceptible to two reasonable readings, one of which is literally true.") (emphasis added). Because the ads do not expressly guarantee consumers "will" be debt free, CFPB's express falsehood theory fails.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

### C. <u>CFPB's Alternative "Implied" Falsity Claim Contradicts the Consumer Perception Data</u>

Tacitly acknowledging that it does not have an express falsely claim, CFPB pivots to its alternative theory[5] of ***implied*** falsity. *See* Opp'n at 22-24. An implied falsity claim is an advertising claim that communicates something more or different from the literal words in the advertisement – this requires proof by extrinsic evidence, typically survey data. *See William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) ("Where a statement is not literally false and is only misleading in context, however, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical."); *see also United Inds. Corp. v. Clorox Co.*, 140 F.3d

[5] *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) ("A claim of false advertising may be based on at least one of two theories: that the challenged advertisement is literally false, i.e. *false on its face*, or that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.") (emphasis added)

1175, 1182 (8th Cir. 1998) (same); *Johnson & Johnson-Merck Cons. Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) ("If a plaintiff does not prove the claim to be literally false, he must prove that it is deceptive or misleading, which depends on the message that is conveyed to consumers.").

With respect to the allegation that Morgan Drexen implies a "guarantee" – that is, a guarantee that consumers will be debt free in months – CFPB conclusory allegation cannot stand in the face of actual consumer perception data obtained from Dr. Maronick's scientifically-designed survey, which demonstrates that a "guarantee" claim was never communicated to consumers. As explained in our opening memorandum, Morgan Drexen's survey expert, Dr. Maronick, conducted a well-controlled, scientifically-designed survey demonstrating that consumers do not take away CFPB's alleged "guarantee" claim from the advertising. SUF ¶¶ 53-55 and the Expert Report of Thomas Maronick.

Instead of presenting any competing survey evidence of its own, CFPB invites the Court to disregard the scientific data and instead defer to CFPB's "expertise" and evaluating advertising. However, there is no basis for this Court to grant deference to the CFPB. First, CFPB is not entitled to deference on an issue where the only scientific evidence before the Court contradicts CFPB's speculation that a guarantee claim is communicated by the advertising. Second, CFPB cannot cite to a single case where any court anywhere has given CFPB deference in interpreting advertising. Instead, CFPB cites to ***FTC*** cases that are inapposite -- the FTC has decades of institutional knowledge and competence in evaluating advertising, and employs teams of career professionals who are advertising experts (indeed, Dr. Maronick was one such FTC survey expert). This stands in contrast to CFPB, a new and inexperienced agency that has no such comparable expertise or professional staff and therefore is entitled to no such deference. The court should decline CFPB's invitation to extend this doctrine of deference to a brand new

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

agency like the CFPB, and to these circumstances, where the actual data to refutes the agency's interpretation of the advertising. In the seminal case of *Kraft v. FTC*, 970 F.2d 311 (7th Cir. 1992), the Court explained that even as to the FTC, deference should be given with ***great reluctance***: "Our holding does not diminish the force of Kraft's argument as a policy matter, and, indeed, the extensive body of commentary on the subject makes a compelling argument that ***reliance on extrinsic evidence should be the rule rather than the exception***. Along those lines, the Commission would be well-advised to adopt a consistent position on consumer survey methodology--advertisers and the FTC, it appears, go round and round on this issue--so that any uncertainty is reduced to an absolute minimum." *See also Thompson Med. Co. v. FTC*, 791 F.2d 189 (D.C. Cir. 1986) (extrinsic evidence required to show an implied claim).

CFPB invites the Court to also disregard the survey data based upon its purported future intention to one day in the future file a *Daubert* motion against Morgan Drexen survey expert. Opp'n at 21 n.13 (stating that CFPB "anticipates" filing a Daubert motion). There is no basis for the anticipated motion articulated in CFPB's Opposition, only the conclusory statement that CFPB intends to bring such a motion. This promise of a motion in the future is insufficient to resist an order of partial summary judgment. The time to attack the validity of Dr. Maronick's survey was in the Opposition – not some future filing that may, or may never, arrive.

**D. <u>Morgan Drexen's First Amendment Rights Create Important Limitations on CFPB Enforcement Authority</u>**

CFPB dismisses Morgan Drexen's First Amendment rights as "meritless," *see* Opp'n at 25. CFPB's argument is based on the premise that Morgan Drexen's advertising is false, but as demonstrated above, CFPB has failed to carry its burden and has failed to produce evidence sufficient to withstand an order of partial summary judgment. The constitutional rights of Morgan Drexen to engage in

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

commercial speech is significant and serves as an important limitation on federal agency power. It cannot be brushed aside with a conclusory label that the argument is "meritless." As explained in our opening memorandum, the reason that CFPB must be held to its burden of proof in actually proving false advertising is to ensure that government enforcement does not chill truthful and non-misleading (and therefore constitutionally-protected) commercial speech. Far from carrying its burden, CFPB appears to urge that all of Morgan Drexen's advertisements in their entirety are false and therefore there are no First Amendment concerns. This paternalistic governmental impulse to suppress speech by a lawful but disfavored business has consistently been rejected, with courts holding that the First Amendment guarantees a robust marketplace of information. *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557 (1980); *Bates v. State Bar of Arizona*, 433 U.S. 350, 374-75 (1977); *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999). The commercial speech doctrine giving constitutional protection to commercial speech is born from the Government's attempt to ban advertising messages about a wide variety of legitimate but businesses, but particularly businesses where political opposition and paternalistic impulse has created a policy outcome to target the business (well-known government paternalism related to advertising for contraceptives, and more recently, gaming, alcohol, and cigarettes, all presented an attack on the First Amendment). The trend continues in this case. CFPB wants to put Morgan Drexen out of business because it does not like Morgan Drexen. But the Supreme Court has held that consumers have a right to know about products and services available in a free market system, and consumers, such as Ms. Moore-Kile, should be able to hear advertising about a bankruptcy lawyer such as Tami Munsch, even if – especially if -- that lawyer has the support of a sophisticated firm like Morgan Drexen that makes the legal services efficient, effective, and accessible.

These vital First Amendment concerns are not meritless – they are the

reasons that CFPB must prove falsity, and here, CFPB has not done so, and partial summary judgment is required.

The Court should enter an order of partial summary judgment and hold that the advertising challenged by CFPB in this case does not convey a false "guarantee" that consumers who engage a Morgan Drexen-supported lawyer "***will***" be debt free in months.

## V. <u>**CONCLUSION**</u>

For all of the foregoing reasons together with those in Morgan Drexen's October 7, 2014 memorandum and statement of unconverted facts, Morgan Drexen respectfully requests that the Court enter its proposed Order of Partial Summary Judgment, and order such other relief that Courts deems just and proper.

Dated: November 7, 2014

VENABLE LLP

By: /s/ Celeste M. Brecht
Randall K. Miller
Celeste M. Brecht

KLEIN & WILSON
Gerald A. Klein

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900