CARA PETERSEN, D.C. Bar #476990
Acting Deputy Enforcement Director For Litigation
R. GABRIEL D. O'MALLEY, MA Bar # 651432
(E-mail: gabriel.o'malley@cfpb.gov)
(Phone: 202-435-9747)
SHIRLEY CHIU, IL Bar # 6296079
(E-mail: shirley.chiu@cfpb.gov)
(Phone: 202-435-7592)
JAN SINGELMANN, DC Bar # 999087
(E-mail: jan.singelmann@cfpb.gov)
(Phone: 202-435-9670)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

KENT KAWAKAMI, CA Bar # 149803 – Local Counsel
(Phone: 213-894-4858)
(E-mail: Kent.Kawakami@usdoj.gov)
United States Attorney's Office
Central District of California - Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Fax: (213) 894-2380

Attorneys for Plaintiff
Consumer Financial Protection Bureau

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Morgan Drexen, Inc.,<br>and<br>Walter Ledda, individually, and as owner, officer, or manager of Morgan Drexen, Inc.,<br>Defendants. | Case No. SACV13-01267 JLS (JEMx)<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY AJDUDICATION OF THE ISSUES AGAINST DEFENDANTS**<br><br>**HON. JOSEPHINE L. STATON**<br><br>**Hearing Date: November 21, 2014**<br>**Time: 2:30pm**<br>**Place: Courtroom 10-A (Santa Ana)** |

# TABLE OF CONTENTS


**I. INTRODUCTION ....................................................................................1**

**II. THERE IS NO DISPUTE ABOUT KEY FACTS IN THE BUREAU'S STATEMENT OF UNDISPUTED FACTS ..................................................3**

A. Morgan Drexen Performs Virtually All Aspects of Debt Settlement Work for Dual Program Enrollees..........................................................3

B. Morgan Drexen's Post-TSR Business Model..........................................5

1. Consumers Want Debt Relief Services, Not Bankruptcy Services.............5

2. Dual Program Enrollees Receive Extremely Limited Services Under the Bankruptcy Agreement.........................................................5

3. The Bankruptcy Petition is Just A Debt Settlement Strategy.......................7

C. Morgan Drexen's Advertisements are Deceptive...........................................9

D. Walter Ledda Exercises Control Over Morgan Drexen ...................................9

**III. DEFENDANTS HAVE VIOLATED THE TSR BY REQUESTING AND RECEIVING UPFRONT FEES FOR DEBT RELIEF SERVICES .................9**

A. Defendants are "Sellers" and "Telemarketers" Under the TSR and Thus Liable for Violating the Rule.........................................................10

B. The Dual Program is a "Debt Relief Service Under the TSR, Which Defendants Cannot Evade By Adding a Service ........................................12

C. The Bureau is Not Prohibited From Bringing Suit Against Defendants by Section 1027(e) of the CFPA.....................................................13

1. Section 1027(e) Does Not Shield Defendants From the TSR....................14

2. Section 1027(e) Does Not Protect Defendants From CFPA Liability For Their Deceptive Advertisements ..................................................15

D. Contrary to Defendants' Suggestion, No Tribunal Has Found That Morgan Drexen's Business Model Complies With The TSR.......................................16

E. The Bureau Did Not Admit That the Dual Program Contracts That Consumers Sign Comport With the Law..........................................................17

**IV. THE BUREAU IS ENTITLED TO SUMMARY JUDGMENT ON ITS DECEPTIONS CLAIMS.........18**

**V. DEFENDANTS' RED HERRING ARGUMENTS ARE DESIGNED TO DIVERT THE COURT'S ATTENTION FROM RELEVANT FACTS AND LAW.........20**

**VI. DEFENDANTS' OBJECTIONS TO THE BUREAU'S EVIDENCE ARE UNFOUNDED.........21**

A. The Consumer Complaints Submitted by the Bureau are Admissible Under Fed. R. Civ. P. 807 and 803.........21

B. The Testimony of Christine Tesoro is Admissible.........23

**VII. CONCLUSION.........24**

## TABLE OF AUTHORITIES

**Cases**

*Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905 (1997) .................................... 13

*F.T.C.* v. Chase Financial Funding, Inc., SACV04-549 GLT (C.D. Cal. Dec. 17, 2004) .................................... 19

*F.T.C. v. Ewing*, 2014 WL 5489210 (D. Nev. Oct. 29, 2014) .................................... 22

*F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) .................... 6

*F.T.C. v. Zamani*, No. SACV 09-0977-DOC, 2011 WL 2222065 (C.D. Cal. June 6, 2011), as amended (Sept. 28, 2011) .................................... 22

*FTC v. Capital Choice Consumer Credit, Inc.*, 2004 WL 5149998 (S.D. Fla. Feb. 20, 2004); *aff'd*, 157 F. App'x 248 (11th Cir. 2005) .................................... 20

*FTC v. Dinamica Financiera LLC*, 2010 WL 9488821, (C.D. Cal. Aug. 19, 2010) .................................... 21

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) .................................... 22, 23

*FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010); *aff'd*, 475 F. App'x 106 (9th Cir. 2012) .................................... 21

*FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006 (C.D. Cal. 2012) . 21

*FTC v. MacGregor*, 360 Fed. Appx. 891(9th Cir. 2009) .................................... 11

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) .................................... 11

*Lam v. City & Cnty. of San Francisco*, 2011 WL 4915812 (N.D. Cal. Oct. 17, 2011) .................................... 24

*Matter of Cliffdale Associates, Inc.*, 103 F.T.C. 110, 1984 WL 565319 (1984) ..... 20

*Standard Oil of California v. F.T.C.*, 577 F.2d 653 (9th Cir. 1978) ....................... 19

*Strom v. Nat'l Enterprise Systems, Inc.*, 2010 WL 1533383 (W.D.N.Y. Apr. 15, 2010) .................................... 23

**Statutes**

12 U.S.C. § 5536 .................................... 18

12 U.S.C. §§ 5517 .......................................... 14,16
15 U.S.C. §§ 6100, *et seq.* .......................................... 14
16 C.F.R. § 310 .......................................... 18
Dodd-Frank Act 12 § 1100C .......................................... 14

**Other Authorities**

FTC Guidance: Debt Relief Services & Telemarketing Sales Rule: What People Are Asking (October 2010) .......................................... 10, 13

