UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>vs.<br><br>MORGAN DREXEN, INC., ET AL.,<br><br>Defendants. | CASE NO. SACV 13-1267-JLS (JEMx)<br><br>**ORDER (1) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 145), AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 166)** |

Before the Court are (1) a Motion for Partial Summary Judgment filed by Defendants Morgan Drexen Inc. and Walter Ledda, and (2) a Motion for Summary Judgment filed by Plaintiff Consumer Financial Protection Bureau ("CFPB"). (Defs' Mot., Doc. 145;[1] Pltf's Mot., Doc. 166.[2]) Having considered the briefing and supporting documentation submitted by the parties and taken the matter under submission, the Court (1) DENIES Defendants' Motion, and (2) DENIES Plaintiff's Motion.

## I. BACKGROUND

This action concerns Morgan Drexen, Inc., an independent company with its principal place of business in California. (Defs' SGI ¶ 1, Doc. 188-1.) Defendant Morgan Drexen has been in business since 2007. (Id. ¶ 3.) Defendant Walter Ledda currently serves as President and Chief Executive Officer of Morgan Drexen, and has been a member of the Board of Directors since May 21, 2007. (Id. ¶¶ 12-13.)

Morgan Drexen provides debt settlement and bankruptcy services to attorneys and consumers. (Id. ¶ 19.) Morgan Drexen works with attorneys to service clients who are subject to actions and lawsuits by the debt collection industry. (Id. ¶ 601.) Prior to October 27, 2010, the effective date for recent amendments to the Telemarketing Sales Rule ("TSR"), consumers paid Morgan Drexen and the attorneys that contract with Morgan Drexen an up-front engagement fee and monthly fee for debt settlement services. (Id. ¶ 75.) However, in 2009, Morgan Drexen became aware of proposed amendments to the TSR that would ban advance fees for debt settlement services. (Id. ¶ 80.) Morgan Drexen considered the proposed amendments to be a threat to its business. (Id. ¶ 82.)

As the October 27, 2010 effective date approached, Morgan Drexen began contracting with attorneys to not only offer debt settlement services to customers, but also

---

[1] Plaintiff filed an Opposition to Defendants' Motion, and Defendants replied. (Pltf's Opp'n, Doc. 189; Defs' Reply, Doc. 191.)

[2] Defendants filed an Opposition to Plaintiff's Motion, and Plaintiff replied. (Defs' Opp'n, Doc. 188; Pltf's Reply, Doc. 193.)

offer bankruptcy services. (Id. ¶¶ 87-88.) Qualified and interested customers who wish to engage debt settlement and/or bankruptcy attorneys for legal services are provided with attorney contracts to sign. (Id. ¶ 36.) Morgan Drexen believed that the majority of consumers would sign up for both debt settlement and bankruptcy services. (Id. ¶ 97.) When signing up for both types of services, customers are required to sign separate contracts for the debt settlement services and bankruptcy services. (Id. ¶ 99.) Morgan Drexen has a platform that facilitates the delivery of the attorney contracts, executed by the consumer, to the assigned attorneys for the attorneys' review and consideration. (Id. ¶¶ 38, 42.)

Under the debt settlement contract, the consumer pays no up-front fees. (Id. ¶ 100.) Under the bankruptcy services contract, the consumer must pay an up-front engagement fee and a monthly maintenance fee. (Id. ¶ 101.) Consumers have paid up-front fees in the range of $1,000.00 to $3,250.00. (Id. ¶ 103.)

A key aspect of Morgan Drexen's relationship with these attorneys is the development of advertisements to be aired on television and radio. (Id. ¶¶ 20-31, 139-140.) Morgan Drexen develops advertisements that are used by multiple attorneys with whom the company contracts. (Id. ¶ 25.) Morgan Drexen drafts the copy for the advertisements, films the advertisements, and edits the advertisements to prepare them for airing. (Id. ¶¶ 21-25.) Morgan Drexen then has its General Counsel, Defendant Ledda, and outside counsel review these advertisements before they are aired. (Id. ¶¶ 26-28.) The attorneys with whom Morgan Drexen contracts ultimately review and approve these advertisements as well. (Id.)

