**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>        Plaintiff,<br><br>        v.<br><br>Morgan Drexen, Inc., and<br>Walter Ledda, individually, and as<br>owner, officer, or manager of Morgan<br>Drexen, Inc.,<br><br>        Defendants. | Case No. SACV 13-01267-JLS (JEMx)<br><br>**Hon. Josephine L. Staton**<br><br>**STIPULATED FINAL JUDGMENT AND ORDER AS TO DEFENDANT WALTER J. LEDDA** |

Plaintiff, the Consumer Financial Protection Bureau ("CFPB"), commenced this civil action on August 20, 2013, pursuant to: (1) Sections 1031(a), 1036(a), 1054 and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), and 5581; and (2) the Telemarketing and Consumer Fraud and Abuse and Prevention Act 15 U.S.C. §§ 6102(c)(2), 6105(d), and its implementing regulation, 16 C.F.R. part 310 ("Telemarketing Sales Rule" or "TSR").  On that date, Plaintiff filed a Complaint for Permanent Injunction and Other Relief ("Complaint") against Defendants Morgan Drexen, Inc. ("Morgan Drexen") and Walter Ledda ("Ledda") seeking

permanent injunctive relief, rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, civil money penalties, and other equitable relief for violations of the CFPA and TSR in connection with the marketing and sale of debt relief services.  (Doc. 1.)

On April 21, 2015, the Court entered an Order granting CFPB's motion for terminating sanctions against Morgan Drexen.  (Doc. 284.)  On April 30, 2015, the Court entered an Order temporarily freezing Morgan Drexen's assets pending resolution of the litigation.  (Doc. 289.)  On June 18, 2015, the Court entered a permanent injunction Order that, among other things, permanently banned Morgan Drexen from telemarketing and receiving remuneration for any debt relief product or service that charges advance fees.  (Doc. 306.)  The Order further permanently banned Morgan Drexen from making misrepresentations related to consumer financial products or services.  (Id.)

CFPB and Ledda, by and through their respective counsel, have agreed to the entry of this *Stipulated Final Judgment and Order as to Defendant Walter J. Ledda* ("Order") by this Court.

It is therefore **ORDERED, ADJUDGED, AND DECREED** as follows:

**I.    FINDINGS**

1.    This Court has jurisdiction over the subject matter of this case and over Defendant Ledda pursuant to 12 U.S.C. § 5565(a)(1) and 28 U.S.C. §§ 1331, 1345.

2.    Venue is proper in the Central District of California under 28 U.S.C. §§ 1391(b) and (c), and 12 U.S.C. §§ 5564(f).

3.    CFPB and Ledda agree to the entry of this Order to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

4.    The Complaint states claims upon which relief may be granted under the CFPA, 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), and 5581, and the Telemarketing and Consumer Fraud and Abuse and Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d), and its implementing regulation, 16 C.F.R. part 310.  The relief provided in this Order is appropriate and available pursuant to Sections 1054 and 1055 of the CFPA, 12 U.S.C.

§§ 5564, 556, and pursuant to the Telemarketing and Consumer Fraud and Abuse and Prevention Act, 15 U.S.C. § 6102(c)(2).

5.      Ledda admits all facts alleged in the Complaint and stated herein, but does not waive any privilege.

6.      Ledda is a "covered person" and/or "related person," as those terms are defined by the CFPA, 12 U.S.C. § 5481(6)(A), (19), and (25).

7.      Ledda is a "seller" and "telemarketer" of a "debt relief service" who engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2.

8.      Between October 27, 2010 and May 21, 2015, Ledda engaged in selling and telemarketing debt relief services to consumers in every state throughout the United States.

9.      During this time period, Ledda was the Chief Executive Officer of Morgan Drexen and exercised control over the day-to-day affairs of the company.  Ledda also was the President of Morgan Drexen from 2011 to May 21, 2015.  In these two roles, Ledda determined that Morgan Drexen would accept fees for debt relief services before renegotiating, settling, reducing, or otherwise altering the terms of at least one debt of the consumer.