**Rules**

75 Fed. Reg. 48 (Aug. 10, 2010) .......................................... 14
Fed. R. Civ. P. 30 .......................................... 24
Fed. R. Evid. 803(6) .......................................... 23
Fed. R. Evid. 807(a) .......................................... 21

**Regulations**

16 C.F.R. § 310.2 .......................................... 10, 11, 12

## I. INTRODUCTION

This case involves thousands of documents and has resulted in numerous depositions and declarations, and the Court now has a voluminous record before it. A quick glance at such a record, which dives into the minutia of Defendants' business model, might lead the Court to wonder whether this case is too fact intensive to be decided at the summary judgment stage. It is not. Though the Bureau and Defendants have provided the Court with significant detail about Morgan Drexen, Inc.'s ("Morgan Drexen") business model prior to the amendment of the Telemarketing Sales Rule ("TSR"), the events that led up to the company's decision to alter its business model, and the details of its current business model, the Court need only focus on a few core facts, over which there is no dispute, to determine that Defendants are liable for violating the TSR and the Consumer Financial Protection Act ("CFPA").

There is no genuine dispute that Defendants are "sellers" and "telemarketers" under the TSR. Moreover, there is no dispute that consumers receive debt relief services, or that they are charged upfront fees before at least one of their debts is settled.[1] The Bureau contends that the purported bankruptcy services for which Defendants claim they charge advance fees are a sham – and uncontroverted evidence shows this to be the case – but whether some of the bankruptcy services are legitimate or they are all a sham makes no difference. Under the TSR, Defendants cannot evade the ban on upfront fees for debt relief services by charging advance fees for a service that is provided in connection with those debt relief services when the uncontroverted facts show that: (1) Morgan Drexen creates and distributes advertisements for debt relief services, not

[1] The "dual program" refers to the program in which consumers must sign two contracts, one relating debt relief services and the other relating to purported bankruptcy services. *See* Bureau's Memorandum In Support Of Motion For Summary Judgment Or In The Alternative Summary Adjudication Of The Issues Against Defendants ("Bureau's Mem."), at 4-5.

bankruptcy; (2) consumers call Morgan Drexen in response to these advertisements; (3) Morgan Drexen enrolls almost all consumers (95%) in the dual program, under which consumers pay fees prior to having one or more debts settled; (4) Morgan Drexen provides dual program enrollees with debt relief services; (5) the draft bankruptcy petitions created for consumers under the dual program are intended to serve as leverage in debt relief negotiations; and (6) every declarant or deponent who believes that an unfiled bankruptcy petition has some value believes that the value stems from the petition's potential use as a debt settlement tool. In short, consumers seek debt relief services, Defendants provide debt relief services, and consumers pay for services in aid of debt settlement. As the Federal Trade Commission's ("FTC") commentary to the TSR and its guidance to businesses regarding compliance with the Rule make clear, Defendants cannot evade a ban on upfront debt relief fees by requesting and charging an advance fee for a service that is *provided in connection with* the debt relief services they offer. Because this presents a pure issue of law, the Court can rule on summary judgment that Defendants have violated the TSR.

Having conceded the core facts that give rise to liability under the TSR, Defendants fire a scattershot of irrelevant arguments that have no bearing on the legal issues in the case. As set forth below, Defendants cannot use Section 1027(e) of the CFPA as a shield to protect their activities; contrary to Morgan Drexen's assertion, no tribunal has ruled that Defendants are in compliance with federal law; and whether many attorneys are too expensive for consumers to hire or whether consumers received some benefit from Morgan Drexen's debt relief services is irrelevant to whether Morgan Drexen has requested or received impermissible upfront fees in violation of the TSR.

Defendants' defense against the Bureau's deception claims is also unavailing: they misstate the law of deception and do not dispute their own statistics, which show, contrary to the express claims in Defendants'

advertisements, that almost no consumers who sign up for debt relief services become debt free within months. For these reasons, the Bureau requests that the Court find that Defendants have violated the TSR and CFPA, and order the relief requested by the Bureau as set forth in the Proposed Order filed with the Court on October 8, 2014.[2]

## II. THERE IS NO DISPUTE ABOUT KEY FACTS IN THE BUREAU'S STATEMENT OF UNDISPUTED FACTS

### A. Morgan Drexen Performs Virtually All Aspects Of Debt Relief Work For Dual Program Enrollees

There is no dispute that Morgan Drexen performs virtually all aspects of debt relief work for dual program enrollees. Among other things, the uncontroverted evidence submitted by the Bureau or Defendants shows that:

- Morgan Drexen develops concepts for debt relief advertisements;[3]
- Morgan Drexen drafts copy for advertisements;[4]
- Morgan Drexen films advertisements;[5]
- Morgan Drexen develops advertisements that are intended to be used for multiple attorneys;[6]
- Morgan Drexen's General Counsel reviews and edits the advertisements before they are published;[7]

[2] The Bureau originally filed the Proposed Order on October 7, 2014, but was informed by the Court's clerk that it contained a technical error, so the Bureau refiled the Proposed Order on October 8, 2104.

[3] Bureau's Statement of Uncontroverted Fact ("UF") 21; Bureau's Response to Defendants' Statement of Genuine Issues In Dispute ("Response to SGID") 21.

[4] UF 22; Response to SGID 22; Defs.' Summary Judgment Exhibit ("Defs.' SJX.") 1, Declaration ("Decl.") of Walter Ledda, at ¶ 214.

[5] UF 23; Response to SGID 23.

[6] UF 25.

[7] UF 26; Response to SGID 26.

- Defendant Ledda has outside counsel review advertisements before they are published;[8]
- Morgan Drexen pays for the advertisements and is only reimbursed if consumers pay fees after signing up for services;[9]
- Ten out of the eleven advertisements the Bureau contends are deceptive contain Morgan Drexen's name;[10]
- These advertisements do not mention bankruptcy other than noting that consumers can *avoid* bankruptcy if they enroll;[11]
- Morgan Drexen employees answer telephone calls made by consumers in response to advertisements;[12]
- Morgan Drexen conducts intake interviews with consumers;[13]
- Morgan Drexen provides dual program enrollees with contracts to sign and informs the consumers when the contracts are executed;[14]
- Neither Morgan Drexen nor attorneys meets with consumers face-to-face before consumers are enrolled in the dual program;[15]
- Morgan Drexen directly negotiates consumers' debts with creditors;[16]
- Morgan Drexen administers consumers' and attorneys' accounts to pay creditors and itself;[17]

---

[8] UF 28; Response to SGID 28.
[9] UF 30; Response to SGID 30.
[10] Bureau's Summary Judgment Exs. ("Bureau SJX.") 1-11, Morgan Drexen Advertisements.
[11] *Id.*
[12] UF 33: Defs.' SJX. 1, Decl. of Walter Ledda, at ¶ 218.
[13] UF 35.
[14] UF 36; Response to SGID 36; Defs.' SJX. 1, Decl. of Walter Ledda, at ¶ 235.
[15] Bureau SJX. 138, Decl. of Timothy Hanson, at ¶ 61.
[16] UF 46; Response to SGID 46; Defs.' SJX. 1, Decl. of Walter Ledda, at ¶¶ 254-69.
[17] UF 52; Response to SGID 52.