Defendants have produced several radio and television advertisements that are at issue in this case. (*See* Ads. 1-11, Pltf's SJ Ex. 1-11, Doc. 180-2; Defs' SGI ¶¶ 376-395.) These advertisements focus primarily on Defendants' debt settlement services. (Id.) They rarely mention or use the word "bankruptcy," except when it is included in fine print or in certain advertisements that state "[s]tart your life over without filing bankruptcy." (Ads. 1-11, Pltf's SJ Ex. 1-11; Defs' SGI ¶¶ 139-140, 377.) The advertisements include the

following verbal and written statements: "You could become completely debt free in months," "You could be debt free in months," "Be debt free!," "This is your opportunity to become debt free in months," "The best part is there are no up-front fees," and "$0 Up-front fees." (Ads. 1-11, Pltf's SJ Ex. 1-11; Defs' SGI ¶¶ 376-395.) Finally, in several advertisements, the following statements are written in fine print: "94.5% of active clients who remained in the program for 24 or more months have settled one or more debts or completed the program," "The attorneys do not guarantee that your debts will be lowered by a specific amount or percentage or that you will be debt-free within a specific period of time," and "No upfront fees applicable to ancillary debt settlement services. Fees may apply for bankruptcy." (Ads. 1-11, Pltf's SJ Ex. 1-11.)

From 2007 through April 15, 2014, of those customers who signed up and ultimately completed the debt settlement program, 5.4% of customers completed the debt settlement program within 12 months, 18.8% of customers completed the debt settlement program between 12 and 24 months, and the remaining 75.8% completed the debt settlement program between 24 and 72 months. (Defs' SGI ¶ 401.) Consumers, however, have complained that they were unaware that they had to pay up-front engagement fees when signing up for both debt settlement and bankruptcy services. (Id. ¶ 340.)

When a potential customer calls the phone number listed on the advertisement, a Morgan Drexen employee conducts the intake interview. (Id. ¶¶ 32, 35.) These employees receive commissions/bonuses for the number of customers they enroll in Morgan Drexen's services. (Id. ¶¶ 160-161.)

Between October 27, 2010 and August 31, 2014, 95% of Morgan Drexen's customers signed up for both debt settlement and bankruptcy services. (Id. ¶ 124.) Approximately 93% of those enrolled in both services were charged an up-front fee. (Id. ¶ 128.) However, of those enrolled in both services during that time period, somewhere between 0.897% and 5.1% filed a Chapter 7 bankruptcy petition. (Hanson Decl., Pltf's SJ

Ex. 138 ¶ 35, Doc. 176; Walker Decl., Defs' Opp'n Ex. 11 ¶ 125, Doc. 188-8; Defs' SGI ¶ 294.)[3] Only 0.7% of those customers enrolling in any program offered by Morgan Drexen between October 27, 2010 and August 31, 2014, signed up for debt settlement services only (Defs' SGI ¶ 133), while 4.3% of those customers enrolling in any program offered by Morgan Drexen between October 27, 2010 and August 31, 2014, signed up for bankruptcy services only. (Defs' SGI ¶ 138.)

For those customers signing up for both debt settlement and bankruptcy services, a Chapter 7 bankruptcy petition is prepared using information received from the customer, whether or not the customer decides to file for bankruptcy. (Id. ¶¶ 203, 209, 212.) Morgan Drexen and the contracting attorneys believe that preparing Chapter 7 bankruptcy petitions for all clients serves a strategic advantage when conducting debt settlement negotiations with creditors and can result in better agreements due to the threat of bankruptcy. (Id. ¶¶ 299, 302.) The CFPB, on the other hand, alleges that there is only anecdotal evidence that the threat of bankruptcy results in greater debt reduction and better settlements, and contends that Morgan Drexen is providing bankruptcy services and preparing petitions simply to charge up-front fees from customers for debt settlement services. (Id. ¶¶ 300-314, 317, 327.)

Once a customer signs up for debt settlement services, Morgan Drexen communicates and negotiates directly with creditors in an effort to settle consumers' debts. (Id. ¶¶ 44-46.) Through its platform, Morgan Drexen notifies the contracted attorneys of any settlement offers received from creditors. (Id. ¶ 50.) If the negotiation is successful and the settlement offer is accepted, Morgan Drexen pays the creditor and splits any service fees obtained from the customer with the contracted attorney. (Id. ¶¶ 51-52.) Morgan Drexen receives 85% to 95% of the fees paid by the customer, and the attorneys receive 5% to 15%. (Id. ¶¶ 111-112.)

---

[3] The parties dispute the actual percentage of customers who filed for bankruptcy during this time.