10.     Morgan Drexen employees—under Ledda's control—performed virtually all aspects of the debt relief services Morgan Drexen sold and telemarketed to consumers, including:

    a.  Advertising for debt relief services nationwide;

    b.  Receiving telephone calls from consumers who called the telephone numbers listed in the debt relief service advertisements;

    c.  Performing consumer intake;

    d.  Determining how much consumers who enrolled in debt relief services would pay each month;

    e.  Sending letters to creditors;

    f.  Handling all paperwork relating to consumers' debts; and

g.  Communicating directly with creditors about potential debt settlements.

11.    Morgan Drexen charged consumers up-front fees for debt relief services and retained between 85% - 95% of all fees paid by consumers.  Network Attorneys received the remainder of the fees.  Morgan Drexen received payment of these fees prior to consumers making at least one payment pursuant to any settlement agreement, debt-management plan, or other valid contractual agreement between consumers and their creditors.

12.    Morgan Drexen also required consumers to place up-front fee payments in an account and failed to hold these payments such that consumers owned the funds or to allow consumers to withdraw from the debt relief program without penalty and receive all funds held in the account within seven days.

13.    Morgan Drexen's and Ledda's acts or practices described above violate the TSR, 16 C.F.R. § 310.4(a)(5)(i) and (ii), and are abusive acts or practices in telemarketing.  Because Ledda is a "covered person," his conduct is unlawful under sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1). 15 U.S.C. § 6102(c)(2).

14.    In the course of advertising, marketing, promoting, offering for sale, or the sale of debt relief services from April 26, 2011 to April 11, 2014, Morgan Drexen represented, directly or indirectly, expressly and by implication, that consumers would not be charged an up-front fee for obtaining debt relief services through Morgan Drexen when, in fact, consumers were charged up-front fees for Morgan Drexen's debt relief services.

15.    In the course of advertising, marketing, promoting, offering for sale, or the sale of debt relief services from December 8, 2010 to April 11, 2014, Morgan Drexen represented, directly or indirectly, expressly and by implication, that consumers who enrolled in debt relief services through Morgan Drexen could be debt free within months of enrollment when, in fact, only a very small number of consumers became debt free in months—*i.e.*, less than a year—of enrollment, and most consumers could not become

debt free in months under the terms of the debt relief services provided by Ledda and Morgan Drexen.

16.     The misrepresentations described in paragraphs 14 and 15 violated the TSR, 16 C.F.R. § 310.3(a)(2)(ii), (iii) and (x), and are deceptive acts or practices in telemarketing.  Because Ledda is a "covered person," his conduct is unlawful under sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).  15 U.S.C. § 6102(c)(2).

17.     The misrepresentations described in paragraphs 14 and 15 above also constitute deceptive acts or practices in violation of Sections 1031 and 1036 of the CFPA, 12 U.S.C §§ 5531, 5536.

18.     Ledda waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order.  Ledda also waives any claim he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action. Each party will bear its own costs and expenses, including, without limitation, attorneys' fees, except as otherwise provided in this Order.

19.     Entry of this Order is in the public interest.

## II.     DEFINITIONS

20.     The following definitions apply to this Order:

    a.  "Affected Consumer" means any consumer who:

        i.  from October 27, 2010 to June 18, 2015, paid fees prior to Ledda or Morgan Drexen renegotiating, settling, reducing, or otherwise altering the terms of at least one debt of the consumer; or

        ii.  enrolled in a debt relief service in response to Ledda's and Morgan Drexen's deceptive advertisements as described in paragraphs 14 and 15 of this Order.

    b.  "Asset" means any legal or equitable interest in, right to or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part, for the benefit of, or subject to access by Ledda,

wherever located, whether in the United States or abroad, including, but not limited to, all Assets identified in: (i) financial statements and supporting documents that Ledda submitted to CFPB; and (ii) oral testimony provided by Ledda on September 2, 2015. This includes, but is not limited to, chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including, but not limited to, any trust held for the benefit of Ledda, any of Ledda's minor children, or Ledda's current or former spouse(s), but excludes furniture, computers, clothes, books, and personal healthcare products.