- Morgan Drexen pays itself on a daily basis from fees received from dual program enrollees;[18] and
- Morgan Drexen receives 85% to 95% of all money paid by dual program enrollees.[19]

**B. Morgan Drexen's Post-TSR Business Model**

**1. Consumers Want Debt Relief, Not Bankruptcy Services**

There is no dispute that consumers who call Morgan Drexen in response to advertisements seek debt relief services, not bankruptcy services. Defendants' own Fed. R. Civ. P. 30(b)(6) designee testified that, of the consumer calls she monitored, 90% of consumers were interested in settling their debts.[20] The consumer deposition and declarations submitted by the Bureau corroborate this.[21] Moreover, even the attorney declarations submitted by Defendants confirm that consumers want debt relief services, not bankruptcy services, when they sign up for the dual program. In their declarations, virtually all of the attorney declarants state: (1)"[C]onsistent with my client's goals, it is ideal ***NOT*** to file the bankruptcy petition if I can avoid doing so" (emphasis in the original); (2) "I cannot think of a single client who was eager to have a bankruptcy filing on his or her record"; and (3) "The overwhelming majority of my clients, if not all of them, would prefer I use the threat of bankruptcy as a means to. . . maximize the client's position for debt resolution."[22]

**2. Dual Program Enrollees Receive Extremely Limited Services Under The Bankruptcy Agreement**

Defendants submit 19 attorney declarations in an attempt to show that some bankruptcy work is actually performed for dual program enrollees. The Court

---

[18] UF 114; Response to SGID 114; Defs.' SJX. 1, Decl. of Walter Ledda, at ¶ 291.
[19] UF 111; Response to SGID 111.
[20] UF 143; Response to SGID 143.
[21] UF 142; Response to SGID 142.
[22] SGID 512; Response to SGID 512.

should disregard these declarations because they are self-serving, and filled with inadmissible hearsay and facts that are irrelevant to the legal issues before the Court.

The Bureau's lawsuit against Defendants is a direct financial threat to the attorney declarants. Moreover, all but two of the attorney declarants acknowledge that "[they] are aware that engaging in unethical practices puts [their] license to practice law at risk " and are thus aware that a finding that Defendants have violated the TSR or CFPA could expose them to negative repercussions in the states in which they are licensed to practice law.[23]

The declarations also lack core details necessary for the Court to rely on them.[24] For example, the attorneys have all been affiliated with Morgan Drexen since 2010, but they only refer to their *current* practice with Morgan Drexen, and attach their current contract with Morgan Drexen, all of which were signed in 2013 when Defendants were aware that the Bureau was considering suing them.[25] Moreover, the declarants do not provide any details about when, if ever, they counsel consumers about bankruptcy, or provide any details about whether they engage in any legal or factual analysis of consumers' assets, debts, income, and expenses to determine whether a consumer would benefit from a bankruptcy filing.[26]

Moreover, facts set forth in the declarations corroborate the Bureau's claims. As discussed above, virtually all of the attorneys confirm that consumers enrolled

---

[23] Defs.' SJX. 13-14,16-28, 30-31, Attorney Declarations, between ¶¶ 60-65.

[24] *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (holding that a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.")

[25] Defs.' SJX. 13-31, Attorney Declarations, Ex. 2.

[26] Defs.' SJX. 13-31, Attorney Declarations. The Bureau provided an in-depth analysis of the Declarations of attorneys Hoorfar and Munsch in its Opposition to Defendants' Motion for Summary Judgment, 6-9.

in the dual program want debt relief services, not bankruptcy services.[27] Although Defendants dispute that bankruptcy petitions have been filed for fewer than 1% of dual program enrollees (they claim it has been fewer than 5%)[28], the attorney declarants confirm that bankruptcy petitions are rarely filed: only 1.1% (179 of 15,909) of dual program enrollees assigned to the 19 attorney declarants have had bankruptcy petitions filed.[29]

There is no dispute that, for the vast majority of dual program enrollees who do not have a petition filed, little to no bankruptcy work is performed. The parties have presented the contract for purported bankruptcy services to the Court, and its "Scope of Services" section speaks for itself.[30] If a dual program enrollee does not have a bankruptcy petition filed, the only services he receives are: (1) an intake interview, which is conducted by Morgan Drexen; (2) the receipt of certain mandatory bankruptcy-related notices; and (3) a draft Chapter 7 bankruptcy petition, which is prepared by Morgan Drexen.[31]

**3. The Bankruptcy Petition Is Just A Debt Settlement Strategy**

More fundamentally, there is no dispute that the bankruptcy petitions created under the dual program are used as debt relief tools.[32] Defendants' declarants repeatedly confirm this. For example:

---

[27] Defs.' SJX. 13-31, Attorney Declarations, between ¶¶ 29-32.

[28] UF 126; Response to SGID 126. Defendants dispute that fewer than 1% of dual program enrollees have had a bankruptcy petition filed, but *they provided this data to the Bureau*. Either the data Defendants produced is incorrect and they failed to inform the Bureau until now, or Defendants are now falsely claiming that 3,055 petitions have been filed. Both are grounds for sanctions. Either way, given Defendants' discovery failures in this case (the Court has already indicated that it will impose monetary sanctions on Defendants for failing to produce documents, Doc. No. 115), the Court should disregard Defendants' dispute of UF 126.

[29] Ex. 1 to O'Malley Decl. attached hereto, Hanson Decl., at ¶¶ 6-46.

[30] UF 202; Response to SGID 202.

[31] UF 203, 207-213; Response to SGID 203, 207-213.