The CFPB is empowered to promulgate rules to implement the federal consumer financial laws, and to enforce those laws through investigation, adjudication, and the commencement of civil litigation. 12 U.S.C. §§ 5512, 5531(b), 5561-5565. Pursuant to its enforcement powers, the CFPB commenced the present action against Defendants on August 20, 2013. (Compl., Doc. 1.)

## II. LEGAL STANDARD

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion. S*ee In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

Where, as here, "parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992))). However, "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Id.* at 1134.

## III. DISCUSSION

### A. Defendants' Partial Motion for Summary Judgment as to Attorneys Hoorfar and Munsch and Consumer Moore-Kile

In their Motion for Partial Summary Judgment, Defendants first request that the Court find that the individual law practices of attorneys Camron Hoorfar and Tami Munsch, who contract with Morgan Drexen, do not violate the TSR. Additionally, Defendants request that the Court find that the fees paid by consumer Libby Moore-Kile to her lawyers for debt settlement and bankruptcy services should not be included in Plaintiff's damages calculation in this case. These issues, however, are not dispositive of Plaintiff's claims against Defendants Morgan Drexen and Ledda, do not affect the ultimate outcome of this litigation, and therefore will not be decided by the Court at this time. First, Hoorfar, Munsch and Moore-Kile are not named defendants in this action. Further, the Court will not permit the parties' to file motions for summary judgment as to each individual factual issue involved in the lawsuit, particularly as the issues on which Defendants seek summary judgment are immaterial to Defendants' liability. The Court also declines to decide a potential damages issue before liability is even determined. Whether the fees paid by a single consumer should be included in the damages calculated by Plaintiff has no bearing on whether Defendants violated the provisions at issue in this case. *See Lambert Corp. v. LBJC Inc.*, 2014 WL 2737913, at *5 n.4 (C.D. Cal. June 16, 2014) ("it would be premature for the Court to address what remedies are available to

plaintiff since the Court finds that material issues of disputed fact preclude summary judgment as to liability). As a result, the Court will address only the TSR and Consumer Financial Protection Act ("CFPA") claims alleged in Plaintiff's Complaint and at issue in the present motions.

**B. CFPB's Authority to Regulate**

Defendants next argue that the TSR does not apply to them because Section 1027(e) of the CFPA "prohibits the [CFPB] from regulating lawyers engaged in the practice of law." (Defs' Opp'n. at 17.) This argument has no merit, however, because Defendants are not attorneys and no lawyers are named as defendants in this case. In fact, Defendants consistently assert that Morgan Drexen is subject to the control of the attorneys it contracts with and simply provides support services to them. (*See e.g.* id. at 6-7.) Thus, Section 1027(e) does not prohibit the CFPB from regulating Defendants.[4]

**C. TSR and CFPA Claims**

The Court now turns to the crux of this case. The Complaint asserts six counts against Defendants, four for violations of both the TSR, 16 C.F.R. § 310, and the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1) (counts 1-4), and two solely for violations of the CFPA (counts 5-6). (Compl. at 15-19.) Defendants are alleged to have violated these statutes by:

(1) requesting or receiving up-front fees for debt relief services (count 1);

(2) requiring consumers to pay up-front fees into accounts, but failing to hold payments in the accounts such that consumers own the funds or allow consumers to withdraw from the debt relief program without penalty and receive all funds held in the accounts (count 2);

---

[4] In the alternative, there is at least a genuine dispute of material fact as to whether Morgan Drexen's services are offered as part of, or incidental to, the practice of law, and thus Defendants have failed to prove that Plaintiff does not have the authority to assert these claims against Defendants. *See* Order Denying Defendants' Motion to Dismiss at 17-18, Doc. 40.

(3) representing to consumers that they will not be charged advance fees for debt relief services, but in fact charging such fees (counts 3 and 5); and

(4) representing that consumers who enroll in Morgan Drexen's program will become debt free in months, when in fact consumers do not become debt free in months (counts 4 and 6). (Id.)

Both Defendants and Plaintiff move for summary judgment on Plaintiff's claims that Defendants have illegally (1) charged up-front fees for debt settlement services and (2) misrepresented to consumers that if they sign up for debt relief services they will not be charged an up-front fee and/or will be debt free in months.

**1. Up-Front Fees for Debt Relief Services**

The TSR prohibits a seller or telemarketer from "[r]equesting or receiving payment of any fee or consideration for any debt relief service until . . . [t]he seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer" and "[t]he customer has made at least one payment" pursuant to such agreement, plan, or contract. 16 C.F.R. § 310.4(a)(5)(i). In other words, a "seller" or "telemarketer" as defined in the act cannot charge up-front fees for debt-settlement services. *Id.* The TSR defines "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(aa). The TSR defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor." 16 C.F.R. § 310.2(cc).