c. "Assisting others" includes, but is not limited to:

   i.  providing paralegal or administrative support services;

   ii.  performing customer service functions including, but not limited to, receiving or responding to consumer complaints;

   iii.  formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any internet website, email, or other electronic communication;

   iv.  formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or internet protocol ("IP") addresses or domain name registration for any internet websites, affiliate marketing services, or media placement services;

   v.  providing names of, or assisting in the generation of, potential customers;

   vi.  performing marketing, billing, or payment services of any kind; and

vii.   acting or serving as an owner, officer, director, manager, or principal of any entity.

d.   "Competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

e.   "Consumer financial product or service" is synonymous in meaning and equal in scope to the definitions of the term in sections 1002(5) and (15) of the CFPA, and, subject to applicable restrictions contained in the CFPA, includes, but is not limited to:

i.   extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions);

ii.   providing financial advisory services to consumers on individual financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure;

iii.   collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a consumer financial product or service; and

iv.   collecting debt related to any consumer financial product or service.

f. "Debt relief product or service" means any product, service, plan, or program represented, expressly or by implication:

    i.  to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including but not limited to a tax debt or obligation, between a person and one or more creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector; or

    ii. to relate to Chapter 7, Chapter 9, Chapter 11, or Chapter 13 of the U.S. Bankruptcy Code, or any other bankruptcy-related matter.

g. "Defendants" means Morgan Drexen, Inc. and Walter Ledda collectively, and each of them by whatever names each might be known.

h. "Document" and "Electronically Stored Information" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure, and include, but are not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable forms.

i. "Effective Date" means the date on which this *Stipulated Final Judgment and Order as to Defendant Walter J. Ledda* is signed by the Court.

j. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegee.

k. "Ledda" means Walter J. Ledda, and any other names by which he may be known.

l.   "Network Attorneys" means the attorneys who signed contracts with consumers related to debt relief products or services provided to consumers by Morgan Drexen.

m.   "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

n.   "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in this Order.

o.   "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate phone call.

p.   The words "and" and "or" shall be understood to have both conjunctive and disjunctive meanings as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

# ORDER

## III.   PERMANENT BAN ON TELEMARKETING AND DEBT RELIEF PRODUCTS AND SERVICES

**IT IS ORDERED** that:

21.   Ledda, whether acting directly or indirectly, is permanently restrained and enjoined from:

   a.   Participating in telemarketing or assisting others engaged in telemarketing a consumer financial product or service;

   b.   Advertising, marketing, promoting, offering for sale, selling, or providing any debt relief product or service;

   c.   Assisting others in advertising, marketing, promoting, offering for sale, selling, or providing any debt relief product or service; and

   d.   Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any person engaged in or assisting others in advertising, marketing, promoting, offering for sale, selling, or providing any debt relief product or service.

## IV.   PROHIBITED PRACTICES RELATING TO OFFERING CONSUMER FINANCIAL PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that:

22.   Ledda, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any consumer financial product or service, is hereby permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

   a.   Any aspect of any consumer financial product or service, including but not limited to, the amount of savings a consumer will receive from purchasing, using, or enrolling in such consumer financial product or service;

9

b.  Any aspect of the terms of any refund, cancellation, exchange, or repurchase policy, including but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

c.  That a consumer will receive any services from or representation by an attorney duly licensed to practice law;

d.  The total costs to purchase, receive, or use, or the quantity of, the consumer financial product or service, including that there will be no charge for all or a portion of such service;

e.  The terms or rates that are available for any loan or other extension of credit, including but not limited to:

i.  The payment schedule, the monthly payment amount(s), or other payment terms, or whether there is a balloon payment; interest rate(s), annual percentage rate(s), finance charge(s), or fees; the loan amount, the amount of credit; the draw amount or outstanding balance; the loan term, the draw period, or maturity; or any other term of credit;

ii.  The savings associated with the loan or credit;

iii.  Whether the payment of the minimum amount specified each month covers both interest and principal;

f.  Any material restriction, limitation, or condition to purchase, receive, or use the consumer financial product or service;

g.  Any material aspect of the performance, efficacy, nature, or characteristics of the consumer financial product or service; or

h.  Any other fact material to consumers concerning any consumer financial product or service.