[32] UF 299; Response to SGID 299.

- In his declaration, attorney Vincent Howard states: "As a further collateral benefit, my strategy was to use my engagement for bankruptcy and the preparation of the petition as leverage against creditors in the debt negotiation process."[33]
- In his declaration, the head of Morgan Drexen's Creditor Relations Department, Desmond Adams, lists five debt settlement strategies and acknowledges that the creation of a bankruptcy petition is one: "One of the most useful strategies implemented . . . is the use of the attorney/client bankruptcy agreement and the draft petition, especially when confronted with a recalcitrant creditor."[34]
- Virtually all of the attorneys declarants proffered by Defendants liken a bankruptcy petition to "a nuclear device" that makes creditors more likely to negotiate a debt.[35]
- The consumer declarations submitted by Defendants also confirm that the bankruptcy petitions are—at best—a debt-settlement tool. Every one of Defendants' consumer declarants states that they "understood that the preparation of the bankruptcy petition was part of [law firm's] legal strategy to leverage the bankruptcy petition so that the creditors forego filing costly litigation and allow the settlement negotiation process to unfold."[36]

Moreover, Defendants' evidence confirms that, in many instances, no threat of bankruptcy is ever made to creditors. For example, in his declaration, Desmond Adams states, ". . . I do not instruct my department to threaten bankruptcy when the creditor approaches . . .with a favorable offer. The threat is designed to get the

[33] Defs.' SJX. 2, Declaration of Vincent Howard, at ¶ 26.
[34] Defs.' SJX. 3, Declaration of Desmond Adams, at ¶¶ 15, 20, 21.
[35] Defs.' SJX. 13-31, Attorney Declarations, "Options Available" To Consumers
[36] Defs.' SJX. 33-107, Consumer Decl., between ¶¶ 9-15.

creditor to 'come to the table' in a meaningful way. If the creditor is 'at the table,' the bankruptcy threat is, often time, unnecessary."[37]

**C. Morgan Drexen's Advertisements Are Deceptive**

Morgan Drexen does not and cannot dispute that fewer than 5.4% of consumers who "complete" the debt relief program do so in less than 12 months.[38] Moreover, it is undisputed that this figure overrepresents the number of consumers who have actually become debt free within 12 months, as it includes consumers who cancelled after having one debt settled, but before becoming debt free.[39]

**D. Walter Ledda Exercises Control Over Morgan Drexen**

In their Opposition, Defendants concede that Walter Ledda "is a control person as to [Morgan Drexen]," and appear to concede that he is individually liable for any of Morgan Drexen's violations of the TSR and CFPA.[40]

**III. DEFENDANTS VIOLATED THE TSR BY REQUESTING AND RECEIVING UPFRONT FEES FOR DEBT RELIEF SERVICES**

Defendants go to great length to describe their efforts to comply with the TSR. But they did not need to hire an expensive attorney at a "major law firm" to answer their questions and avoid violating the Rule – all they had to do was read the text of the TSR and the guidance issued by the FTC to businesses in October 2010, which make clear that: (1) Defendants are "sellers" and "telemarketers," as defined by the TSR; (2) businesses cannot evade the ban on advance fees by instead charging advance fees for a product or service offered in connection with debt relief services; and (3) the TSR generally does not exempt attorneys.

As set forth below, there is no genuine dispute that Morgan Drexen is a "seller" and a "telemarketer," as defined by the TSR. There is also no genuine dispute that Morgan Drexen provides "debt relief services" to consumers enrolled

---

[37] Defs.' SJX., Desmond Adams Decl., at ¶ 22.
[38] UF 401.
[39] *Id.*
[40] Defs.' Opp'n, at 23-24.

in the dual program, or that these consumers are charged an upfront fee before at least one of their debts is settled. It makes no difference that the dual program includes bankruptcy services. As FTC guidance makes clear: "you can't evade the [TSR] just by providing a product to your customer *in connection with* your debt relief service."[41]

### A. Defendants Are "Sellers" And "Telemarketers" Under The TSR And Thus Liable For Violating The Rule

In their Opposition, Defendants ignore the language of the TSR and proclaim, without citing any case law, that they cannot be found liable for violating the TSR because Morgan Drexen: (1) does not enter into contracts directly with consumers; (2) does not provide services directly to consumers; and (3) does not directly charge consumers for services.[42] This position is refuted by the plain language of the TSR and should be rejected by the Court.

Defendants are "sellers" or a "telemarketers" as defined by the TSR regardless of the role attorneys play in providing services to consumers. The TSR defines "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or *arranges for others to provide* goods or services to the customer in exchange for consideration."[43] The uncontroverted facts establish that Defendants offer to provide, and do, in fact, provide, debt relief services to consumers.[44] But even if the Court finds that Defendants do *not* "offer to provide" or "provide" debt settlement services, Defendants still meet the definition of "sellers" because they "arrange" for attorneys to provide debt relief

---

[41] FTC Guidance: Debt Relief Services & Telemarketing Sales Rule: What People Are Asking (October 2010) (emphasis added), available at: http://business.ftc.gov/documents/bus73-debt-relief-services-telemarketing-sales-rule-what-people-are-asking.
[42] Defs.' Opp'n, 16-17.
[43] 16 C.F.R. § 310.2(aa) (emphasis added).
[44] *See* Bureau's Mem., Sections II and III.

services to consumers in exchange for consideration.[45] Thus, it does not matter that Morgan Drexen does not enter into contracts directly with consumers, does not receive fees directly from consumers, and does not directly provide debt settlement services to consumers – they are still "sellers" subject to liability under the TSR.

The uncontroverted facts confirm that Defendants "arrange" for debt relief services and are thus liable for violating the TSR. Among other supporting uncontroverted facts, Defendants: develop advertising concepts; draft advertising copy; pay for advertisements and are reimbursed for these expenses out of fees paid by consumers who sign up for debt settlement services; answer telephone calls from consumers who respond to these advertisements; perform consumer intake; determine monthly payments made by consumers who enroll in the dual program; directly negotiate consumers' debts with creditors; receive debt settlement offers from creditors; handle all paperwork relating to consumers' debts; administer consumers' and attorneys' accounts to pay creditors and itself; and receive 85%-95% of all fees paid by consumers.[46] Based on these facts, it is clear that Defendants are intimately involved in directly providing debt relief services. Even if the Court finds that Defendants do not "offer to provide" or "provide" debt settlement services, Defendants clearly "arrange for [the attorneys] to provide […] services to the customer," and must be found liable for violating the Rule.[47]

Defendants are also subject to liability for violating the TSR as "telemarketers," which is defined as "any person who, in connection with

---

[45] 16 C.F.R. § 310.2(aa).