There is no genuine dispute that Morgan Drexen is a "seller" and "telemarketer" as defined by the TSR. Even if Defendants' assertion is correct that Morgan Drexen acts at the direction of attorneys and simply supports them in providing legal services (Defs' Mot. at 12.; Defs' Opp'n at 14), Defendants do not dispute that Morgan Drexen, in addition to

other activities, develops concepts for advertisements for attorneys offering debt settlement and bankruptcy services to consumers, drafts copy for advertisements, films advertisements, reviews and edits advertisements before they are aired, intends that these advertisements be used by multiple attorneys, conducts the intake interviews, assigns customers to attorneys, and negotiates settlements. (Defs' Opp'n 6-9; Ledda Decl. ¶¶ 211-215, Doc. 188-3.) The Court therefore concludes that there is no genuine dispute that Morgan Drexen is a "seller" under the TSR because it at least "arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(aa).

It is also uncontroverted that Morgan Drexen is a "telemarketer" as defined by the TSR because it receives calls from consumers calling the telephone number listed on the advertisements Morgan Drexen produces. (Defs' SGI ¶ 147.) There is therefore no genuine dispute that "in connection with telemarketing, [Morgan Drexen] initiates or receives telephone calls to or from a customer or donor." 16 C.F.R. § 310.2(cc). Morgan Drexen's contention that the company does not enter into contracts with consumers, receive fees directly from consumers, or provide debt settlement services directly to consumers is of no avail. The fact that attorneys play some role in the provision of services to consumers is of no moment in determining that Morgan Drexen is a "seller" and "telemarketer" subject to the TSR rules.

Having decided that Morgan Drexen is subject to the TSR rules, the question therefore becomes whether Defendants have violated the TSR by charging up-front fees for debt settlement services.

The Federal Trade Commission ("FTC"), which promulgated the Telemarketing Sales Rule, justified the ban on advance fees for debt relief services in part on the context in which debt relief services are often offered. *See* 75 Fed. Reg. 48458. The FTC noted that debt relief services "frequently take place in the context of high pressure sales tactics, contracts of adhesion, and deception." *Id.* Moreover, some "telemarketers of debt relief services have exhorted consumers to fill out the enrollment documents and return the

papers as quickly as possible," despite the inclusion of contractual provisions that were potentially detrimental to the interests of consumers. *Id.* When promulgating the TSR amendments, the FTC explained that "[p]roviders should be aware that merely including a product, such as a book, in conjunction with the sale of services will not remove the transaction from coverage by the Rule" against up-front fees for debt settlement services. Telemarking Sales Rule, 75 Fed. Reg. 43569-01 (Aug. 20, 2010); FTC Guidance: Debt Relief Services & Telemarketing Sales Rule: What People Are Asking, available at: http://business.ftc.gov/documents/bus73-debt-relief-services-telemarketing-sales-rule-what-people-are-asking ("you can't evade the Rule just by providing a product to your customers in connection with your debt relief service"); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997) (finding an agency's interpretation of its own regulations to be "controlling" unless the interpretation is "plainly erroneous or inconsistent with the regulation"), *abrogated on other grounds*.

In its Motion, Plaintiff alleges that in response to the October 27, 2010 TSR amendments that made it illegal to charge up-front fees for debt settlement services, Defendants "devised a model Morgan Drexen used to continue to charge up-front fees for debt settlement services under the guise of providing 'bankruptcy services' once the proposed rule became effective."[5] (Pltf's Mot. at 4.) Plaintiff argues that Morgan Drexen enrolls customers in its "dual program" and charges up-front fees in an attempt to get around the TSR amendment "by masquerading those fees as fees for bankruptcy services when . . . they are really for debt settlement work." (Id. at 5; Pltf's Opp'n at 2.) Plaintiff contends that Defendants push customers into the "dual program" as a way to evade the ban on up-front fees by "'bundling' their debt settlement services with sham 'bankruptcy

---

[5] While Plaintiff argues that Defendants' development of bankruptcy services was in direct response to the impending TSR amendments and serve as a way for Morgan Drexen to continue to be able to charge up-front fees, Defendants have provided some evidence suggesting that the development of its bankruptcy services was driven by the attorneys with whom Morgan Drexen contracts and was a business decision intended to increase the number of clients Morgan Drexen and its associated attorneys' can serve.

services.'" (Pltf's Mot. at 6, 16.) As a result, Plaintiff asserts that Defendants have unlawfully charged nearly 60,000 customers improper "up-front" fees totaling $90.7 million because little if any bankruptcy services are actually performed for the customers. (Id. at 1, 7-8, 11.)