23.   In addition, Ledda, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any consumer financial product or service, is hereby permanently restrained and enjoined from making any

representation or assisting others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any consumer financial product or service, unless, at the time such representation is made, Ledda possesses and relies upon competent and reliable evidence that substantiates that the representation is true.

24.    In addition, Ledda, whether acting directly or indirectly, is permanently restrained from offering or providing any consumer financial product or service for which a state license is required to offer or provide such product or service unless he holds a valid, state-issued license permitting him to do so.

## V.    PROHIBITED USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that:

25.    Ledda, whether acting directly or indirectly, is permanently restrained and enjoined from:

a.    Disclosing, using, or benefiting from consumer information, including the name, address, telephone number, or disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account) of any person that Ledda, Morgan Drexen, or Network Attorneys obtained prior to entry of this Order in connection with the advertising, marketing, promotion, offering for sale or sale of any debt relief product or service.

b.    Attempting to collect, collecting, selling, or assigning, or otherwise transferring any right to collect payment from any consumer who purchased or agreed to purchase a debt relief product or service from Ledda, Morgan Drexen, or Network Attorneys.

26.    *However*, consumer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

## VI.   ORDER TO PAY REDRESS

**IT IS FURTHER ORDERED** that:

27.   A judgment for equitable monetary relief is entered in favor of CFPB and against Ledda in the amount of  $99,389,115 for the purpose of providing redress to Affected Consumers.  However, full payment of this judgment will be suspended upon satisfaction of the obligations in paragraphs 31, 33, 39, and subject to Section VIII of this Order.

28.   Based on financial statements and supporting documentation that Ledda submitted to CFPB, and Ledda's oral testimony provided on September 2, 2015, Ledda is ordered to pay $500,000 toward the judgment provided for in Paragraph 30 within ten (10) days of the Court's entry of this Order by wire transfer to CFPB or to CFPB's agent, and according to CFPB's wiring instructions.

29.   The judgment set forth in paragraphs 30 and 31 is enforceable against any Asset owned by, or on behalf of, or for the benefit of, or in trust by or for Ledda.

30.   Within ten (10) days of the Effective Date, Ledda must pay $82,951 and turn over possession and control of all non-cash Assets to the Bankruptcy Estate of Morgan Drexen.

31.   Any funds received by CFPB in satisfaction of this judgment will be deposited into a fund or funds administered by CFPB or to CFPB's agent according to applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages or other monetary relief, and for any attendant expenses for the administration of any such redress.

32.   With regard to any redress that Ledda pays under this Section, if Ledda receives, directly or indirectly, any reimbursement or indemnification from any source, including, but not limited to, payment made under any insurance policy, or if Ledda secures a tax deduction or tax credit with regard to any federal, state, or local tax, Ledda must: (a) immediately notify the Enforcement Director in writing, and (b) within ten (10) days of receiving the funds or monetary benefit, Ledda must transfer the full amount of

such funds or monetary benefit (Additional Payment) to CFPB or to CFPB's agent according to CFPB's wiring instructions.  After CFPB receives the Additional Payment, that payment will be applied toward the judgment entered in paragraphs 30 and 31 and the amount of the suspended judgment referenced in paragraph 30 will be reduced by the amount of the Additional Payment.

33.     If CFPB determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable, or if funds remain after the administration of redress is completed, CFPB will notify this Court, and then, following Court approval, deposit any remaining funds in the U.S. Treasury as disgorgement.  Ledda will have no right to challenge any actions that CFPB or its representatives may take under this Section.

34.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## VII.   ORDER TO PAY CIVIL MONEY PENALTIES

**IT IS FURTHER ORDERED** that:

35.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in Section 1 of this Order, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Ledda must pay a civil money penalty of $20,000,000 to CFPB.  However, full payment of this civil money penalty will be suspended upon satisfaction of the obligations in paragraphs 31, 33, 39, and will be subject to Section VIII of this Order.

36.     Based on financial statements and supporting documents that Ledda submitted to CFPB, and Ledda's oral testimony provided on September 2, 2015, Ledda is ordered to pay $1.00 toward the civil money penalty provided for in paragraph 38.