[46] *See supra*, n. 3-19.

[47] *See FTC v. Stefanchik*, 559 F.3d 924, 930 (9th Cir. 2009) (holding that a party who "retained authority to review and approve all marketing materials and made the decision as to what products were sold through the program" was a "seller" for the purposes of the TSR, despite the involvement of others in carrying out the telemarketing functions of the business); *see also FTC v. MacGregor*, 360 Fed. Appx. 891, 893-94 (9th Cir. 2009).

telemarketing, initiates or receives telephone calls to or from a customer or donor."[48] The Bureau has produced evidence, and Defendants concede, that Defendants receive telephone calls from consumers who respond to the telephone numbers listed in advertisements for debt relief services, and, therefore, Defendants are "telemarketers" subject to liability under the TSR.[49]

**B. The Dual Program Is A "Debt Relief Service" Under The TSR, Which Defendants Cannot Evade By Adding A Service**

The dual program falls squarely within the definition of "debt relief service" under the TSR. The uncontroverted facts show that dual program enrollees are provided with a "service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of" their debt.[50] Morgan Drexen advertises for debt relief services;[51] consumers who respond to these advertisements seek debt relief services;[52] the dual program is a single program that includes debt relief services;[53] and dual program enrollees pay a fee prior to having one or more debts settled.[54] That the dual program also includes the potential for bankruptcy services does not remove it from the TSR's definition of "debt relief services."

The FTC has made clear that a "seller" or "telemarketer" cannot evade the TSR's ban on advance fees for debt relief services. In October 2010, the FTC issued guidance that included the following question and answer:

> Am I covered by the Rule if I sell books, software, or other products designed to help people settle or reduce their credit card debt?

---

[48] 16 C.F.R. § 310.2(cc).
[49] UF 33; Response to SGID 33.
[50] 16 C.F.R. § 310.2(m).
[51] *See supra*, n. 3-12.
[52] *See supra*, n. 20-22.
[53] UF 99-109; Response to SGID 99-109.
[54] *Id.*

> That depends on the nature of your business and the claims you make. The Rule generally doesn't cover products like books or software; ***nevertheless, you can't evade the Rule just by providing a product to your customers in connection with your debt relief service.***[55]

*CFPB v. Gordon*, Case No. 2:12-cv-06147-RSWL-MRW (C.D. Cal, June 26, 2013), appeal pending No. 13-5684 ,which the Bureau refers to extensively in its memorandum supporting its motion for summary judgment, confirms that Defendants cannot evade the upfront fee ban by simply bundling bankruptcy services with debt settlement services and charging for them. Tellingly, Defendants neither address *Gordon* in their Opposition nor provide any case law to support their untenable position. Moreover, as Defendants repeatedly acknowledge, the bankruptcy services are primarily used as leverage in debt relief negotiations – i.e. in aid of debt relief services.[56]

### C. The Bureau Is Not Prohibited From Bringing Suit Against Defendants By Section 1027(e) of the CFPA

Defendants argue that that the Court should deny the Bureau's request for summary judgment because Section 1027(e) of the CFPA "prohibits the Bureau from regulating lawyers engaged in the practice of law."[57] This argument has no merit and the Court should reject it – just as it did at the motion to dismiss stage.

---

[55] FTC Guidance: Debt Relief Services & Telemarketing Sales Rule: What People Are Asking, available at: http://business.ftc.gov/documents/bus73-debt-relief-services-telemarketing-sales-rule-what-people-are-asking; *see Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 911 (1997) (finding an agency's interpretation of its own regulations to be "controlling" unless the interpretation is "plainly erroneous or inconsistent with the regulation").

[56] Every declarant or deponent who agrees with Defendants that the petitions have *some* value believes that the a petition's value stems from its potential use as a debt relief tool. *See supra*, n. 20-22.

[57] Defs.' Opp'n, at 17.

**1. Section 1027(e) Does Not Shield Defendants From The TSR**

Without defense to the TSR claims against them, Defendants argue, for the second time in this case, that Section 1027(e) exempts them from coverage because they are affiliated with attorneys. This Court rejected this erroneous argument at the motion to dismiss stage and should do so again.[58]

As an initial matter, Section 1027(e) is irrelevant to the question of whether Defendants are liable for violating the TSR because Defendants are not attorneys, and thus the practice of law exclusion set forth in Section 1027(e) does not apply. Moreover, even were the Court to conclude that, because of their affiliation with attorneys, Defendants should be considered "attorneys" under the CFPA, Section 1027(e) makes clear that the Bureau has the authority to bring suit against attorneys under the TSR, and thus Defendants are still liable for violating the law.

Specifically, Section 1027(e)(3) states that the Bureau shall have authority to regulate the conduct of an attorney "to the extent that such attorney is otherwise subject to any of the enumerated laws or the authorities transferred under subtitle F or H."[59] Subtitle H of the CFPA transferred authority to the Bureau to enforce the TSR.[60] The TSR does not contain a blanket exemption for attorneys who act as "sellers" or "telemarketers" under the TSR; nor does it exempt any party or entity assisting any such attorney.[61] Rather, as guidance issued by the FTC in October 2010 makes clear, attorneys are often not covered by the Rule for two main reasons:

---

[58] Doc. No. 40, Order Denying Defs.' Mot. to Dismiss, at 17-18 (Jan. 10, 2014) (noting that, as Defendants admit, the Bureau's TSR claims are not subject to Section 1027(e)'s limitation on the Bureau's enforcement power over attorneys).

[59] 12 U.S.C. §§ 5517(e)(3).

[60] Dodd-Frank Act 12 § 1100C (amending Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6100, *et seq.*).

[61] *See* 75 Fed. Reg. 48, 458, 467-68 (Aug. 10, 2010) ("the Commission concludes that attorneys who choose to offer debt relief services using telemarketing should be treated no differently under the TSR than non-attorneys who do the same").