Plaintiff also argues that the fact that 95% of customers sign up for the "dual program" but only 0.897%[6] end up filing for bankruptcy "merely confirms that what Morgan Drexen is really providing are debt settlement services, and unlawfully charging advance fees for them." (Pltf's Mot. at 9.) Defendants, however, maintain that no up-front fees are charged for debt settlement services; they claim that the only up-front fees collected are for bankruptcy services. (Defs' Mot. at 14.) Defendants further argue that the preparation of a Chapter 7 bankruptcy petition for clients interested in debt settlement services or who wish to avoid bankruptcy actually serves as leverage in debt settlement negotiations, prevents litigation, and helps customers obtain better settlement offers from creditors. (Defs' Opp'n at 7-8; Defs' Opp'n at 18; Klein Decl., Doc. 188-23; Rugeti Decl., Doc. 188-22.) Defendants contend that the reason so few customers file for bankruptcy is because "many consumers are unwilling to pull the bankruptcy trigger," "some consumers drop out of the bankruptcy process when they feel they can resolve their own debts," and it is "the failure to pay fees in full that prevent many bankruptcy petitions from being filed." (Defs' Opp'n at 15-16.)

Taking all of the arguments and evidence into consideration, Plaintiff and Defendants have provided sufficient evidence to create a genuine dispute as to whether the up-front fees are charged for debt settlement or bankruptcy services. While Plaintiff has provided evidence that suggests that bankruptcy petitions and filings are rarely used by customers, which it argues displays that the bankruptcy services are a "sham," Defendants have offered some evidence suggesting that the threat of bankruptcy and preparation of

---

[6] Defendants' argue that the figure is actually 5.1% (Walker Decl., Defs' Opp'n Ex. 11 ¶ 125, Doc. 188; Defs' SGI ¶ 294.)

certain documents in connection with bankruptcy can serve a strategic purpose in debt settlement negotiations. While debt settlement and bankruptcy services seem to be closely related under Morgan Drexen's business model, this does not necessarily mean that the up-front fees are not specific to the bankruptcy petitions Morgan Drexen and the attorneys help prepare for consumers. Accordingly, both Plaintiff and Defendants have failed to satisfy their burdens for summary judgment as to Plaintiff's claim that Defendants charge improper up-front fees for debt settlement services under the TSR.

The Court concludes that genuine disputes exist as to whether Defendants violate the TSR by charging up-front fees. Therefore, summary judgment is denied as to both Motions on this issue.

**2. Misleading Advertising**

The Court now turns to the question of whether Defendants have engaged in deceptive and misleading advertising. Plaintiff contends that Defendants engage in deceptive and misleading advertising practices in violation of both the CFPA and TSR. (Compl. ¶¶ 80-97; Pltf's Mot. at 11.)

The CFPA provides that "[i]t shall be unlawful for any covered person . . . to engage in any . . . deceptive . . . act or practice." 12 U.S.C. §§ 5536(a)(1)(B); *see also* 12 U.S.C. § 5531(a). A "covered person" is defined as any individual or corporation "that engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6)(A) and (19). "An act or practice is deceptive if first, there is a representation, omission, or practice, that second, is likely to mislead a consumer acting reasonably under the circumstances, and third, the representation, omission or practice is material." *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001) (internal quotations and citation omitted). Similarly, the TSR prohibits a seller or telemarketer from "[m]isrepresenting, directly or by implication, in the sale of goods or services . . . [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the

subject of a sales offer" or "[a]ny material aspect of any debt relief service." 16 C.F.R. § 310.3(a)(2).

The CFPA clearly applies to Morgan Drexen and Ledda since they offer debt settlement and bankruptcy services to consumers. As discussed above, the TSR also applies because Defendants are "sellers" and "telemarketers" as defined by the TSR. Therefore, the question is whether Defendants have engaged in deceptive acts or practices and/or misrepresented material aspects of their debt settlement services.

Plaintiff first argues that the advertisements created by Morgan Drexen mislead consumers because they contain express representations that are false. (Pltf's Opp'n at 16.) Plaintiff asserts that Defendants' "misrepresentations go to the core of what consumers would find important: how long it takes to become debt free, and when and how much the consumer has to pay to become debt free." (Pltf's Mot. at 19.) In the alternative, Defendants argue that the advertisements are deceptive because they make implied claims that "were likely to, and in fact did, mislead consumers acting reasonably under the circumstances." (Id.)