37.     Within ten (10) days of the Effective Date, Ledda must pay the $1.00 civil money penalty by wire transfer to CFPB or CFPB's agent in compliance with CFPB's wiring instructions.

38.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of CFPB as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

39.     Ledda must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes.  Regardless of how CFPB ultimately uses those funds, Ledda may not:

  a.  Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

  b.  Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

40.     To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Ledda may not argue that he is entitled to, nor may he benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action (Penalty Offset). If the Court in any Related Consumer Action grants such a Penalty Offset, Ledda must, within 30 days after entry of a final order granting the Penalty Offset, notify CFPB, and pay the amount of the Penalty Offset to the U.S. Treasury.  Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VIII.  EFFECT OF MISREPRESENTATION REGARDING FINANCIAL CONDITION

**IT IS FURTHER ORDERED** that:

41.     The suspension of the monetary judgment entered in Section VI of this Order and the suspension of the civil money penalty entered in Section VII of this Order are expressly premised on the truthfulness, accuracy, and completeness of Ledda's financial statements and supporting documents submitted to CFPB, and Ledda's oral

testimony provided on September 2, 2015.  Ledda asserts that his testimony, financial statements, and supporting documents are materially truthful, accurate, and complete.

42.    If CFPB in its sole discretion determines that Ledda has failed to disclose any material Asset or that any of his financial statements and supporting documents submitted to CFPB or his oral testimony provided on September 2, 2015, contains any material misrepresentation or omission, including misstating the value of any Asset, then CFPB can petition the Court to terminate the suspension of the monetary judgment entered in Section VI and to terminate the suspension of the civil money penalty entered in Section VII.  If the Court determines that Ledda failed to disclose any material Asset or that any of his financial statements, supporting documents, or related testimony contain material misrepresentations or omissions, the Court shall order as immediately due and payable: (a) the full judgment entered in paragraphs 30 and 31 of this Order—$99,389,115—less any amounts paid by Ledda under Section VI of this Order; and (b) the full civil money penalty entered in paragraph 38 of this Order—$20,000,000—less any amounts paid by Ledda under Section VII of this Order.

43.    After the reinstatement of the monetary judgment and civil money penalty under this Section, CFPB will be entitled to interest on the judgment, computed from the Effective Date, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

44.    Ledda must pay the full balance of the monetary judgment plus interest and civil money penalty pursuant to paragraphs 44 and 45 within ten (10) days of the Court's entry of an Order by wire transfer to CFPB or to CFPB's agent, and according to CFPB's wiring instructions.

45.    Should the Court reinstate the monetary judgment and civil money penalty pursuant to this Section, in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court.  Proceedings to reinstate the monetary judgment and civil money penalty shall be in addition to, and not in lieu of, any other

civil or criminal remedies as may be provided by law, including any other proceedings that CFPB may initiate to enforce this Order.

## IX.   ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

46.   In the event of any default on Ledda's obligations to make payment under paragraph 31 of this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding payments not paid from the date of default to the date of payment, and will immediately become due and payable.

47.   Ledda must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Ledda.

48.   Under 31 U.S.C. § 7701, Ledda must furnish to CFPB his taxpayer identification number(s), which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

49.   Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Ledda must notify the Enforcement Director of the final judgment, consent order, or settlement in writing.  That notification must indicate the amount of redress, if any, that Ledda paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

50.   Under Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), any consumer reporting agency may furnish a consumer report concerning Ledda to CFPB, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## X.   REPORTING REQUIREMENTS

**IT IS FURTHER ORDERED** that:

51.   Ledda must notify CFPB of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company to Morgan Drexen; the creation or dissolution of a subsidiary, parent,

16

or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Ledda; or a change to Ledda's name or address.  Ledda must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

52.     Within seven (7) days of the entry of this Order, Ledda must:

c.     Designate at least one telephone number and email, physical, and postal address as points of contact, which CFPB may use to communicate with Ledda;

d.     Identify all of Ledda's telephone numbers and all email, internet, physical, and postal addresses, including all residences;

e.     Identify all businesses for which Ledda is the majority owner, or that Ledda directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and internet addresses;

f.     Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

g.     Describe in detail Ledda's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including his title, role, responsibilities, participation, authority, control, and ownership.

53.     For five (5) years from the Effective Date, Ledda must report any change in the information required to be submitted under this Section at least 30 days before the change or as soon as practicable after the learning about the change, whichever is sooner.

## XI.     ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

**IT IS FURTHER ORDERED** that:

54.     Within 30 days of the Effective Date, Ledda, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to each of its board members and executive officers, as well as to any

17

managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of this Order.

55.     For five years from the Effective Date, Ledda, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section X, any future board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of this Order before they assume their responsibilities.

56.     Ledda must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001 *et seq*., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

## XII.   RECORDKEEPING

**IT IS FURTHER ORDERED** that:

57.     Ledda must create, for at least five (5) years from the entry of this Order, the following business records for any business for which Ledda is a majority owner or which he directly or indirectly controls:

  a.  All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to CFPB;

  b.  Accounting records showing the gross and net revenues from all consumer financial products or services, all costs incurred in generating those revenues, and the resulting net profit or loss;

  c.  Records showing, for each employee providing services, that person's name, telephone number; email, physical, and postal addresses; job title or position; dates of service; and, if applicable, the reason for termination;

    d.   Records showing, for each service provider providing services, the name of a point of contact, and that person's: telephone number; email, physical, and postal addresses; job title or position; dates of service; and, if applicable, the reason for termination;

    e.   Customer files showing the names, email and postal addresses, telephone numbers, dollar amounts paid, and the quantity and description of goods or services purchased; and

    f.   All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any response to those complaints or requests.

58.    Ledda must retain the documents identified in this Section for at least five (5) years.

59.    Ledda must make the documents identified in this Section available to CFPB upon CFPB's request.

## XII.  NOTICES

**IT IS FURTHER ORDERED** that:

60.    Unless otherwise directed in writing by CFPB, Ledda must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, *CFPB v. Morgan Drexen, Inc.*, Case No. SACV13-01267 JLS (JEMx), and send them either:

    a.   By overnight courier (not the U.S. Postal Service) to:

        Assistant Director for Enforcement
        Consumer Financial Protection Bureau
        ATTENTION: Office of Enforcement
        1625 Eye Street, N.W.
        Washington D.C. 20006; or

    b.   By first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

        Assistant Director for Enforcement

19

Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1700 G Street, N.W.
Washington D.C. 20552

## XIII.  COOPERATION WITH CFPB

**IT IS FURTHER ORDERED** that:

61.      Ledda must cooperate fully with CFPB in this matter and in any investigation or proceeding related to or associated with the conduct described in Section I of this Order, including proceedings related to the bankruptcy of Morgan Drexen, Inc., Case No. 8:15-bk-12278-CB (*In re Morgan Drexen, Inc.*).  Ledda must provide truthful and complete information, evidence, and testimony.  Ledda must appear for interviews, discovery, hearings, trials, and any other proceedings that CFPB may reasonably request upon five (5) days' written notice if Ledda resides in the United States at the time of the request to appear, and upon twenty one days' written notice if Ledda resides outside of the United States at the time of the request to appear, or other reasonable notice, at such times as CFPB may designate, at a location within 100 miles of where Ledda resides, is employed, or regularly transacts business in person, without the service of compulsory process.

## XV.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, to monitor Ledda's compliance with this Order, including the financial representations upon which the judgment for equitable monetary relief was suspended:

62.      Within fourteen (14) days of receipt of a written request from CFPB, Ledda must submit additional compliance reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

63.      For purposes of this Section, CFPB may communicate directly with Ledda, unless Ledda retains counsel related to these communications.

64.    Ledda must permit representatives of CFPB to interview any employee or other person affiliated with Ledda who has agreed to such an interview.  The person interviewed may have counsel present.

65.    Nothing in this Order limits CFPB's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

**XVI.  RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that:

66.    This Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**XVII. FINAL JUDGMENT AND ORDER**

67.    CFPB and Ledda have consented to the terms and conditions of this Order as set forth above and have consented to the entry thereof.


**IT IS SO ORDERED.**


Dated: October 19, 2015

_____

Honorable Josephine L. Staton
United States District Judge

21