> (1) the TSR applies only to providers who use interstate telemarketing, that is, a plan, program, or campaign to sell products or services using the telephone; and (2) providers – including attorneys – who make their sales presentations in face-to-face meetings before enrolling customers are likely exempt from most of the Rules provisions.[62]

Here, the record is clear that neither of these exceptions applies because: (1) the debt relief services were sold "using the telephone;" and (2) consumers did not have face to face meetings with either Morgan Drexen or attorneys before they were enrolled in the dual program.[63] Because the TSR applies to Morgan Drexen and its affiliated attorneys – regardless of the nature of their relationship – Defendants are liable for their violations of the Rule.

**2. Section 1027(e) Does Not Protect Defendants From CFPA Liability For Their Deceptive Advertisements**

Nor are Defendants immune to the Bureau's CFPA claims. As noted above, Section 1027(e)'s practice of law exclusion is irrelevant to the Bureau's CFPA claims because Defendants are not attorneys.

Even if the Court concludes that Defendants should be considered "attorneys" for the purpose of analyzing their liability under the CFPA, Defendants are still covered. Section 1027(e) specifically provides that the Bureau *may* exercise authority with respect to activities of attorneys if: (1) the consumer financial product or service is "not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship" or (2) the consumer financial product or service is "otherwise offered or provided by the attorney in question with respect to any consumer who is not

---

[62] FTC Guidance: Debt Relief Services & Telemarketing Sales Rule: What People Are Asking, available at: http://business.ftc.gov/documents/bus73-debt-relief-services-telemarketing-sales-rule-what-people-are-asking. (emphasis in original).

[63] *See supra*, n. 12, 15.

receiving legal advice or services from the attorney in connection with such financial product or service."[64]

Here, the Bureau has demonstrated that Defendants' dual program is designed to disguise consumers' upfront payments for debt relief services performed by non-attorneys employed by Morgan Drexen as payments for bankruptcy-related work purportedly performed by attorneys.[65] As such, the services provided to consumers are not part of, or incidental to, the practice of law occurring exclusively within the scope of the attorney-client relationship, and the limited exemption for attorneys in Section 1027(e) does not preclude the Bureau from enforcing the CFPA against Defendants – or, for that matter, an attorney if it so chooses.[66] Moreover, the uncontroverted evidence shows that, in numerous cases, consumers who receive debt relief services do not receive legal advice or services from an attorney in connection with those debt relief services, and thus Defendants are liable for violations of the CFPA even if they are considered an "attorney" under the statute.[67]

**D. Contrary To Defendants' Suggestion, No Tribunal Has Found That Morgan Drexen's Business Model Complies The TSR**

It is misleading, at best, for Defendants to contend that certain state's findings that Morgan Drexen is not engaged in the unauthorized practice of law equate to a finding that Morgan Drexen complies with the TSR and other federal laws. As the Bureau made clear in its Opposition to Defendants' Motion For Summary

---

[64] 12 U.S.C. §§ 5517(e)(2)(A)-(B).
[65] *See supra*, Section II; Bureau's Mem., Sections II and III.
[66] Contrary to Defendants' assertion, the legal arguments the Bureau raised recently in its lawsuit against Frederick J. Hanna & Associates, P.C. and its principals confirm the Bureau's legal position. There, the Bureau sued a debt-collection law firm and its partners, and noted that the defendants did not fall within the limited practice-of-law exclusion in Section 1027(e) because they were not providing legal advice to consumers.
[67] UF 62, 66- 71; Response to SGID 62, 66-71.

Judgment, and the evidence submitted by Defendants in the Opposition confirms, no tribunal has ever reviewed whether Defendants have violated federal law, much less concluded that their conduct comports with the TSR and CFPA.[68]

### E. The Bureau Did Not Admit That The Dual Program Contracts That Consumers Sign Comport With The Law

Defendants claim that "the Bureau concedes the debt settlement agreement [that dual program enrollees sign] complies with the law."[69] This is absurd and emblematic of Defendants reckless claims about the record. When the Bureau's Fed. R. Civ. P. 30(b)(6) representative was asked to review the contracts Defendants use to enroll consumers in the dual program, she stated that the contracts *do* result in the payment of upfront fees in violation of the TSR.[70] After the Bureau representative affirmed the Bureau's position, Defense counsel asked whether there was any language "in this *first four pages* of [Exhibit 193]"— the contract, which spans seventeen pages total—that violate the TSR.[71] It was only after counsel for Defendants instructed the Bureau representative to *ignore* the remaining thirteen pages of the contract before her that the Bureau representative responded, "no."[72] Defendants' Opposition omits the Bureau representative's follow-up explanation of why the fees set forth in the second contract of the dual program are prohibited by the TSR.[73]

---

[68] *See* Bureau's Opp'n, at 9-10; Response to SDIG 455-511.
[69] Defs.' Opp'n, at 7.
[70] Defs.' SJX.. 110, Tr. of Corp. Designee, Cara Petersen ("Petersen Tr."), 37:13-17 (Sept. 23, 2014).
[71] *Id.* 38:15-20 (emphasis added).
[72] *Id.*
[73] *Id.* 42:10-17.

## IV. THE BUREAU IS ENTITLED TO SUMMARY JUDGMENT ON ITS DECEPTION CLAIMS

As discussed above, the TSR prohibits "sellers" or telemarketers" from engaging in deceptive telemarketing acts or practices.[74] There is no genuine dispute that Morgan Drexen is a "seller" or "telemarketer" of "debt relief services," as those terms are defined in the TSR.[75, 76] Accordingly, under the TSR, Defendants are liable for any deceptive representations in advertisements for debt relief services. Likewise, because there is no genuine dispute that Defendants are "covered persons" under the CFPA, they are also liable under that statute for any deceptive debt relief advertisements.[77]

Morgan Drexen attempts to evade liability under the TSR and CFPA by claiming that attorneys are solely responsible for the content of advertisements. But neither the TSR nor the CFPA contain any exception that permits a "seller," "telemarketer," or "covered person" to shift liability to a third party. Nor is there any case law that supports such a proposition. Even if the TSR and the CFPA did not govern, and the Court accepted Defendants' claim that Morgan Drexen is a mere agent for attorneys, they would still be liable for deceptive statements based on their extensive, undisputed[78] role in developing, filming, editing, hiring outside

---

[74] 16 C.F.R. § 310.3.

[75] *See supra*, Section III-A.

[76] Defendants do not dispute that the advertisements are for debt relief services. Instead, they dispute the Bureau's characterization of these services as part of a "Morgan Drexen program," preferring the description "attorney advertisements." Response to SGID 21.

[77] 12 U.S.C. § 5536(a)(1)(B) ("[it] shall be unlawful for any covered person . . . to engage in any . . . deceptive . . . act or practice.").

[78] Defendants prefer to describe their role as "help[ing] attorneys create and air advertisements." Response to SDIG 20. But Defendants admit to the following: Morgan Drexen's marketing department develops concepts for advertisements, drafts copy for advertisements, and films advertisements; Morgan Drexen intends these advertisements to be used for multiple attorneys; Morgan Drexen's General Counsel reviews and edits the advertisement before they are aired; Ledda has

counsel to review, distributing, and advancing the costs of debt relief advertisements.[79]

Morgan Drexen's only remaining argument is that the advertisements are not deceptive. But, as discussed above, there is no genuine dispute that consumers are charged an upfront fee for debt relief services; therefore, the claim in advertisements that consumers are charged "no upfront fees" or "zero upfront fees" is false. As to the "be debt free in months" claim, Morgan Drexen does not dispute that no more than 5.4% of consumers who "complete" the debt relief program do so in less than 12 months.[80] Indeed, this figure overrepresents the number of consumers who have actually become debt free within 12 months because it includes consumers who cancelled after having one debt settled, but before becoming debt free.[81] Defendants offer new statistics in their Opposition brief about the percent of consumers who become debt free, but these statistics only concern a limited subset of consumers whom Morgan Drexen considers serious and disciplined, and, tellingly, are silent about how long the debt settlement process actually takes for these consumers – which is the key point of deception the Bureau challenges.[82]

---

reviewed advertisements since 2012; Ledda has used outside counsel to review advertisements before they are aired; and Morgan Drexen advances the costs for advertisements. *See* Response to SDIG 22-28, 30; *see also* Defs.' Opp'n, at 19 (describing Morgan Drexen's role); Defs.' SJX. 1, Ledda Decl., at ¶¶ 211-215 (describing Morgan Drexen's role).

[79] *See, e.g.*, *Standard Oil of California v. F.T.C.*, 577 F.2d 653, 659-60 (9th Cir. 1978) (court upheld liability against Standard Oil's advertising agency based on its extensive participation in writing, filming, drafting the text, preparing the layout, and distributing the advertisement); *F.T.C.* v. Chase Financial Funding, Inc., SACV04-549 GLT (C.D. Cal. Dec. 17, 2004).

[80] *See* UF 401; *see also* Defs.' Opp'n, at 20 ("most consumers who follow the programs their attorneys schedule for them can pay off their debts in 36 months or less").

[81] *Id.*

[82] *See* Defs.' Opp'n, at 9-11.

Finally, as discussed in greater detail in the Bureau's Opposition, Morgan Drexen's advertisements contain express claims and therefore do not require extrinsic evidence, such as a survey, to establish that they are deceptive.[83] Morgan Drexen's own statistics demonstrate that the "be debt free in months" claim is false. And, despite its methodological defects,[84] the survey prepared by Morgan Drexen's expert confirms this conclusion: 57% of survey respondents who viewed the Morgan Drexen advertisement believed they could become debt free in "months" or "less than a year."[85]

Based on these undisputed facts, the Court should hold, as a matter of law, that the claims "zero upfront fees" or "no upfront fees" and "be debt free in months" are false and misleading, in violation of the TSR and the CFPA.

## V. DEFENDANTS RED HERRING ARGUMENTS ARE DESIGNED TO DIVERT THE COURT'S ATTENTION FROM RELEVANT FACTS AND LAW

Without any defense in fact or law to the Bureau's claims, Defendants attempt to distract the Court by raising two red herrings that have *nothing* to do with whether Defendants have violated the TSR. The Court should ignore these diversions.

Throughout their brief, Defendants decry the high cost of lawyers, and cite to the inadmissible opinion of one of their retained experts. But whether consumers can afford lawyers is totally irrelevant to whether Defendants have violated the TSR and CFPA by charging impermissible upfront fees for debt settlement

---

[83] *See, e.g.*, *Matter of Cliffdale Associates, Inc.*, 103 F.T.C. 110, 1984 WL 565319, at *37 (1984) (noting that "[w]hen the advertisement contains an *express* claim, the representation itself establishes its meaning" without the need for extrinsic evidence); *FTC v. Capital Choice Consumer Credit, Inc.*, 2004 WL 5149998, *33 (S.D. Fla. Feb. 20, 2004); *aff'd*, 157 F. App'x 248 (11th Cir. 2005).

[84] The Bureau anticipates filing a Daubert motion to exclude Thomas Maronick's report.

[85] Defs.' SJX. 123, Maronick Decl., Ex. 5 (see prompt number 11 for test ad).

services and misrepresenting those services in deceptive advertisements. Defendants also claim that there is a "factual dispute as to benefits provided to consumers" enrolled in the dual program,[86] but this is untrue; the Bureau takes no position on what benefits, if any, dual program enrollees receive from Morgan Drexen's debt settlement program. Whether debt relief programs can help consumers settle their debts for less than they owe, or whether Morgan Drexen has settled debts for dual program enrollees, is irrelevant to whether Defendants charge impermissible upfront fees and advertise deceptively.[87] If anything, the savings Defendants tout confirm that they are in the business of providing debt relief services, not bankruptcy services.

## VI. DEFENDANTS' OBJECTIONS TO THE BUREAU'S EVIDENCE ARE UNFOUNDED

### A. The Consumer Complaints Submitted By The Bureau Are Admissible Under Fed. R. Civ. P. 807 and 803

Federal Rule of Evidence 807 provides that "a hearsay statement is not excluded by the rule against hearsay" if the statement: (1) "has equivalent circumstantial guarantees of trustworthiness;" (2) "is offered as evidence of a material fact;" (3) "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts;" and (4) is admitted to "best serve the purposes of these rules and the interests of justice."[88] The Court's "most important inquiry under this Rule is whether the proffered

[86] Defs.' Opp'n, at 24.
[87] *See FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1018 (C.D. Cal. 2012) (finding no reduction in liability to account for consumers who received a benefit); *see also FTC v. Dinamica Financiera LLC*, 2010 WL 9488821, at *7 (C.D. Cal. Aug. 19, 2010); *see generally FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1011 (N.D. Cal. 2010); *aff'd*, 475 F. App'x 106 (9th Cir. 2012).
[88] Fed. R. Evid. 807(a).

evidence has trustworthiness equivalent to that of the enumerated hearsay exceptions."[89]

The consumer complaints attached to the Albanese and Burge declarations are plainly admissible. They satisfy the "circumstantial guarantees of trustworthiness" factor because they originated from numerous unrelated members of the public who reported similar dissatisfaction with Morgan Drexen's services.[90] Consumers' experiences with Morgan Drexen's debt settlement services, difficulty cancelling and receiving a refund, and statements about feeling misled are clearly material to the Bureau's case.[91] The consumer complaints are also plainly probative; they span three years and capture consumer experiences with Morgan Drexen in real time.[92] Lastly, it would be neither practical nor efficient to call all 372 complainants into court to testify.[93]

---

[89] *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993) (per curiam).

[90] *See* Bureau SJX.137, Albanese Decl., Attachment A; Bureau SJX. 140-145, Burge Decl.; *see also* Albanese Decl. ¶¶ 8-14 (describing common features of consumer complaints against Morgan Drexen); Burge Decl. ¶ 12 (same); *Figgie*, 994 F.2d at 608 (holding that complaints have "circumstantial guarantees of trustworthiness" when they are submitted by "unrelated members of the public" who "report[] roughly similar experiences" with a defendant's product and "the declarants had no motive to lie."); *see also F.T.C. v. Ewing*, 2014 WL 5489210, at *2 (D. Nev. Oct. 29, 2014) (consumer complaints had "circumstantial guarantees of trustworthiness"); *F.T.C. v. Zamani*, No. SACV 09-0977-DOC, 2011 WL 2222065, at *1 (C.D. Cal. June 6, 2011), as amended (Sept. 28, 2011).

[91] *See, e.g., Figgie*, 994 F.2d at 608 (price of product is a material fact); *Ewing*, 2014 WL 5489210, at *3 (consumer expectation is a material fact).

[92] *Figgie*, 994 F.2d at 609 (holding that 127 consumer complaint letters submitted into evidence by the FTC were probative because live testimony from those consumers was "not likely to be any more reliable than the letters themselves."); *see also Ewing*, 2014 WL 5489210, at *4.

[93] *See, e.g., Ewing*, 2014 WL 5489210, at *4 (holding that admitting 162 consumer complaints served the interests of justice because doing so was "the most efficient means of showing the consumers' expectation[s]").

The complaints are also admissible pursuant to Federal Rule of Evidence 803 because they are records that are "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit. "[94] Moreover, both the Albanese and Burge declarations are themselves admissible under Federal Rule of Evidence 1006, which provides that a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."[95]

Lastly, Defendants' suggestion that the Albanese and Burge Declarations lack foundation or are not the product of personal knowledge is unfounded. Both testify to their personal knowledge of the contents of the consumer complaints.[96]

**B. The Testimony of Christine Tesoro Is Admissible**

Defendants object to the admission of former employee Christine Tesoro's deposition transcript on the ground that their counsel received "late notice" of the deposition.[97] Federal Rule of Civil Procedure 30 provides that a party "must give

---

[94] Fed. R. Evid. 803(6). Such records are not subject to the rule against admissibility of hearsay statements. *Id*.; *see also Strom v. Nat'l Enterprise Systems, Inc*., 2010 WL 1533383, at *4 (W.D.N.Y. Apr. 15, 2010) (records of complaints regularly maintained in the course of business by the BBB generally not excluded).

[95] Fed. R. Evid. 1006; *see also Figgie*, 994 F.2d at 608 (citation omitted).

[96] Morgan Drexen's suggestion that the Business Consumer Alliance ("BCA") is a "rogue company claiming to be part of the Better Business Bureau," Defs.' Opp'n, at 22, is false. Nowhere did Burge declare that the BCA was "part of" the Better Business Bureau ("BBB")—she merely explained that the BCA operated as a branch of the BBB until March 11, 2013, when it parted ways to operate as the BCA. Burge Decl. ¶ 2. That the consumer complaints became the property of the BCA instead of the BBB following this separation does not negate the existence of those complaints, which have been attached in full to the Burge Declaration and authenticated. Burge Decl. ¶ 12; *see also* Burge Decl., Ex. A; Bureau SJX. 140-45. Nor does it negate the existence of the "F" rating Morgan Drexen received from the BBB prior to March 2013 and from the BCA after March 2013. Burge Decl. ¶ 13; Burge Decl. Ex. B.

[97] Defendants' Objections to Evidence, at ¶ 23.

reasonable written notice" of the "time and place of the deposition" and, if the name of the deponent is unknown, must "provide a *general description* [of the deponent] *sufficient to identify the person or the particular class or group to which the person belongs*."[98] Here, after receiving leave from the Court to take four additional depositions, the Bureau gave Defendants notice of the "time and place" of the deposition eleven days prior to the scheduled deposition date, and the Bureau provided notice that the deponent would be a former employee of Morgan Drexen a week prior.[99] Accordingly, the objection fails.[100] Moreover, Defendants have waived any objection to Tesoro's testimony as they cite to it in their Statement of Genuine Issues In Dispute.[101]

## VII. CONCLUSION

For the foregoing reasons, the Bureau respectfully requests that the Court rule that Defendants have violated the TSR and CFPA, and order the relief requested by the Bureau as set forth in the Proposed Order filed with the Court on October 8, 2014.

---

[98] Fed. R. Civ. P. 30 (emphasis added); *see also Lam v. City & Cnty. of San Francisco*, 2011 WL 4915812, at *3 (N.D. Cal. Oct. 17, 2011) (3 (N.D. Cal. Oct. 17, 2011) (noting that even one day's notice may be reasonable when it is "understood that the party serving the notice was to take its depositions at that time").

[99] *See* O'Malley Decl., ¶¶ 5-10.

[100] Morgan Drexen also objects to the admission of the transcript on the ground that the Bureau failed to authenticate it pursuant to Federal Rule of Evidence 901. There is no basis for this objection. *See* Bureau SJX. 156 , O'Malley Decl., ¶ 27 (authenticating the transcript of the Tesoro deposition).

[101] Response to SGID, at ¶¶ 819-820, 841-847.

Respectfully submitted,

CARA PETERSEN
Acting Deputy Enforcement Director
For Litigation

/s/ R. Gabriel D. O'Malley
R. Gabriel D. O'Malley
Shirley Chiu
Jan Singelmann
*Enforcement Attorneys*
Consumer Financial Protection
Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722