Defendants, on the other hand, argue that the advertising does not communicate a deceptive message or make any guarantees. (Defs' Mot. at 16.) They claim that "slogans such as 'be debt free' are not guarantees and are not understood as guarantees but are puffery statements that are not actionable." (Id. at 17.)

As an initial manner, Defendants can be held liable under the TSR for deceptive misrepresentations, despite their contention that the attorneys for whom they are creating the advertisements have final approval. As discussed above, Defendants satisfy the definitions for "seller" and "telemarketer." Defendants created, filmed, and edited the advertisements at issue in this case and intended that multiple attorneys use them to market the debt settlements and bankruptcy services of Morgan Drexen. Defendants therefore can be held liable if the advertisements and practices of Morgan Drexen were in fact deceptive and/or material misrepresentations.

However, there is a genuine dispute as to whether the advertisements make guarantees that are misleading and/or deceptive. First, despite Plaintiff's contention that the advertisements make express guarantees that consumers "will" be debt free, no such language is found in the advertisements. Instead, the advertisements at most state "Be debt free!" in written words while the voice narrating the television advertisement says "[t]his is your opportunity to become debt free in months." (Ads. 1-11, Pltf's SJ Ex. 1-11.) The statements made in the advertisements that someone "could" or has the "opportunity" to become debt free does not necessarily suggest that someone "will" become debt free or that any guarantees are being made. It is uncontroverted that 5.4% of customers who remained in the debt settlement program offered by Morgan Drexen and its attorneys actually completed the program within 12 months, suggesting that at least a small number of consumers did in fact become debt free. (Defs' SGI ¶ 401.) Further, the fine print of the advertisements inform consumers that "94.5% of active clients who remained in the program for 24 or more months have settled one or more debts or completed the program," that "[t]he attorneys do not guarantee that your debts will be lowered by a specific amount or percentage or that you will be debt-free within a specific period of time," and that there are "[n]o upfront fees applicable to ancillary debt settlement services. Fees may apply for bankruptcy." (Ads. 1-11, Pltf's SJ Ex. 1-11.) Therefore, there is a genuine dispute as to whether express guarantees or misdescriptions have been made in the advertisements.

Nevertheless, "[w]here a statement is not literally false and is only misleading in context . . . proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir.). Plaintiff therefore alternatively argues that Defendants are liable because the advertisements make implied claims upon which consumers relied.

To support their arguments, both parties rely on the marketing survey conducted by Defendants' expert Dr. Thomas Maronick to support their motions. (Defs' SGI ¶ 762; Defs' SJ Ex. 123, Doc. 188-24.) Plaintiff relies on the finding that "57% of survey

respondents who viewed the Morgan Drexen advertisements believe they *could* become debt free in "'months'" or "'less than a year.'" (Pltf's Reply at 20; *see* Defs' SJ Ex. 123) (emphasis added.) Defendants, on the other hand, rely on Dr. Maronick's finding that between "5% and 7% of consumers" taking the survey believe that they *will* be debt free in months. (Defs' SJ Ex. 123 at 3.) The report's ultimate conclusion is that "there is no empirical support for the CFPB's assertion that consumers who enroll in the program believe that debt relief is guaranteed or that [ ] debt relief will occur in months." (Defs' Mot. at 18; Defs' SJ Ex. 123 at 10.)

Finally, though in fine print, the advertisements state "[t]he attorneys do not guarantee that your debts will be lowered by a specific amount or percentage or that you will be debt-free within a specific period of time," and that there are "[n]o upfront fees applicable to ancillary debt settlement services. Fees may apply for bankruptcy." (Ads. 1-11, Pltf's SJ Ex. 1-11.) In light of this competing evidence, a genuine dispute exists as to whether any implied message deceived a significant number of consumers to constitute a deceptive or misleading act or practice under the TSR and CFPA.

Accordingly, the Court concludes that genuine disputes exist as to Plaintiff's claim that Defendants' advertisements and practices are expressly or implicitly deceptive and misleading in violation of the CFPA and TSR. Summary judgment is therefore denied for both Motions as to this issue.

## IV. CONCLUSION

For the foregoing reasons, both Defendants' and Plaintiff's Motions are DENIED.

DATED: November 25, 2014

JOSEPHINE L. STATON

JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE